# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM ALLEN, et al., on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br>v.<br>SIMILASAN CORPORATION,<br>Defendant. | Case No. 12cv0376-BTM-WMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

On June 18, 2013, Defendant Similasan Corporation ("Defendant" or "Similasan") filed a motion to dismiss in part Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 43). For the reasons below, Defendant's motion is hereby **GRANTED**. The Court **DISMISSES** the SAC with leave to amend within twenty-one (21) days.

//
//
//
//
//
//
//

## I. BACKGROUND

Plaintiffs Kim Allen and Lainie Rideout and new plaintiff Kathleen Hairston ("Plaintiffs") filed the SAC against Similasan Corporation on June 4, 2013, alleging violations of California's Consumers Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL"), California False Advertising Law ("FAL"), breach of express and implied warranties, and unjust enrichment. In the SAC, they have also added new claims for violations of the Magnuson-Moss Warranty Act ("MMWA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Plaintiff Kim Allen is a resident of Florida. Plaintiffs Lainie Rideout and Kathleen Hairston are both residents of California. Defendant Similasan Corporation markets and sells homeopathic products throughout the United States. Plaintiffs allege that they purchased various products[1] on the basis of unsubstantiated advertising claims made by Defendant on the products' packaging and on Defendant's website, and that Defendant was unjustly enriched thereby.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

Although detailed factual allegations are not required, factual allegations "must

---

[1] In the SAC, it is alleged that Plaintiff Allen purchased the following Similasan products: Stress & Tension Relief, Anxiety Relief, Sleeplessness Relief, and Ear Wax Relief. See SAC ¶¶ 28, 34, 39, & 45. It is alleged that Plaintiff Rideout purchased Nasal Allergy Relief and Sinus Relief. Id. at ¶¶ 57 & 64. Finally, Plaintiff Hairston is alleged to have purchased Allergy Eye Relief, Earache Relief (now sold as "Ear Relief"), Dry Eye Relief, and Pink Eye Relief (now sold as "Irritated Eye Relief") Id. at ¶¶ 73, 81, 92, & 99.

be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiffs assert seven causes of action: (1) violation of the CLRA, (2) violation of the UCL, (3) violation of the FAL, (4) breach of express warranty, (5) breach of implied warranty of merchantability, (6) violation of the MMWA, and (7) violation of the FDUTPA.

In its motion to dismiss, Similasan argues that: (a) Plaintiffs' claims seeking injunctive relief should be dismissed because the Court already held that Plaintiffs had no standing to do so; (b) Plaintiffs failed to meet their CLRA notice obligations with regard to several of their allegations and the CLRA claim should therefore be dismissed as to those allegations; (c) Plaintiffs failed to state a claim under the MMWA; and (d) Plaintiffs have asserted untimely claims for the class they seek to represent.

### A. Injunctive Relief

In the SAC, Plaintiff Hairston seeks injunctive relief under the CLRA, UCL, and FAL. (See SAC ¶¶ 142, 155, & 162.) Plaintiff Allen also seeks injunctive relief under the FDUTPA. (See id. at ¶ 188.)

In the Court's May 14, 2013 Order, the Court dismissed Plaintiff Rideout's claims for injunctive relief under the CLRA, UCL, and FAL because Plaintiff

Rideout could not show a "real and immediate threat of repeated injury in the future," Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (internal quotations omitted), as it was highly unlikely that she would repurchase a product that she had determined did not work. See also Mason v. Nature's Innovation, Inc., No. 12-cv-3019-BTM-DHB (S.D. Cal. filed May 13, 2013). Similasan argues that this holding forecloses Plaintiffs' new claims for injunctive relief, as the same reasoning applies.

The Court agrees. While Plaintiffs argue that they are harmed by their repeated exposure to Defendant's allegedly false advertising, they are unlikely to be overcome by a cacophony of falsehood and deceit as they walk the aisles of their local drug store. The Court noted in its August 7, 2013 order that "Plaintiff is not injured in fact by exposure to false advertising if she is aware that it is false." (ECF No. 53 at 5.) Nonetheless, in the same order, the Court granted Plaintiffs leave to file an amended complaint for the limited purpose of alleging standing for its injunctive relief claims, which Plaintiffs may do within 21 days of the filing of this order. Therefore, the Court **GRANTS** Defendant's motion on this ground, with leave to renew this argument once Plaintiff's Third Amended Complaint is filed.

### B. CLRA Notice Requirements

Defendant Similasan also argues that Plaintiffs failed to comply with the CLRA notice requirements. Specifically, Similasan alleges that Plaintiff Rideout failed to comply with the CLRA notice requirements as to her "100% Natural" and "Preservative free" allegations against the Nasal Allergy Relief product, and her "100% Natural" allegation against the Sinus Relief Product, and that Plaintiffs Rideout and Hairston failed to comply with the CLRA notice requirements as to all of their "Good Manufacturing Practices," "Original Swiss Formula," and premarket regulatory approval allegations.

Under the CLRA, plaintiffs must provide at least 30 days' notice to the

alleged wrongdoer prior to filing an action for damages. Cal. Civ. Code § 1782. The notice must specify the "particular alleged violations" of the CLRA and demand that the person "correct, repair, replace or otherwise rectify" the alleged violations. Id. However, a plaintiff who brings an action for injunctive relief may give notice *after* filing suit, and at least thirty days after giving notice may amend the complaint to add a request for damages. Id. § 1782(d). The notice requirement is strictly applied to vindicate the purpose of the CLRA: "to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 41 (Cal. Ct. App. 1975).

Here, Plaintiffs have requested both injunctive relief and money damages. See SAC ¶ 142. To the extent Plaintiffs are seeking damages under the CLRA and failed to provide 30 days' notice, their claims must fail. Plaintiff Rideout's CLRA notice letter failed to raise her "100% Natural" and "Preservative Free" allegations against the Nasal Allergy Relief product, and her "100% Natural" allegations against the Sinus Relief product. Similarly, Plaintiffs Hairston's and Rideout's CLRA notice letters failed to raise their "Good Manufacturing Practices," "Original Swiss Formula," and premarket regulatory approval allegations. We note that "[p]ermitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement." Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007).

Moreover, Plaintiffs cannot invoke § 1782(d) to sustain their damage claims. To take advantage of § 1782(d), a plaintiff must seek injunctive relief and, "[n]ot less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages." Cal. Civ. Code § 1782(d). Plaintiffs first sought injunctive relief in their original complaint on

February 10, 2012, but have yet to establish that they complied with the notice requirements of § 1782(d) with regard to the previously discussed claims. Thus, Plaintiffs' claims regarding these allegations must be **DISMISSED**. The Court **GRANTS** Defendant's motion to dismiss on this ground, limited to Plaintiff Rideout's "100% Natural" and "Preservative free" allegations against the Nasal Allergy Relief product, and her "100% Natural" allegation against the Sinus Relief Product, and Plaintiffs Rideout's and Hairston's "Good Manufacturing Practices," "Original Swiss Formula," and premarket regulatory allegations. Plaintiffs may reassert these claims in their Third Amended Complaint if they can show that they strictly complied with the notice requirements of § 1782(d).

C. MMWA

Similasan next argues that Plaintiffs have failed to state a claim under the MMWA. The MMWA creates a federal cause of action for consumers to enforce the terms of implied or express warranties. 15 U.S.C. §§ 2301, *et seq*. See 15 U.S.C. § 2310(d). The warranties at issue are "[a]ll representations made in the Products' labels cited in quotations" in the SAC. See SAC ¶¶ 165, 169. Similasan argues that labeling products "100% Natural" has consistently been held not to create a warranty under the MMWA, as labeling a product "natural" describes the product but is not a guarantee of performance and does not warrant that the product is defect-free. See, e.g., Allen v. Hyland's Inc., CV 12-01150 DMG MANX, 2013 WL 1748408 at *5-6 (C.D. Cal. Apr. 11, 2013). Similasan further argues that this reasoning also applies to Plaintiffs' allegations regarding Defendant's labels of "Preservative free," "Original Swiss formula," "Good Manufacturing Practices," and premarket regulatory approval.

However, that body of case law applies to written warranties, not implied warranties. The MMWA provides relief for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation

February 10, 2012, but have yet to establish that they complied with the notice requirements of § 1782(d) with regard to the previously discussed claims. Thus, Plaintiffs' claims regarding these allegations must be **DISMISSED**. The Court **GRANTS** Defendant's motion to dismiss on this ground, limited to Plaintiff Rideout's "100% Natural" and "Preservative free" allegations against the Nasal Allergy Relief product, and her "100% Natural" allegation against the Sinus Relief Product, and Plaintiffs Rideout's and Hairston's "Good Manufacturing Practices," "Original Swiss Formula," and premarket regulatory allegations. Plaintiffs may reassert these claims in their Third Amended Complaint if they can show that they strictly complied with the notice requirements of § 1782(d).

C. MMWA

Similasan next argues that Plaintiffs have failed to state a claim under the MMWA. The MMWA creates a federal cause of action for consumers to enforce the terms of implied or express warranties. 15 U.S.C. §§ 2301, *et seq*. See 15 U.S.C. § 2310(d). The warranties at issue are "[a]ll representations made in the Products' labels cited in quotations" in the SAC. See SAC ¶¶ 165, 169. Similasan argues that labeling products "100% Natural" has consistently been held not to create a warranty under the MMWA, as labeling a product "natural" describes the product but is not a guarantee of performance and does not warrant that the product is defect-free. See, e.g., Allen v. Hyland's Inc., CV 12-01150 DMG MANX, 2013 WL 1748408 at *5-6 (C.D. Cal. Apr. 11, 2013). Similasan further argues that this reasoning also applies to Plaintiffs' allegations regarding Defendant's labels of "Preservative free," "Original Swiss formula," "Good Manufacturing Practices," and premarket regulatory approval.

However, that body of case law applies to written warranties, not implied warranties. The MMWA provides relief for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation

February 10, 2012, but have yet to establish that they complied with the notice requirements of § 1782(d) with regard to the previously discussed claims. Thus, Plaintiffs' claims regarding these allegations must be **DISMISSED**. The Court **GRANTS** Defendant's motion to dismiss on this ground, limited to Plaintiff Rideout's "100% Natural" and "Preservative free" allegations against the Nasal Allergy Relief product, and her "100% Natural" allegation against the Sinus Relief Product, and Plaintiffs Rideout's and Hairston's "Good Manufacturing Practices," "Original Swiss Formula," and premarket regulatory allegations. Plaintiffs may reassert these claims in their Third Amended Complaint if they can show that they strictly complied with the notice requirements of § 1782(d).

C. MMWA

Similasan next argues that Plaintiffs have failed to state a claim under the MMWA. The MMWA creates a federal cause of action for consumers to enforce the terms of implied or express warranties. 15 U.S.C. §§ 2301, *et seq*. See 15 U.S.C. § 2310(d). The warranties at issue are "[a]ll representations made in the Products' labels cited in quotations" in the SAC. See SAC ¶¶ 165, 169. Similasan argues that labeling products "100% Natural" has consistently been held not to create a warranty under the MMWA, as labeling a product "natural" describes the product but is not a guarantee of performance and does not warrant that the product is defect-free. See, e.g., Allen v. Hyland's Inc., CV 12-01150 DMG MANX, 2013 WL 1748408 at *5-6 (C.D. Cal. Apr. 11, 2013). Similasan further argues that this reasoning also applies to Plaintiffs' allegations regarding Defendant's labels of "Preservative free," "Original Swiss formula," "Good Manufacturing Practices," and premarket regulatory approval.

However, that body of case law applies to written warranties, not implied warranties. The MMWA provides relief for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation

. . . under a written warranty, implied warranty, *or* service contract." 15 U.S.C.A. § 2310(d)(1) (emphasis added). Moreover, "written warranty" and "implied warranty" have separate definitions under the MMWA. See 15 U.S.C. § 2301(6)-(7).

Plaintiffs allege that Defendant has violated implied warranties, not written warranties. An"implied warranty" is defined as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." Id. § 2301(7). The Court determined in its May 14, 2013 order that Plaintiffs had stated a cause of action for breach of the implied warranty of merchantability under state law. (See ECF No. 34 at 10.) Therefore, under the plain language of the MMWA, the Court holds that Plaintiffs have stated a cause of action under the MMWA as well. Defendant's motion to dismiss as to the MMWA claim is **DENIED**.

### D. Untimely Claims

Finally, Similasan argues that several of Plaintiffs' claims are untimely, and that the Class Period falls in part outside of the statutes of limitations. The Court established in the May 14, 2013 order that the statute of limitations is three years for CLRA and FAL claims, four years for UCL claims, and four years for claims of breach of express warranty and breach of the implied warranty of merchantability. (See ECF No. 34 at 11.) As to Plaintiffs' new claims, the statute of limitations for both FDUTPA and MMWA claims is four years. See Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp., 581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008); Mendelson v. Country Coach, Inc., EDCV0600572SGLOPX, 2007 WL 4811927 at *1 (C.D. Cal. Nov. 19, 2007).

Plaintiffs argue that the following doctrines apply to toll the statutes of limitations: 1) delayed discovery, 2) equitable tolling, 3) fraudulent concealment, 4) continuing violation, and 5) continuous accrual. Each will be discussed in turn.

First, as discussed in the May 14, 2013 order, a plaintiff invoking the delayed

discovery exception must plead facts alleging (1) the time and manner of discovery that they had a claim and (2) the inability to have made earlier discovery despite reasonable diligence. (See ECF No. 34 at 12.) In addition, this exception does not apply to UCL claims. (See id.)

In the May 14, 2013 order, the Court held that Plaintiffs had met the second prong, but not the first because they failed to adequately allege the time and manner of their discovery, or otherwise allege that their claims fall within the limitations period. (Id. at 12-13.) The same still holds true for the SAC. Plaintiffs allege where and when they bought Defendant's products, but not how they discovered they might have a claim against Defendant. Only Plaintiffs Rideout and Hairston allege the time period in which they discovered they might have a claim. Moreover, while they argue that they could not have made the discovery earlier due to their lack of knowledge as laypeople and Defendant's alleged deception through false advertising, they still fail to allege the manner in which they discovered that they might have a claim.

Second, equitable tolling may be applied "when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served." Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1192 (2013) (citing McDonald v. Antelope Valley Community College Dist., 45 Cal. 4th 88, 99-100 (2008)). In McDonald, for instance, the plaintiff was an employee who pursued an internal administrative remedy prior to filing suit. However, Plaintiffs in this case have not alleged they pursued any comparable alternative remedy, instead pointing only to the filing of the complaint in this case.

Third, "[t]he doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." Aryeh, 55 Cal. 4th at 1192. To successfully invoke the doctrine, a plaintiff "must plead with particularity the facts giving rise to the fraudulent concealment claim and

must establish that they used due diligence in trying to uncover the facts." <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406, 1415-16 (9th Cir. 1987). Here, Plaintiffs have sufficiently alleged the facts giving rise to the fraudulent concealment claim, namely that Defendant fraudulently concealed the inefficacy of its products through false advertising. However, Plaintiffs have failed to establish that they used due diligence in trying to uncover the facts. For instance, Plaintiff Rideout alleges that she purchased Nasal Allergy Relief from 2000 until 2010, <u>see</u> Compl. ¶ 57, but provides no factual allegations to explain why it took her ten years to realize that the products were ineffective. See <u>Lauter v. Anoufrieva</u>, 642 F. Supp. 2d 1060, 1100-01 (C.D. Cal. 2009) ("At least to the extent predicated on fraudulent behavior, a plaintiff seeking to toll the statute of limitations must plead the factual predicate for such a theory.")

Fourth, "[t]he continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." <u>Aryeh</u>, 55 Cal. 4th at 1192. Most cases invoking the continuing violations doctrine in California involve alleged employment discrimination, <u>see, e.g.</u>, <u>Morgan v. Regents of Univ. of Cal.</u>, 88 Cal. App. 4th 52 (2000), but the underlying reasoning is still applicable here. As the court stated in <u>Morgan</u>:

> [T]he continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated. Thus, a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, he was being discriminated against at the time the earlier events occurred.

<u>Id.</u> at 65 (internal quotations, alteration, and citation omitted). The issue is whether Plaintiffs knew or should have known through the exercise of reasonable diligence that they might have had claims against Defendant. Plaintiffs have not alleged a sufficient factual basis to support a continuing violation theory here. Using the same example as above, Plaintiff Rideout alleges that she used Defendant's Nasal

Allergy Relief for ten years, but fails to allege how she was unable to find out through reasonable diligence over the course of a decade that the product was ineffective.

Finally, under the continuous accrual doctrine, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." Aryeh, 55 Cal. 4th at 1192. In other words, it does not actually toll the statutes of limitations but only allows Plaintiffs to recover for those purchases made within the limitations period. The Court finds no reason this doctrine should not apply, as the Plaintiffs made discrete purchases of different products over many years.

However, Defendant is correct that "an amended pleading that adds a new plaintiff will not relate back to the filing of the original complaint if the new party seeks to enforce an independent right or to impose greater liability against the defendants." Estate of Garcia-Vasquez v. Cnty. of San Diego, 06CV1322LAB(LSP), 2008 WL 4183913 at *9 (S.D. Cal. Sept. 9, 2008) (quoting San Diego Gas & Electric Co. v. Superior Court, 146 Cal.App.4th 1545, 1550 (2007)). Plaintiff Allen was the only original plaintiff; Plaintiffs Rideout and Hairston were both added at different times through subsequent amendments of the complaint. Thus, the calculation of the statutes of limitations will be different for each of the novel claims added in each subsequent amendment.

The Court will grant Plaintiffs leave to amend for the limited purpose of alleging facts sufficient to support their tolling claims, as calculation of the various class periods now would be fruitless if Plaintiffs can allege sufficient facts to show that some or all of the statutes of limitations should be tolled. Defendant's motion to dismiss on the basis of untimely claims is accordingly **GRANTED.**

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's motion to dismiss (ECF No. 43). Plaintiffs have twenty-one (21) days from the date of this order to file a Third Amended Complaint. Plaintiffs may only amend the complaint in order to allege facts sufficient to show standing to seek injunctive relief, to show strict compliance with the notice requirements of Cal. Civ. Code § 1782(d), and to support tolling of the statutes of limitation. Plaintiffs may not add additional plaintiffs or claims without first seeking leave of the Court and showing good cause. Defendant shall not file any further motions to dismiss, but may proceed by moving for summary judgment.

DATED: September 27, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court