1  **LAW OFFICES OF RONALD**
2  **A. MARRON, APLC**
   RONALD A. MARRON (SBN 175650)
3  *ron@consumersadvocates.com*
4  ALEXIS WOOD (SBN 270200)
   *alexis@consumersadvocates.com*
5  SKYE RESENDES (SBN 278511)
6  skye@*consumersadvocates.com*
   651 Arroyo Drive
7  San Diego, California 92103
8  Telephone: (619) 696-9006
   Facsimile: (619) 564-6665
9
   ***Attorneys for Plaintiffs and the Proposed Class***
10
11          **UNITED STATES DISTRICT COURT**
            **SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  KIM ALLEN, LAINIE RIDEOUT and KATHLEEN HAIRSTON, on behalf of themselves, all others similarly situated, and the general public, | Case No.: 3:12-cv-376-BTM (WMC) CLASS ACTION Filed: February 10, 2012 |
| Plaintiffs, | **THIRD AMENDED COMPLAINT FOR:** |
| | **1) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750,** *et seq.***;** |
| SIMILASAN CORPORATION, Defendant. | **2) VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PR OF. CODE §§ 17200,** *et seq.***;** |
| | **3) VIOLATION OF THE FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500,** *et seq.***;** |
| | **4) BREACH OF EXPRESS WARRANTY;** |
| | **5) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY;** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**6)  VIOLATION OF MAGNUSON-MOSS ACT, 15 U.S.C. §§ 2301, *et. seq.*;**

**7)  VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. Ann §§ 501 201, *et seq.*;**

**<u>DEMAND FOR JURY TRIAL</u>**

**INTRODUCTION**

1.    Plaintiffs Kim Allen, Lainie Rideout and Kathleen Hairston ("Plaintiffs") by and through their attorneys of record, bring this action on behalf of themselves, all others similarly situated, and the general public, against Defendant Similasan Corporation ("Defendant" or "Similasan").

2.    Defendant is the manufacturer and seller of homeopathic products that are falsely or deceptively labeled in that the products do not work as advertised. Nonetheless, Defendant claims its homeopathic products work effectively and have provided healthy relief to millions of people for over 20 years.  This complaint concerns Defendant's homeopathic products known as "Stress & Tension Relief," "Anxiety Relief," "Sleeplessness Relief," "Ear Wax Relief," "Earache Relief," "Nasal Allergy Relief," "Sinus Relief," "Allergy Eye Relief," "Dry Eye Relief" and "Pink Eye Relief" (collectively the "Products").

**JURISDICTION AND VENUE**

3.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Class of plaintiffs are citizens of states different than Defendant.  Further, greater than two-thirds of the Class members reside in states other than the state in which Defendant is incorporated or has its principal place of business.

4.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

5.    In addition, this Court has original jurisdiction over the federal claim under the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this

action, occurred in this district and because Defendant (i) is authorized to conduct business in this district, (ii) has intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (iii) does substantial business in this district; (iv) advertises to consumers residing in this district, and (v) is subject to personal jurisdiction in this district.  *See* Dkt. No. 34 (Order); *see also* Venue Affidavits pursuant to California Civil Code § 1780(d), attached after attorney signature page.

## THE PARTIES

7.   Plaintiff Kim Allen is a resident of Sarasota, Florida.

8.   Plaintiff Lainie Rideout is a resident of Hesperia, California.

9.   Plaintiff Kathleen Hairston is a resident of Alta Loma, California.

10.   Defendant Similasan Corporation is a Colorado corporation with headquarters in Colorado, that produces, markets, and sells homeopathic products throughout the United States.  Defendant does substantial business in California, including, but not limited to, extensive on-the-shelf presence of the Products in hundreds of retail stores in California, including major chain stores such as Walgreens, Target, CVS, Rite-Aid, and Walmart, among others; online marketing through their website, www.similasanusa.com, intended to reach consumers in California, and, based on Plaintiffs' information and belief, print advertisements directed at California consumers.

11.   Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the Defendant's employees was the agent, servant and employee of Defendant, acting within the purpose and scope of said agency and employment.

## INTRODUCTION

12.   Homeopathy seeks to stimulate the body's ability to heal itself by giving very small doses of highly diluted substances.  However, there is "little evidence" that

homeopathy is effective, much less that people understand homeopathic dilution principles. *See* nccam.nih.gov/sites/nccam.nih.gov/files/ homeopathy.pdf.

13. Homeopathy is premised on two main principles; the principle of similars and the principle of dilutions. Under the "principle of similars" a disease can be cured by a substance that produces similar symptoms in healthy people. *Id.* Thus, homeopathic drugs are intended to work by causing "aggravation," or a temporary worsening of symptoms initially, a fact that is not communicated to consumers. *See id.* & Ex. 1.

14. Under the "principle of dilutions" the more diluted an ingredient is, the more effective it becomes. nccam.nih.gov/sites/nccam.nih.gov/files/ homeopathy.pdf. There is a very low probability that even a single molecule of the original substance is present in the Product, but Defendant does not inform consumers of this material fact.

15. The potency of the active ingredients in the Products, or dilution levels, are marked by "X"s and "C"s. The dilution ratio of 6X, *see*, *e.g.*, Ex. 1, is one part of the original mother tincture to one million parts of the diluting material. Accordingly, 12X is one part to 1,000,000,000,00. "C" potencies are even more diluted than "X" potencies.

16. Homeopathic remedies are not marketed and sold in the United States in the same manner as when they first originated, approximately 200 years ago. When homeopathic drugs first originated, people would typically consult with a licensed homeopathic practitioner, who would compound his or her own homeopathic remedy, or provide a prescription to the patient. Food and Drug Administration ("FDA") Compliance Policy Guide ("CPG") § 400.400.

17. Also, historically, homeopathic drugs were not labeled and there was no direct-to-consumer advertising. *Id.* Instead, homeopathic remedies were primarily marketed to licensed homeopathic practitioners. *Id.*

18.     There was good reason for this historical practice:  Homeopathic drugs are intended to be "'individualized' or tailored to each person—it is not uncommon for different people with the same condition to receive different treatments." nccam.nih.gov/sites/nccam.nih.gov/files/ homeopathy.pdf.

19.     Now, however, one-size-fits-all, combination homeopathic remedies are marketed directly to consumers in the over-the-counter ("OTC") aisles of major retail stores.  CPG § 400.400.

20.     "Today the homeopathic drug market has grown to become a multimillion dollar industry in the United States, with a significant increase shown in the importation and domestic marketing of homeopathic drug products."  *Id.*

21.     Health care costs in the United States reached almost $2.6 trillion in 2010, with 10% of that amount spent on retail and prescription drugs. www.kaiseredu.org/ issue-modules/us-health-care-costs/background-brief.aspx.  But unless drug manufacturers disclose the complete truth to consumers, consumers are unable to make informed decisions about where to spend their limited healthcare dollars.  *See id.*

22.     Most consumers who purchase homeopathic drugs in the OTC aisles of retail stores are unaware of homeopathic dilution principles, and are merely seeking a natural alternative to prescription or other OTC non-homeopathic (i.e., allopathic) drugs.  *See* nccam.nih.gov/sites/nccam.nih.gov/files/ homeopathy.pdf.

23.     Accordingly, the homeopathic drug industry strives to market its wares as natural, safe, and effective alternatives to prescription and non-homeopathic OTC drugs.  But this latter category of drugs, which are all allopathic, have undergone rigorous scrutiny by the FDA and its appointed scientific committees.  In contrast, homeopathic drugs undergo no FDA approval of efficacy or labeling claims.  See labels.fda.gov/.

*Allen v. Similasan Corp.*, No. 3:12-cv-376-BTM (WMC)
THIRD AMENDED COMPLAINT

24.     Indeed, the FDA, itself, has publicly stated that it is aware of no scientific evidence that homeopathy is effective.  *See id.*

25.     Homeopathic drugs must comply with the minimal requirements set forth in the CPG.  But, the FDA has cautioned that compliance with the CPG, "the HPUS, USP, or NF does not establish that [a homeopathic drug] has been shown by appropriate means to be safe, effective, and not misbranded for its intended use." CPG § 400.400.

26.     On August 26, 2011, the non-profit group, Center for Public Inquiry, petitioned the FDA to require homeopathic drug manufacturers to undergo the same efficacy requirements as other OTC products, and to label their drugs with a disclaimer that states: "The FDA has not determined that this product is safe, effective, and not misbranded for its intended use."  *See Gallucci v. Boiron, Inc.*, Case No. 3:11-CV-2039 JAH (S.D. Cal.), Dkt. No. 93-1 at p. 18.

27.     As a result of other class action litigation, such as the *Gallucci* case, *supra*, other homeopathic drug manufacturers have voluntarily agreed to implement a FDA disclaimer similar to the one noted above, along with additional injunctive relief, such as a dilution disclaimer and explanation of homeopathic dilution for consumers. *See, e.g., Gallucci*, Dkt. No. 105 at pp. 13-15; Dkt. No. 125 at pp. 9-10.  Thus, even those in the industry recognize a need to more truthfully label homeopathic drugs for the average consumer.  *See id.*

## FACTS

**A.    Stress &Tension Relief[1]**



28.    On January 29, 2010 and November 8, 2011, Plaintiff Allen purchased a 15-gram (0.529 oz.) box of Stress & Tension Relief globules from various Publix Supermarkets in Sarasota, Florida for her minor daughter.  Ms. Allen's individual purchases were approximately $10.00.

29.    Defendant advertises Stress & Tension Relief by representing it "Relieves Symptoms of Stress & Simple Nervous Tension," is "Naturally Effective and Safe," "Soothes & Relaxes," and "There's relief in this box."  Ex. 1.  Further, Defendant claims the Product "is specifically formulated to . . . relieve symptoms of stress such as inner tension, nervous digestive disorders, nervous sleeplessness and general irritability," as well as being "100% Natural" in large green letters at the top of box or hang tag.  In purchasing Stress & Tension Relief, Plaintiff Allen relied upon these representations and would not have purchased the Product but for Defendant's representations.

30.    The purportedly active ingredients in Stress & Tension Relief include *Asa foetida* 4X, *Crataegus* 4X, *Lycopus virginicus* 3X and *Passiflora* 4X.  However, the

---

[1] Exhibit 1 attached hereto has larger images of Stress & Tension Relief and all other Products that are the subject of this complaint.

1  Product does not provide the benefits, characteristics, uses and qualities as advertised
2  and contains Xylitol, which is not "natural" but a chemically created sugar substitute.

3      31.   Defendant's unfair and deceptive practices have enriched them to the tune
4  of tens of millions of dollars, at the expense of tens of thousands of Americans.

5      32.   The Product did not provide the benefits, uses and qualities for Plaintiff
6  Allen or her daughter, as advertised by Defendant.  Plaintiff Allen would consider
7  buying the Product again in future if it was effective as advertised.

8      33.   Plaintiff Allen seeks justice for herself and for similarly-situated
9  consumers of Stress & Tension Relief.

10  **B.   Anxiety Relief**



18      34.   In January 29, 2010, Plaintiff Allen purchased a 15-gram (0.529 oz.) box
19  of Anxiety Relief globules for her minor daughter from various Publix Supermarkets
20  in Sarasota, Florida.  Ms. Allen's individual purchases were approximately $10.00.

21      35.   Defendant advertises "Anxiety Relief" with the claims that it "Soothes &
22  Calms," is "100% Natural," and "Relieves Symptoms of Apprehension, Restlessness,
23  and Simply Nervous Tension."  Further, Defendant claims the Product is "Naturally
24  Effective and Safe" to relieve symptoms "associated with anxiety, such as "Anxiety
25  before examinations, 'stage fright," "nervous diarrhea, abdominal pain," "lack of
26  concentration, absentmindedness," "restless sleeplessness," sense of stress,
27  palpitations, tremors," and helps the consumers "get through situations that cause []

28

1   mental and physical discomfort and for those who have ongoing stress in their lives."
2   In purchasing Anxiety Relief, Plaintiff Allen relied upon these representations and
3   would not have purchased the Product but for the label's claims as detailed above.
4   *See also* Ex. 1.

5       36.   The purportedly active ingredients in Anxiety Relief include *Argentum*
6   *nitricum* 15X and *Strophantus gratus* 12X.  However, the Product does not provide
7   the uses, benefits and characteristics as advertised because it is not "100% Natural," as
8   advertised on the front of the box, but contains Xylitol, as disclosed in small print on
9   the back of the box, which is an artificial sugar substitute.

10      37.   Moreover, Stress & Tension Relief does not achieve any of its advertised
11  benefits and uses for anxiety or anxiety related symptoms, and did not perform as
12  advertised for Plaintiff Allen and her minor daughter.  Plaintiff Allen would consider
13  buying the Product again in future if it was effective as advertised.

14      38.   Defendant's unfair and deceptive practices have enriched them to the tune
15  of millions of dollars, at the expense of tens of thousands of Americans.

16      39.   Plaintiff Allen seeks justice for herself and for similarly-situated
17  consumers of Anxiety Relief.

18  **C.    Sleeplessness Relief**



25      40.   On January 29, 2010 and November 8, 2011, Plaintiff Allen purchased a
26  15-gram (0.529 oz.) box of Sleeplessness Relief globules for her minor daughter from

1  various Publix Supermarkets in Sarasota, Florida.  Ms. Allen's individual purchases
2  were approximately $10.00.

3      41.    Defendant advertises "Sleeplessness Relief" as a "Night Time Sleep Aid,"
4  that "Relieves Symptoms of Occasional Sleeplessness & Restlessness," "Naturally
5  Effective & Safe," and "100% Natural.  Ex. 1.  Defendant also claims as to this
6  Product that "There's tranquility in this box.  Tranquility in knowing you're making
7  the healthy choice for you and your family by choosing Similasan's Sleeplessness
8  Relief.   Sleepless Relief is formulated to . . . relieve symptoms of occasional
9  sleeplessness, restlessness, light sleep or excessive dreaming as well as any difficulty
10  falling asleep or frequent waking during the night."  *Id.*  In purchasing Sleeplessness
11  Relief, Plaintiff Allen relied on these representations and would not have purchased
12  the Product but for these representations.

13      42.    The purportedly active ingredients in Sleeplessness Relief include *Avena*
14  *sativa* 12X, *Hepar sulphuris* 12X, *Pulsatilla* 15X and *Zincum valerianicum* 12X.

15      43.    Stress & Tension Relief, however, does not provide the benefits, uses, and
16  characteristics as advertised for Plaintiff and her daughter because, *inter alia*, it is not
17  "100% Natural," as advertised on the front of the box, but contains Xylitol, an
18  artificial sugar substitute, as disclosed in small print on the back of the box.

19      44.    Moreover, the Product did not work as advertised for Plaintiff and her
20  daughter because it has no effect on relieving anxiety, sleeplessness, or restlessness, or
21  any of the other symptoms for which it is advertised.  Plaintiff Allen would consider
22  buying the Product again in future if it was effective as advertised.

23      45.    Defendant's unfair and deceptive practices have enriched them to the tune
24  of tens of millions of dollars, at the expense of tens of thousands of Americans.

25      46.    Plaintiff Allen seeks justice for herself and for similarly-situated
26  consumers of Sleeplessness Relief.

27

28

1  **D.    Ear Wax Relief**



47.    In the Summer of 2009, which Plaintiff Allen believes was August 2009, Allen purchased a 10 ml/ 0.33 oz. bottle of Ear Wax Relief from various stores in Sarasota, Florida, including Earth Origins Market (formerly known as the Granary Natural Food Stores.)  Ms. Allen's individual purchases were approximately $8.00.

48.    Defendant advertises the Product as "100% Natural" "Ear Wax Relief," which "Removes Wax – Cleans Ear," Reduces Chronic Ear Wax Congestion," and "Healthy Relief" that is a "Dual Action Formula."  Defendant claims the Product will "reduce chronic ear wax congestion, quickly relieving the clogged sensation, ringing and itching of the ear canal, all without drying your ear."  Defendant also claims the Product is "naturally effective and safe."   In purchasing Ear Wax Relief, Plaintiff Allen relied on these representations and would not have purchased the Product but for the representations.

49.    The purportedly active ingredients in Ear Wax Relief include *Causticum* 12X, *Graphites* 15X, *Lachesis* 12X and *Lycopodium* 12X.

50.    Unknown to Ms. Allen until May of 2013, when her counsel obtained unredacted versions of FDA reports, Ear Wax Relief is misbranded and an unapproved new drug under Title XXXIII, Chapter 499 of the Florida Statutes, more specifically, the Florida Drug and Cosmetic Act.   Fl. Stat. §§ 499.001-499.081

1    ("Florida Drug Act"). The Florida Drug Act incorporates all provisions of the federal
2    Food, Drug and Cosmetic Act ("FDCA"). *Id.* §§ 499.002(1)(b)-(c).

3        51.    Under the FDCA, only two types of otic, or ear, products are permitted for
4    OTC sale: ear wax removal aids and ear drying aids. *See* 21 C.F.R. § 344.3. In order
5    for a product to comply with the FDCA, and according the Florida Drug Act, it must
6    contain specific active ingredients, which "for "Earwax removal . . . [includes] [t]he
7    active ingredient of the product consists of carbamide peroxide 6.5 percent formulated
8    in an anhydrous glycerin vehicle." *Id.* 344.10. The Product does not contain any
9    carbamide peroxide 6.5 percent, formulated as required. *See* Ex. 1. Instead, it
10   contains "Causticum 12X, Graphites 15X, Lachesis 12X, and Lycopodium 12X." *Id.*

11       52.    Moreover, any otic product must meet "the general conditions established
12   in [21 C.F.R.] § 330.1. 21 C.F.R. 344.1. The Product does not meet the general
13   conditions established in § 330.1 because the Product does not contain an approved
14   monograph for an OTC otic product for ear wax removal, or an ear drying aid.

15       53.    The Product's label also does not comply with the FDCA, and
16   accordingly Florida law, because 21 C.F.R. § 344.50 contains the only approved
17   monograph for a topical OTC earwax removal aid, and it specifies that the product
18   must be labeled as a "earwax removal aid." *Id.* § (a). The Product's Indications for
19   Use must state "'For occasional use as an aid to' (which may be followed by: 'soften,
20   loosen, and') 'remove excessive earwax. ' Other truthful and nonmisleading
21   statements, describing only the indications for use that have been established and
22   listed in this paragraph (b), may also be used, as provided in § 330.1(c)(2), subject to
23   the provisions of section 502 of the act relating to misbranding and the prohibition in
24   section 301(d) of the act against the introduction or delivery for introduction into
25   interstate commerce of unapproved new drugs in violation of section 505(a) of the
26   act." *Id.* § (b); *see also id.* §§ (c)-(c) (providing required Warnings and Directions for
27   all labels on these types of products). Here, the Product has additional "Uses,"

28

including that the Product "provide[s] relief from symptoms such as: clogged sensation when caused by ear wax," "ringing in the ear when caused by ear wax," dry skin and itching of the ear canal."  But because the Product does not contain the sole approved active ingredient of carbamide peroxide 6.5 percent, these additional statements, and the Product's sale itself is misbranding.

54.   Accordingly, its sale is unlawful under state and federal law. *See* Fl. Stat. §§ 499.0054(1)(a)-(e), (g), (2), (3); 499.007, 499.024(4).

55.   Ms. Allen, as would any reasonable consumer, considers the lawfulness of an OTC as a material factor in her purchasing decision, and she would not have purchased the Product if she knew it was misbranded and unlawful under state and federal law.   Indeed, the Florida Drug and Cosmetic Act makes misbranding a misdemeanor, and possibly a felony.  Fl. Stat. §§§ 499.0051(11)-(12).  The FDCA also makes misbranding a criminal misdemeanor.  21 U.S.C. § 352.

56.   Plaintiff Allen would consider buying the Product again in future if it was effective as advertised, and was not misbranded or unlawful.

57.   Nevertheless, Defendant has continued to market its Product on store shelves throughout the nation, including Florida, and on its www.similasanusa.com web site.

58.   This unlawful, unfair and deceptive practice has enriched Defendant by millions of dollars, at the expense of tens of thousands of Americans.

59.   Plaintiff Allen seeks justice for herself and for similarly-situated consumers of Ear Wax Relief.

1    **E.   Nasal Allergy Relief**



60.   From 2000 until 2010, Plaintiff Rideout purchased Nasal Allergy Relief two to three times a year from CVS and Walgreens pharmacies located in Victorville, California.  Ms. Rideout purchased and used Nasal Allergy Relief for her seasonal allergies each year, which occurred between April and October.  She continued to buy the Product over the course of those years, hoping it would work as advertised.

61.   Rideout would purchase the Product again in future if it were effective as advertised.

62.   In October 2010, Ms. Rideout discovered the Product did not provide the benefits, characteristics and qualities as advertised and she ceased purchasing the Product at that time.  Rideout first learned the claims were false when she did online research after the Product did not work as effectively as she thought it was supposed to work.  She does not remember what websites she visited, but they lead to her conclude the claims were false/deceptive.

63.   Ms. Rideout could not have discovered sooner that the Product was falsely or deceptively advertised because (1) she is a layperson, lacked the knowledge and experience to understand how the Product's label was deceptive or false, and information regarding the false or deceptive advertising was solely within Defendant's

possession and control; or (2) she reasonably and in good faith chose to pursue one of several remedies in April 3, 2012, with the filing of the First Amended Complaint in this action and the notice function of any relevant statute of limitations had been served as of that time; or (3) Defendant caused Ms. Rideout's claim to grow stale through deceptive conduct, including fraudulent concealment of the truth behind its Products; or (4) Defendant's conduct constituted a continuing violation, such that each Product purchase may be aggregated for statute of limitations purposes, with accrual occurring upon the occurrence of the last of such wrongs, meaning after her last purchase in October 2010 when she discovered the falsity of Defendant's advertising; or (5) based on continuous accrual, which provides that each of a series of wrongs triggers its own distinct limitations period, such that a suit may be partially time-barred as to older wrongs but timely as to those within the relevant limitations period. *See also Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013).

64.   Ms. Rideout's individual purchases ranged from $8.00 to $10.00.

65.   Defendant represents that "Nasal Allergy Relief" "Relieves allergic congestion, itching & runny nose," is "100% Natural," and "Preservative Free." Defendant also claims the Product "soothes and relieves the symptoms of seasonal and environmental allergies," including "allergic congestion, itchy, runny nose and rhinitis cause by pollen, pet dander dust and mold spores." Ex. 1. In purchasing Nasal Allergy Relief, Plaintiff relied on these representations and would not have purchased the Product but for the labeling claims. Ms. Rideout also relied on statements made on Defendant's website, such as that Nasal Allergy Relief is "100% natural," "ease[s] your allergy symptoms so you can better enjoy your day," relieves symptoms of "allergies accompanied by runny nose, itching and/or burning of the nose, watery eyes, sneezing and swollen mucous membranes (congestion)," "acute and chronic allergic rhinitis," "post nasal drip caused by allergies," and "sinus pressure caused by allergies."

66.   The purportedly active ingredients in Nasal Allergy Relief include *Cardiospermum* 6X*, Galphimia glauca* 6X*, Luffa operculata* 6X and *Sabadilla* 6X.

67.   However, the Product did not provide the benefits, uses and characteristics as advertised for Ms. Rideout because it is not "100% Natural," containing primarily sodium chloride and water.  *See* Ex. 1.  Sodium chloride is generally table salt, but for pharmaceutical purposes, chemically cleaned sodium chloride is used, to remove any impurities that may exist in dried salts found in the ground or sea water.  Moreover, the Product does contain a "preservative," contrary to its "preservative free" claim because the sodium chloride itself is a preservative.  In addition, the Product does not contain the benefits, uses or characteristics as described because it has no effect on relieving symptoms of allergies in the nose.  Indeed, the "active ingredients" contained in the Product are so highly diluted that Nasal Allergy Relief is actually overpriced salt water in a mister bottle, for which Defendant charges a premium based on its hyped advertising, which represents to unsuspecting consumers that there are special ingredients in the Product by stating it is "Our Original Swiss Formula," made by Defendant "for over 25 years," when there are no special ingredients to it at all.  *See* Ex. 1.

68.   In addition, all OTC allergy drugs must comply with the California Sherman Law, Cal. Health & Safety Code §§ 110105, 110110, 110111, 110115, which incorporates all drug laws under the federal FDCA.  21 C.F.R. §§ 341.1 – 341.90 set forth the rules for selling OTC allergy drug products.  The Product does not comply because it does not contain any approved active ingredient (21 C.F.R. §§ 341.12 – 341.40), nor does its labeling comply with the law (*see* 21 C.F.R. 341.70 – 341.90) for an allergy product (21 C.F.R. § 341.3(e)).  *Compare* Ex. 1.  Accordingly, the Product is unlawful under California law.

69.   Ms. Rideout was unaware of the unlawfulness of this Product until May of 2013, when her counsel obtained unredacted versions of FDA reports, pursuant to a

1  FOIA request.  Rideout's counsel also had to appeal the FOIA redaction, and did not

2  obtain less redacted versions that disclosed the unlawful nature of the Products until

3  May 2013.   A reasonable consumer would not send a FOIA request for every

4  consumer product they purchase, much less, appeal redacted records.   Further,

5  Defendant had a duty, as a drug manufacturer, to not sell unlawful products, and

6  through the continued sale of the Products Defendant fraudulently concealed from

7  Rideout the unlawfulness of the Products.

8      70.   Defendant's unfair, unlawful and deceptive practices have enriched them

9  to the tune of millions of dollars, at the expense of tens of thousands of Americans.

10      71.   Plaintiff Rideout seeks justice for herself and for similarly-situated

11  consumers of Nasal Allergy Relief.

12  **F.     Sinus Relief**



22      64.    From 2000 to 2010, usually two to three times a year, Plaintiff Rideout

23  purchased and used Sinus Relief to relieve symptoms of cold, flu or for an occasional

24  bout of sinusitis.  Plaintiff Rideout purchased Sinus Relief from CVS and Walgreens

25  pharmacies located in Victorville, California and her individual purchases cost

26  between $8.00 to $10.00 each.  She continued to buy the Product over the course of

27  those years, hoping it would work as advertised.

28

65.    Rideout would purchase the Product again in future if it were effective as advertised.

72.    In October 2010, Ms. Rideout discovered the Product did not provide the benefits, characteristics and qualities as advertised and she ceased purchasing the Product at that time.  Rideout first learned the claims were false when she did online research after the Product did not work as effectively as she thought it was supposed to work.  She does not remember what websites she visited, but they lead to her conclude the claims were false/deceptive.

66.    Ms. Rideout could not have discovered sooner that the Product was falsely or deceptively advertised because (1) she is a layperson, lacked the knowledge and experience to understand how the Product's label was deceptive or false, and information regarding the false or deceptive advertising was solely within Defendant's possession and control; or (2) she reasonably and in good faith chose to pursue one of several remedies in April 3, 2012, with the filing of the First Amended Complaint in this action and the notice function of any relevant statute of limitations had been served as of that time; or (3) Defendant caused Ms. Rideout's claim to grow stale through deceptive conduct, including fraudulent concealment of the truth behind its Products; or (4) Defendant's conduct constituted a continuing violation, such that each Product purchase may be aggregated for statute of limitations purposes, with accrual occurring upon the occurrence of the last of such wrongs, meaning after her last purchase in October 2010 when she discovered the falsity of Defendant's advertising; or (5) based on continuous accrual, which provides that each of a series of wrongs triggers its own distinct limitations period, such that a suit may be partially time-barred as to older wrongs but timely as to those within the relevant limitations period. *See also Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013).

67.    Defendant represents that "Sinus Relief" "Soothes & Moisturizes," "Relieves Congestion," and is "100% Natural."  Ex. 1.  Defendant also claims the

Product is an "Original Swiss Formula" it has made for "over 25 years," that will "soothe and moisturize your sinuses and relieve uncomfortable congestion;" and is effective to: "relieve sinus congestion and inflammation of the nasal passages while soothing irritating dryness," and alleviate "runny nose due to colds & flu," "inflammation of mucuous membranes (rhinitis)", "sinus congestion," "nasal congestion," "post-nasal drip," "irritating dryness of nasal passages." Ex. 1. In purchasing Sinus Relief, Plaintiff relied on these representations made on the Product's label, and would not have purchased the Product but for these claims.

68.    The purportedly active ingredients in Sinus Relief include *Kali bichromicum* 6X*, Luffa operculata* 6X *and Sabadilla* 6X.

69.    However, the Product does not provide the benefits, uses, and characteristics as advertised because it is not "100% Natural," as advertised on the front of the box, but contains "silver sulphate as a preservative," as disclosed in tiny print on the back of the box, towards the bottom. It also contains "sodium nitrate" which is another chemical preservative, and "borate buffer," but which Defendant does not disclose are included as non-natural preservatives. *See* Ex. 1. Moreover, "Sinus Relief" does not relieve the symptoms for which it is advertised and sold, and did not work as advertised for Ms. Rideout, even though she continued to buy the Product, hoping that it would perform as advertised. In addition, the Product is simply water with preservatives, with no trace of the hyper diluted "active ingredients," even though it commands a premium price based on the false and deceptive claim that the water and preservatives in it constitute an "Original Swiss Formula."

70.    In addition, all OTC nasal products must comply with the California Sherman Law, Cal. Health & Safety Code §§ 110105, 110110, 110111, 110115, which incorporates all drug laws under the federal FDCA.

71.    All OTC topical nasal decongestant drugs must comply with 21 C.F.R. §§ 341.1 – 341.90, which sets forth the rules for selling this type of drug. The Product

1  does not comply because it does not contain any approved active ingredient (21 C.F.R.

2  §§ 341.12 – 341.40), nor does its labeling comply with the law (*see* 21 C.F.R. 341.70

3  – 341.90) for a topical nasal decongestant drug (21 C.F.R. § 341.3(g)).  *Compare* Ex.

4  1.

5      72.    Ms. Rideout was unaware of the unlawfulness of Defendant's Products,

6  both Allergy Relief and Sinus Relief, until May of 2013, when her counsel obtained

7  unredacted versions of FDA reports, pursuant to a FOIA request.  Rideout's counsel

8  also had to appeal the FOIA redaction, and did not obtain less redacted versions that

9  disclosed the unlawful nature of the Products until May 2013.  A reasonable consumer

10 would not send a FOIA request for every consumer product they purchase, much less,

11 appeal redacted records.  Further, Defendant had a duty, as a drug manufacturer, to not

12 sell unlawful products, and through the continued sale of the Products Defendant

13 fraudulent concealed from Rideout the unlawfulness of the Products.

14     73.    Defendant's unlawful, unfair and deceptive practices have enriched them

15 by millions of dollars, at the expense of tens of thousands of Americans.

16     74.    Plaintiff Rideout seeks justice for herself and for similarly-situated

17 consumers of Sinus Relief.

18

19

20

21

22

23

24

25

26

27

28

*Allen v. Similasan Corp.*, No. 3:12-cv-376-BTM (WMC)
THIRD AMENDED COMPLAINT

**G. Allergy Eye Relief**



75.     During allergy season (April to October) of 2009 and 2010, Plaintiff Hairston purchased Allergy Eye Relief on at least two occasions from a Target store, located at 1931 N. Campus in Upland, California.

76.     In late October of 2010, Ms. Hairston discovered that the Product did not provide the benefits, characteristics and qualities as advertised, based on personal experience from using the Product as advertised.

77.     Ms. Hairston could not have discovered sooner that the Product was falsely or deceptively advertised because (1) she is a layperson, lacked the knowledge and experience to understand how the Product's label was deceptive or false, and information regarding the false or deceptive advertising was solely within Defendant's possession and control; or (2) Defendant caused Ms. Rideout's claim to grow stale through deceptive conduct, including fraudulent concealment of the truth behind its Products; or (3) Defendant's conduct constituted a continuing violation, such that each Product purchase may be aggregated for statute of limitations purposes, with accrual occurring upon the occurrence of the last of such wrongs, meaning after her last purchase in October 2010 when she discovered the falsity of Defendant's advertising;

or (4) based on continuous accrual, which provides that each of a series of wrongs triggers its own distinct limitations period, such that a suit may be partially time-barred as to older wrongs but timely as to those within the relevant limitations period. *See also Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013).

78. Defendant represents that "Allergy Eye Relief" is a "100% Natural," "sting free formula," "sterile eye drops" that "relieves itching, burning and watering associated with allergies," "give[] your eyes soothing relief from irritating allergens such as pet dander, mold spores and more," "stimulates the body's natural ability to relieve the symptoms of allergies such as burning, itching, redness and excessive watering of your eyes," and provides an "Original Swiss Formula."  In purchasing Allergy Eye Relief, Plaintiff Hairston relied on these representations and would not have purchased the Product but for these labeling claims.

79. The purportedly active ingredients in Allergy Eye Relief include *Apis* 6X*, Euphrasia 6X* and *Sabadilla* 6X.

80. The Product does not comply with OTC labeling laws applicable in California, by failing to meet all requirements set forth in 21 C.F.R. § 349.1 – 349.80, including having the necessary approved ingredient for ophthalmic products, and for failure to have the necessary approved labeling for OTC eye products for allergies.

81. In addition, the Product did not provide the uses, benefits and characteristics as advertised for Ms. Hairston in that it did not relief itching, burning, stinging, or watering of eyes, nor was it "100% natural."  The Product contains borate buffer, silver sulphate, and sodium nitrate, which are artificial preservatives.  Even if these ingredients were naturally derived, no reasonable consumer would believe that a product that is touted as "100% Natural" contains chemical preservatives.  Also, the Product essentially consists of water and preservatives, with no trace of the hyper diluted "active ingredients" in it, despite being touted as an "Original Swiss Formula" with all the attendant expectations a reasonable consumer makes regarding such a

claim, that it would not just consist of water and preservatives, and was not worth the premium price it commanded on that basis.  In addition, Allergy Eye Relief was an inferior product compared with other OTC allergy eye drops because it was not effective, yet cost twice as much as other OTC allergy eye medicines in the marketplace.

82.    Defendant's unfair, unlawful and deceptive business practices have enriched them by millions of dollars, at the expense of tens of thousands of Americans.

83.    Plaintiff Hairston seeks justice for herself and for similarly-situated consumers of Sinus Relief.

**H.    Earache Relief (Now Sold as "Ear Relief")**



84.    Between April 2009 to October 2010, Plaintiff Hairston purchased Earache Relief on two occasions from a Target store located at 1931 N. Campus in Upland, California.

85.     In late October of 2010, Ms. Hairston discovered that the Product did not provide the benefits, characteristics and qualities as advertised, based on personal experience from using the Product as directed, for the purposes advertised.

86.     Ms. Hairston could not have discovered sooner that the Product was falsely or deceptively advertised because (1) she is a layperson, lacked the knowledge and experience to understand how the Product's label was deceptive or false, and information regarding the false or deceptive advertising was solely within Defendant's possession and control; or (2) Defendant caused Ms. Rideout's claim to grow stale through deceptive conduct, including fraudulent concealment of the truth behind its Products; or (3) Defendant's conduct constituted a continuing violation, such that each Product purchase may be aggregated for statute of limitations purposes, with accrual occurring upon the occurrence of the last of such wrongs, meaning after her last purchase in October 2010 when she discovered the falsity of Defendant's advertising; or (4) based on continuous accrual, which provides that each of a series of wrongs triggers its own distinct limitations period, such that a suit may be partially time-barred as to older wrongs but timely as to those within the relevant limitations period. *See also Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013).

87.     Further, Hairston did not have access to unredacted versions of previously redacted FDA documents that revealed the unlawfulness of Defendant's EarAche Relief Products until after her counsel sent a Freedom of Information Act Request to the FDA (FOI # 2013-1678), thereafter appealed the redaction of information to the FDA in April 2013, and then received less redacted reports from the FDA in May 2013.  Most consumers do not and should not be expected to send FOIA requests for every consumer product they purchase and Defendant knew from prior FDA action that its Earache Relief Products were unlawful and Defendant had a duty as a drug manufacturer not to violate the law.  Accordingly, Ms. Hairston was unaware that Earache Relief was misbranded and an unlawful new drug until May of

2013, when her counsel obtained unredacted versions of FDA documents so disclosing.

88.   Defendant represents that "Earache Relief" is "100% Natural" in large lettering on the front of the box, prominently placed in the middle, just under the Product name.  Ex. 1.  Defendant also claims the Product "Relieves Pain," is "Safe for All Ages, "Safe for Use with Antibiotics," and provides "quick relief" for the "sharp pain of an earache."  *See id.*  Defendant also claims the Product is safe and indicated for "adults and children, including toddlers and infants," and will "soothe the pain and discomfort" associated with "earache pain that may be caused by colds, flu or swimmer's ear."  Defendant also touts the Products as an exclusive formula, "Our Original Swiss Formula" that they have made for "over 25 years."  *See id.*  In purchasing the Product, Plaintiff Hairston relied on these label representations and would not have purchased the Product but for these representations.

89.   The purportedly active ingredients in Earache Relief include *Chamomilla* 10X, *Mercurius Solubilis* 15X and *Sulphur* 12X.

90.   In April 2011, and possibly before then, the FDA informed Defendant that its otic products, including Ear Pain Relief and Earache Relief were misbranded and unlawful new drugs because earache is caused by underlying diseases and requires diagnosis by a doctor.

91.   Only two types of otic products are approved for OTC sale under California law, which incorporates by specific reference the federal Food, Drug and Cosmetic Act.  *See* Cal. Health & Safety Code §§ 109875, *et seq.* ("Sherman Law"), specifically, *id.* §§ 110105, 110110, 110111, 110115.  Those products are an earwax removal aid or ear drying aid.  21 C.F.R. § 344.1 & .3.  Ear pain and earache relief are not included, making the Product specifically unlawful under California and federal law, including but not limited to, the fact that ear pain is usually indicative of an underlying disease condition.  Also, the FDA has not approved any OTC product for

ear pain, and Defendant's Product is no exception to that rule, as warning letters to Defendant beginning in 2011 prove.

92.     Defendant has even attempted to get around the unlawfulness of the Product, by renaming it "Ear Relief".   The Product is still the same in all relevant respects, however.   *See* www.similasanusa.com under the News page.   To Plaintiff's knowledge, Defendant has still not worked out the unlawfulness of its labeling claims with the FDA.

93.     The product did not provide the benefits, uses, and characteristics for Plaintiff Hairston as advertised by Defendant because it was not useful for earache relief, and essentially constituted highly priced water with vegetable glycerin.   *See* Ex. 1.   Nor would Plaintiff Hairston have purchased the Product if she knew that it was unlawful because, as would any reasonable consumer, she considers compliance with all applicable laws a material factor in her purchasing decision.

94.     Hence, Defendant's unfair and deceptive practices have enriched them to the tune of millions of dollars, at the expense of tens of thousands of Americans.

95.     Plaintiff Hairston seeks justice for herself and for similarly-situated consumers of Earache Relief.

1 **I.    Dry Eye Relief**

2

3

4

5

6

7 

8

9

10

11

12

13    96.    From April 2009 until October 2010, Plaintiff Hairston purchased Dry

14 Eye Relief on two occasions from a Target store located at 1931 N. Campus in

15 Upland, California.

16    97.    In late October of 2010, Ms. Hairston discovered that the Product did not

17 provide the benefits, characteristics and qualities as advertised, based on personal

18 experience, from using the Product as directed and for the purposes advertised.

19    98.    Ms. Hairston could not have discovered sooner that the Product was

20 falsely or deceptively advertised because (1) she is a layperson, lacked the knowledge

21 and experience to understand how the Product's label was deceptive or false, and

22 information regarding the false or deceptive advertising was solely within Defendant's

23 possession and control; or (2) Defendant caused Ms. Rideout's claim to grow stale

24 through deceptive conduct, including fraudulent concealment of the truth behind its

25 Products; or (3) Defendant's conduct constituted a continuing violation, such that each

26 Product purchase may be aggregated for statute of limitations purposes, with accrual

27 occurring upon the occurrence of the last of such wrongs, meaning after her last

28

purchase in October 2010 when she discovered the falsity of Defendant's advertising; or (4) based on continuous accrual, which provides that each of a series of wrongs triggers its own distinct limitations period, such that a suit may be partially time-barred as to older wrongs but timely as to those within the relevant limitations period. *See also Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013).

99.     Defendant represents that Dry Eye Relief is "Eye Doctor Recommended," "100% natural," "Sting Free Formula," "Preservative free," "Healthy Relief" that "Relieves Dryness, Clears Redness- Soothes & Moisturizes," "Stimulates the Body's Natural Ability to Relieve Symptoms of Dry Eyes Such as Redness of Eyes and Lids, Sensitivity to Light and the Sensation of Grittiness," where "Smog, Stress, Age and Contact Lens Wear Can Dry out the Eyes but you Can Have Soothing Relief from the Discomfort of Dry Eyes with Similasan's Dry Eye Relief Eye Drops." In purchasing Dry Eye Relief, Plaintiff Hairston relied upon these representations when purchasing the Product and would not have purchased the Product but for these representations.

100.    In reality, the Product is not "Eye Doctor Recommended," or if any eye doctors do recommend the Product, they are homeopathic practitioners and not allopathic physicians, and Defendant does not inform consumers of this material fact. Even if any eye doctors recommend the Product, Defendant fails to comply with relevant interstate advertising law about expert endorsements, by not disclosing whether these eye doctors recommend the Product because Similasan sponsors those recommendations, or their research, or any other relevant fact to a consumer about such expert endorsements.  Moreover, the Product is not effective in relieving dry eyes, redness, light sensitivity, gritty sensations in the eye.  It is also not 100% Natural because it contains phosphate buffers in it.  Accordingly, the Product did not have the uses, benefits and characteristics as represented by Defendant to Ms. Hairston. Similar to the other Products listed herein, Dry Eye Relief is simply over-priced water

with preservatives, having no "active ingredients" in it, and therefore the sales hype of "Original Swiss Formula" was used to command a premium price based on a deceit to the public.

101.   The purportedly active ingredients in Dry Eye Relief include *Belladonna* 6X, *Euphrasia* 6X and *Mercurius Sublimatus* 6X.   Therefore, the Product does not comply with state and federal law for the labeling and sale of an OTC ophthalmic product, as set forth in 21 C.F.R. §§ 349.1 to 349.80, including having the necessary approved ingredient for ophthalmic products, and for failure to have the necessary approved labeling for OTC eye products for dry eyes.

102.   Defendant's unfair, unlawful and deceptive practices have enriched them to the tune of millions of dollars, at the expense of tens of thousands of Americans.

103.   Plaintiff Hairston seeks justice for herself and for similarly-situated consumers of Earache Relief.

## J.     Pink Eye Relief (Now Called "Irritated Eye Relief")



104.   Approximately in 2009 and 2010, Plaintiff Hairston purchased Pink Eye Relief on at least two occasions from Target store located at 1931 N. Campus in Upland, California.

105.   In late October of 2010, Ms. Hairston discovered that the Product did not provide the benefits, characteristics and qualities as advertised, based on personal experience from using the Product as directed, for the purposes advertised.

106.   Ms. Hairston could not have discovered sooner that the Product was falsely or deceptively advertised because (1) she is a layperson, lacked the knowledge and experience to understand how the Product's label was deceptive or false, and information regarding the false or deceptive advertising was solely within Defendant's possession and control; or (2) Defendant caused Ms. Rideout's claim to grow stale through deceptive conduct, including fraudulent concealment of the truth behind its Products; or (3) Defendant's conduct constituted a continuing violation, such that each Product purchase may be aggregated for statute of limitations purposes, with accrual

occurring upon the occurrence of the last of such wrongs, meaning after her last purchase in October 2010 when she discovered the falsity of Defendant's advertising; or (4) based on continuous accrual, which provides that each of a series of wrongs triggers its own distinct limitations period, such that a suit may be partially time-barred as to older wrongs but timely as to those within the relevant limitations period. *See also Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013).

107. Defendant represents that Pink Eye Relief is "100% Natural," "Safe for All Ages," and "Relives the Redness, Watery Discharge and Burning Associated with Conjunctivitis," "[] Relieves minor symptoms associated with viral and environmental conjunctivitis, such as inflammation and redness of the whites of the eyes and inner eyelids, excessive watery (clear) discharge, sensation of grittiness, redness or burning." Ex. 1. In purchasing Pink Eye Relief, Plaintiff Hairston relied upon these representations on the Product's label, and would not have purchased the Product but for such representations.

108. The Product did not work as advertised, nor provide the benefits, uses and characteristics as represented to Ms. Hairston because it contain non-natural preservatives and inactive ingredients; and did not relieve redness, watery discharge or burning in the eyes, much less the symptoms of pink eye for which it is sold.

109. The purportedly active ingredients in Pink Eye Relief include *Belladonna* 6X, *Euphrasia* 6X and *Hepar Sulphuris* 12X.

110. In 2011, and potentially before then, the FDA notified Defendant that all of its ear products and certain of its eye products, including Pink Eye Relief, were misbranded and unlawful, *inter alia*, because they were being sold for use for conditions that required a doctor's diagnosis and prescription. Accordingly, the Product was unlawful under the California Sherman Law as described elsewhere herein. Moreover, the FDA also warned Defendant for not following up on adverse events other consumers had reported to it, including, on information and belief, that

the eye Products had been contaminated.  Ms. Hairston was not aware of these facts until May 2013, at which time her counsel obtain less redacted version of FDA reports obtained in completely redacted format several months prior pursuant to a FOIA request.

111.   In an attempt to continue to sell the Product despite the FDA's concerns over its label, at some time after 2011, Defendant changed the name of Pink Eye Relief to Irritated Eye Relief.  The Product remains the same in all other relevant respects, however.  *See* www.similasanusa.com under the News page.  To Plaintiff's knowledge, Defendant has still not worked out the unlawfulness of its labeling claims with the FDA.

112.   Plaintiff did not learn of the unlawfulness of this Product until May 2013, when her counsel obtained unredacted versions of FDA reports.   A reasonable consumer would not send FOIA requests to the FDA regarding every consumer product they purchase, and even when Hairston's counsel sent a FOIA request, the documents came back entirely redacted.   Hairston's counsel had to appeal the redaction in April 2013, and only obtained less redacted versions in May 2013, at which time Hairston learned of the unlawfulness of this Product.   Nevertheless, Defendant knew this Product was unlawful because the FDA had been warning it from 2011 or prior to then, and accordingly Defendant fraudulently concealed the unlawful nature of this Product when, as a drug manufacturer, it had a duty not to violate the law or sell unlawful Products.

113.   Defendant's unfair, unlawful and deceptive practices have enriched them to the tune of millions of dollars, at the expense of tens of thousands of Americans.

114.  Plaintiff Hairston seeks justice for herself and for similarly-situated consumers of Pink Eye Relief.

---

31

*Allen v. Similasan Corp.*, No. 3:12-cv-376-BTM (WMC)
THIRD AMENDED COMPLAINT

**SPECIFIC MISREPRESENTATIONS,**

**MATERIAL OMISSIONS, AND DECEPTIVE FACTS**

115.   Defendant's advertising claims about the Products are and have been the subject of an extensive and comprehensive, nationwide marketing campaign in various media including the internet.

116.   Defendant primarily advertises and promotes the Products for sale through the front of pack labeling claims.  The Products' names themselves clearly state what the ailments and symptoms the Products are designated for.  Label descriptions on the Product packaging, taken as a whole, further clarify what each Product is supposed to do.  *See* Ex. 1.

117.   Defendant also uses the web site, http://www.similasanusa.com/, to advertise and promote the Products.

118.   Defendant represents that "Similasan homeopathic products are formulated using traditional guidelines and produced according to strict Good Manufacturing Practices (GMP)," and the Products are required to observe GMPs, but the FDA warned Defendant in 2003, and again in 2011, that it had failed to observe GMPs when manufacturing at least some of the Products, if not all of them.  The problems include, *inter alia*, possible contamination of certain Products' ingredients, and Defendant's failure to follow on adverse event reports to contain and assess the situation.  This failure to observe GMPs would be material to a reasonable consumers, if Defendant had disclosed it, which it did not.

119.   Defendant also does not explain to consumers how diluted the Products are, which is material information a consumer would want to know before purchasing the Products.

120.   Defendant's labeling and advertising claims are further false and deceptive because Similasan's Products have no effect on various symptoms and

ailments they purport to relieve and Defendant is free to indicate uses without premarket regulatory approval, a fact that is not disclosed to consumers.

121.   In sum, Defendant's marketing and promotion of the Products was supported by false and misleading claims containing material omissions and misrepresentations.

122.   When purchasing the Products, Plaintiffs and the class were seeking products that would provide the benefits and possessed the endorsements, proof of efficacy, and characteristics as Defendant marketed, promised, represented and warranted.

123.   Plaintiffs and the class purchased the Products believing they had the qualities they sought, based on the Products' deceptive labeling, but the Products were actually unacceptable to them as they did not possess the benefits, endorsements, proof, and characteristics advertised.

124.   Moreover, like all reasonable consumers and members of the class, Plaintiffs consider a label's compliance with federal law a material factor in his purchasing decisions.  Plaintiffs are generally aware that the federal government carefully regulates OTC products and therefore have come to trust that information conveyed on packaged OTC product labels is truthful, accurate, complete, and fully in accordance and compliance with federal law.  As a result, Plaintiffs trust they can compare competing products on the basis of their labeling claims, to make a purchasing decision.

125.   Like all reasonable consumers and members of the classes, Plaintiff would not purchase an OTC product they knew was misbranded under federal law, *see* 21 U.S.C. § 352, which the federal government prohibits selling, *id.* § 331, and which carries with its sale criminal penalties, *id.* § 333.  Plaintiffs could not trust that the label of a product misbranded under federal law is truthful, accurate and complete.

126.   Similarly, like all reasonable consumers and members of the class, Plaintiffs would not purchase an OTC product they knew was an illegally marketed new drug.

127.   In light of the foregoing, reasonable consumers, including Plaintiffs and other members of the class, were and are likely to be deceived by Defendant's advertising and marketing practices as detailed herein.

128.   Further, Plaintiffs and other members of the class purchased the Products instead of competing products based on the false statements, misrepresentations and omissions described herein.

129.   Instead of receiving a product that had the benefits, advantages, endorsements, proof, and characteristics as advertised, Plaintiffs and other members of the class received a product worth much less, or which was worthless, since the Products do not work; cause no effect or effects reverse of that advertised; and did not possess the characteristics, benefits, endorsements, and proof of efficacy, as advertised by Defendant.

130.   Plaintiffs lost money as a result of Defendant's deception in that they did not receive what they had paid for.

131.   Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Products over the class period.

132.   Plaintiffs notified Defendant of the unfair, false or deceptive nature of the Products' advertising.  *See* Ex. 2 attached hereto.

133.   Despite such notice, Defendant is still labeling the Products with the false and deceptive, and unlawful, unfair and fraudulent advertised as described herein. Plaintiffs continue to shop in the same stores where they purchased the Products originally, and are subject to ongoing, continued exposure to the Products' advertising, violating their right to be free from such exposure under California and Florida law.  Without truthful advertising in the marketplace, Plaintiffs and other

consumers are deprived of the opportunity to compare only truthful labeling claims. Further, Plaintiffs and other consumers are deterred from purchasing any OTC products for the same ailments Plaintiffs purchased them because their experience with these Products caused them to believe that all OTC remedies for the same symptoms are similarly falsely or deceptively labeled.  This deprives Plaintiffs and other consumers of the opportunity to seek out a truthfully labeled Product that will perform and have the uses, benefits and characteristics as represented on their labeling, and relieve the symptoms for which Plaintiffs and other consumers originally bought the Products.

## CLASS ACTION ALLEGATIONS

134.   Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and consumer classes initially defined as follows:

All purchasers of Similasan Corporation homeopathic Products in Florida labeled Stress & Tension Relief, Anxiety Relief, Sleeplessness Relief, Ear Wax Relief (also called Ear Relief), for personal or household use and not for resale, from February 10, 2008 to the present (the "Stress, Anxiety, Sleeplessness & Ear Wax Relief Purchasers Class"); all purchasers of Similasan Corporation homeopathic Products in California labeled Nasal Allergy Relief, Sinus Relief, and Allergy Eye Relief, for personal or household use and not for resale, from April 2, 2009 to the present (the "Nasal Allergy, Sinus Relief, and Allergy Eye Relief Purchasers Class"); and all purchasers of Similasan Corporation homeopathic Products in California, for personal or household use and not for resale, labeled Earache Relief, Dry Eye Relief and Pink Eye Relief (also called Irritated Eye Relief) from June 4, 2010 to present (the "Earache, Dry Eye and Pink Eye Relief Purchasers Class").  Excluded from the Class are governmental

entities, Defendant, any entity in which Defendant has a controlling interest, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

135.   The proposed Class is so numerous that individual joinder of all its members is impracticable.   Due to the nature of the trade and commerce involved, however, Plaintiffs believe the total number of Class members is at least in the hundreds of thousands and members of the Class are numerous.   While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.   The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

136.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Class as a whole.   In particular, Defendant has failed to disclose the true nature of the Products being marketed as described herein.

137.   There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiffs and the Class and these common questions of fact and law include, but are not limited to, the following:

> a.   Whether the claims discussed above are true, misleading, or reasonably likely to deceive;
>
> b.   Whether Defendant's alleged conduct violates public policy;
>
> c.   Whether the alleged conduct constitutes violations of the laws asserted herein;
>
> d.   Whether Defendant engaged in false or misleading advertising;

e.  Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

f.  Whether Plaintiffs and Class members are entitled to an award of punitive damages; and;

g.  Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

138.  Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning the homeopathic Products and purchased the Products based on those representations.

139.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for homeopathic drugs, in particular.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

140.  Plaintiffs and the members of the Class suffered, and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling

of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

141.   Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

## FIRST CAUSE OF ACTION

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

**(By Plaintiffs Rideout and Hairston and on Behalf of the Nasal Allergy, Sinus Relief, and Allergy Eye Relief Purchasers Class and Earache, Dry Eye and Pink Eye Relief Purchasers Class as Against Defendant)**

64.   As to all advertising claims set forth herein, except claims relating to Rideout's "100% Natural" and "Preservative free" allegations against the Nasal Allergy Relief product, and her "100% Natural" allegation against the Sinus Relief Product, and Plaintiffs Rideout's and Hairston's "Good Manufacturing Practices, "Original Swiss Formula," and premarket regulatory allegations, Plaintiffs Rideout and Hairston repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

65.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").   Plaintiffs are consumers as defined by California Civil Code §1761(d).   The Products are goods within the meaning of the Act.

66.   Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with

Plaintiffs and the Class which were intended to result in, and did result in, the sale of the Products:

(5)     Representing that [the Products have] … characteristics … uses [or] benefits … which it does not have … ***

(7)     Representing that [the Products are] of a particular standard, quality or grade… if [they are] of another. ***

(9)     Advertising a good… with intent not to sell it as advertised. ***

(16)    Representing that [the Products have] been supplied in accordance with a previous representation when [it have] not.

67.    Defendant violated the Act by representing false or deceptive information in the labeling of the Products as described above, when they knew, or should have known, that the representations and advertisements were false or misleading.

68.    Plaintiffs and other members of the Class reasonably relied upon the Defendant's representations as to the quality and attributes of the Products.

69.    Plaintiffs and other members of the Class were deceived by Defendant's representations about the quality and attributes of their Products, including but not limited to the purported uses, benefits and characteristics of their Products, taken as a whole, as described herein.  Plaintiffs and other Class members would not have purchased the Products had they known the Defendant's claims were untrue, and had they known the true nature of the Products.

70.    Pursuant to § 1782 *et seq*. of the Act, Plaintiffs Hairston and Rideout notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to the Products they purchased and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act.  *See* Ex. 2.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act since Defendant is still representing that

the Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiffs and the Class.  Copies of Plaintiffs Hairston and Rideout's letters are attached as Exhibit 2 hereto.

71.    Pursuant to California Civil Code §§ 1780(a) and 1782(d), Plaintiffs Rideout, Hairston and the Class seek an order of this Court awarding Plaintiffs Rideout, Hairston and the Class prospective and retrospective injunctive relief, restitution, disgorgement, damages and punitive damages.

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATION OF THE UNFAIR COMPETITION LAW**

**California Business and Professions Code §§ 17200, *et seq.***

**(By Plaintiffs Rideout and Hairston and on Behalf of the Nasal Allergy, Sinus Relief, and Allergy Eye Relief Purchasers Class and Earache, Dry Eye and Pink Eye Relief Purchasers Class as Against Defendant)**

72.    As to all advertising claims set forth herein, Plaintiffs Rideout and Hairston repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

73.    California's Unfair Competition Law, Business and Professions Code §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."   For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continue to engage in such business conduct, in violation of the UCL.

74.    The UCL's three prongs are read in the disjunctive, and the UCL separately prohibits any "unlawful … business act or practice."   Defendant has violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and by violating, among others, Cal. Civ. Code §§ 1572, 1573, 1709, 1710, 1711, 1770, California Health and Safety Code §§ 109875, *et seq.*

(Sherman Law), specifically provisions against misbranding, Cal. Bus. & Prof. Code §§ 12601, *et seq*. ("Fair Packaging and Labeling Act"), California Commercial Code § 2313(1), and the common law.  Such conduct is ongoing and continues to this date.

75.    Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

76.    The UCL also prohibits any "unfair"… business act or practice."

77.    Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace.  Such conduct is ongoing and continues to date.

78.    Plaintiffs also allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers.  Plaintiffs assert violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

79.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

80.    The UCL also prohibits any "fraudulent business act or practice."

81.    Defendant's claims, nondisclosures (i.e., omissions) and misleading statements, as more fully set forth above, were false, misleading and/or likely to

deceive a reasonable consumer within the meaning of the UCL. Such conduct is ongoing and continues to this date.

82. Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs Rideout and Hairston have suffered injury in fact as a result of Defendant's unfair conduct.

83. Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff Rideout and the Class to injunctive relief against Defendant, as set forth in the Prayer for Relief.

84. Pursuant to Business and Professions Code §17203, Plaintiff Rideout and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

85. Plaintiffs Rideout and Hairston, on behalf of the Class, also seek an order for the disgorgement and restitution of all monies from the sale of the Products they purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition. Plaintiff Rideout, on behalf of the Class and herself, further seeks an order for prospective and retrospective injunctive relief.

86. **Tolling applies to the UCL under a recent decision by the California Supreme Court, *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191-1202 (2013). The "silence" about tolling and accrual of claims under the UCL "trigger[ed] a presumption in favor of permitting settled common law accrual rules to apply" and "the UCL is governed by common law accrual rules to the same extent as any other statute." *DC Comics v. Pac. Pictures Corp.*, 2:10-CV-03633-ODW, 2013 WL 1389969 (C.D. Cal. Apr. 4, 2013) (citing *Aryeh*, 55 Cal. 4th at 1193).**

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE FALSE ADVERTISING LAW**

**California Business and Professions Code §§ 17500, *et seq.***

**(By Plaintiffs Rideout and Hairston and on Behalf of the Nasal Allergy, Sinus Relief, and Allergy Eye Relief Purchasers Class and Earache, Dry Eye and Pink Eye Relief Purchasers Class as Against Defendant)**

87.    As to all advertising claims set forth herein, Plaintiffs Rideout and Hairston repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

88.    Plaintiffs Rideout and Hairston have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiffs purchased the Products in reliance upon Defendant's marketing claims.  Plaintiffs used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

89.    Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq*. because Defendant advertised the Products Rideout and Hairston purchased in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendant to be untrue or misleading.

90.    Defendant's wrongful business practices have caused injury to Plaintiffs and the Class.

91.    Pursuant to section 17535 of the California Business and Professions Code, Plaintiff Rideout and the Class seek an order of this court enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

92.     Plaintiffs Rideout and Hairston also seek an order for the disgorgement and restitution of all monies from the sale of the Products which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (By Plaintiffs On Behalf of all Class Members, as Against Defendant)

93.     As to all advertising claims set forth herein, Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

94.     On the Products' labels and through their marketing campaign as described above, Defendant made affirmations of fact or promises, or description of goods, which formed "part of the basis of the bargain" at the time of purchase.  *See* Ex. 1.   All representations from the Products' labels cited in quotations in this complaint constituted affirmations of fact or promises that became part of the basis of the bargain for Plaintiffs and the Class' purchases.

95.     The warranties were breached because the Products did not live up to their warranties, and that breach caused injury in the form of the lost purchase price for the Products.  *See* Cal. Com. Code §2313(1); *see also Zwart v. Hewlett-Packard Co.*, 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create warranties).

96.     As a result of Defendant's breach of its warranties, Plaintiffs and the Class have been damaged in the amount of the purchase price of the products they purchased.

1

2

3

**FIFTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(By Plaintiffs On Behalf of all Class Members, as Against Defendant)**

4   97.   Plaintiffs repeat, reallege and incorporate by reference each and every

5   allegation contained above as if fully set forth herein.

6   98.   Defendant, through their acts and omissions set forth herein, in their sale,

7   marketing and promotion of the Products, made representations to Plaintiffs and the

8   Class that the Products provide the claimed health benefits, among other

9   representations. *See* Ex. 1.  All representations made in the Products' labels cited in

10   quotations in this complaint constituted affirmations of fact or promises that became

11   part of the basis of the bargain for Plaintiffs and the Class' purchases.

12   99.   Plaintiffs and the Class bought the Products manufactured, advertised and

13   sold by Defendant.

14   100.   Defendant is a merchant with respect to the goods of this kind which

15   were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and other

16   consumers an implied warranty that those goods were merchantable.

17   101.   However, Defendant breached its warranties implied in the contract for

18   the sale of goods in that the Products do not provide the purported claimed health

19   benefits, as set forth in detail herein.

20   102.   As a result of Defendant's conduct, Plaintiffs and the Class did not

21   receive goods as impliedly warranted by Defendant to be merchantable, in that they

22   did not conform to the promises and affirmations made on the packaging or label of

23   the goods.

24   103.   Plaintiffs and Class have sustained damages as a proximate result of the

25   foregoing breach of implied warranty in an amount to be determined at trial.

26

27

28

**SIXTH CAUSE OF ACTION**

**VIOLATION OF MAGNUSON-MOSS ACT, 15 U.S.C. §§ 2301,** *et seq.*

**(On Behalf of Plaintiffs and all Class Members as Against Defendant)**

104. Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained above as if fully set forth herein.

105. Plaintiffs bring this claim individually and on behalf of the members of the Class.

106. Plaintiffs allege implied warranties under the common and statutory laws of their home states, and Defendant's breach of those warranties as set forth herein. Plaintiffs bring suit on those claims under the MMWA as expressly allowed by federal law. *See* 15 U.S.C. § 2301(7).

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,**

**Fla. Stat. Ann. §§ 501 201,** *et seq.*

**(On Behalf of Plaintiff Allen and the Stress, Anxiety, Sleeplessness & Ear Wax Relief Purchasers Class, as Against Defendant)**

107. Plaintiff Allen repeats, re-alleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

108. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"). The purpose of FDUPTA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade of commerce. Fla. Stat. Ann § 501 202(2).

109. Plaintiff Allen and the members of the Class are consumers as defined by Fla. Stat. § 501.203. The Products are goods within the meaning of FDUPTA. Defendant is engaged in trade or commerce within the meaning of FDUPTA.

110. Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce."

111. Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

112. Federal decisions provide that "a deceptive practice is one that is likely to mislead consumers." *Jovine v. Abbott Labs., Inc.,* 2011 U.S. Dist. LEXIS 39702, 2011 WL 1376029 (S.D. Fla. Apr. 12, 2011) (quoting *Davis v. Powertel,* 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000)). The Fourth District Court of Florida has held that an unfair practice is one that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Yachting Promotions, Inc. v. Broward Yachts, Inc.,* 792 So.2d 600, 664 (Fla. 4th DCA 2001).

113. Defendant's unfair and deceptive practices are likely to mislead, and have misled, Plaintiff Allen and Class members who purchased the Products.

114. Further, Defendant has violated the FDUPTA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

115. Plaintiff Allen and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for the Products but the Products were not as represented to them.

116. The damages suffered by Plaintiff Allen and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of the Defendant, as more fully described above.

117. Pursuant to Fla. Stat. § 501.211(1), Plaintiff Allen and the Class seek a declaratory judgment and court order for restitution and disgorgement.

118.   Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Allen and the Class make claims for damages, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against Defendant as to each and every cause of action, including:

A.   An order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of class notice;

B.   An order awarding Plaintiffs and the proposed Class members damages and punitive damages in the amount to be determined at trial;

C.   An order awarding restitution and disgorgement of Defendant's revenues from the Products to Plaintiffs and the proposed Class members;

D.   An order awarding attorneys' fees and costs to Plaintiffs;

E.   An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

F.   An order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products, including a recall of the falsely and deceptively labeled Products;

G.   An order providing for all other such equitable relief as may be just and proper.

1

**JURY DEMAND**

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

Dated:  October 11, 2013

4

*/s/ Ronald A. Marron*

Ronald A. Marron

*ron@consumersadvocates.com*

5

ALEXIS WOOD (SBN 270200)

*alexis@consumersadvocates.com*

6

SKYE RESENDES (SBN 278511)

*skye@consumersadvocates.com*

7

3636 4th Avenue, Suite 202

8

San Diego, California 92103

9

Telephone: (619) 696-9006

Facsimile: (619) 564-6665

10

11

***Attorney for Plaintiffs and the Proposed Class***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Allen v. Similasan Corp.*, No. 3:12-cv-376-BTM (WMC)

THIRD AMENDED COMPLAINT

1    I, Kim Allen, declare as follows:

2    1.    I am the Plaintiff in this action.  I make this affidavit as required by

3  California Civil Code Section 1780(d).

4    2.    The Complaint in this action is filed in a proper place for the trial of

5  this action because Defendant is doing business in this county.

6    I declare under penalty of perjury under the laws of the United States that

7  the foregoing is true and correct.

8

9  Dated: May 30, 2013

10

11    Kim Allen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                    AFFIDAVIT OF VENUE

1    I, Lainie Rideout, declare as follows:

2       1.    I am the Plaintiff in this action.  I make this affidavit as required by

3    California Civil Code Section 1780(d).

4       2.    The Complaint in this action is filed in a proper place for the trial of

5    this action because Defendant is doing business in this county.

6       I declare under penalty of perjury under the laws of the United States that

7    the foregoing is true and correct.

8

9    Dated: June 3rd, 2013

10

11                                                      Lainie Rideout

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          AFFIDAVIT OF VENUE

1    I, Kathleen Hairston, declare as follows:

2    1.    I am the Plaintiff in this action. I make this affidavit as required by

3    California Civil Code Section 1780(d).

4    2.    The Complaint in this action is filed in a proper place for the trial of

5    this action because Defendant is doing business in this county.

6    I declare under penalty of perjury under the laws of the United States that

7    the foregoing is true and correct.

8

9    Dated: 6/3 , 2013

10                                              _Kathleen Hairston_

11                                              Kathleen Hairston

12

13

14

15

16

17

18        *TO:*

19        *LINDSAY*

20        *PESHOFF*

21

22        *619*

23        *564 - 6665*

24

25

26

27

28                        **AFFIDAVIT OF VENUE**

**<u>Table of Exhibits</u>**

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit 1 | Pictures of Products | 1 – 10 |
| Exhibit 2 | CLRA Letters | 11 – 25 |

# EXHIBIT 1

## Stress & Tension Relief







**EXHIBIT 1 PAGE 1**

# **Anxiety Relief**







**EXHIBIT 1 PAGE 2**

# Sleeplessness Relief









**EXHIBIT 1 PAGE 3**

## Ear Wax Relief











**EXHIBIT 1 PAGE 4**

## Nasal Allergy Relief







EXHIBIT 1 PAGE 5

# Sinus Relief





**EXHIBIT 1 PAGE 6**

## Allergy Eye Relief







**EXHIBIT 1 PAGE 7**

# Earache Relief





EXHIBIT 1 PAGE 8

# Dry Eye Relief







**EXHIBIT 1 PAGE 9**

# Pink Eye Relief







EXHIBIT 1 PAGE 10

# EXHIBIT 2

Saved
2·3·12

Law Offices of

# Ronald A. Marron

A Professional Law Corporation

3636 Fourth Avenue, Ste 202
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

February 3, 2012

### Via: Certified Mail, (receipt acknowledgment with signature requested

Similasan Corporation
Similasan AG
Attn: Legal Department
1745 Shea Center Drive, Suite 380
Highlands Ranch, CO 80129

RE:    *NOTICE: Violations of the California Consumer Legal Remedies Act and Duty*
       *to Preserve Evidence*

Dear Sir or Madam,

   **PLEASE TAKE NOTICE** that this letter constitutes notice under the California
Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,*
(the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying
**SIMILASAN CORPORATION and SIMILASAN AG** ("YOU" and "YOUR") of
violations of the Act and of our demand that YOU remedy such violations within thirty
(30) days from your receipt of this letter.

   This firm represents Kim Allen, who purchased several products YOU distribute
in California and elsewhere. For example, Ms. Allen purchased Stress & Tension Relief,
Anxiety Relief, Sleeplessness Relief, and Ear Wax Relief (the "Products"). Ms. Allen
was exposed to and saw YOUR claims about the product, purchased the product in
reliance on those claims, and suffered injury in fact as a result of YOUR false and
misleading advertising.

   YOU falsely market YOUR Products by putting false and misleading claims on
the labels. For example, YOU advertise Stress & Tension Relief with the claims that it
"relieves symptoms of stress and simple nervous tension," "inner tension with
palpitations," "inner tension with gastro-intestinal cramps and nervous constipation,"
"nervous digestive disorders," and is a remedy for "nervous sleeplessness, general
irritability, and tension." You advertise Sleeplessness Relief as a "night time sleep aid,"
and the label also makes claims that the product "relieves symptoms of occasional
sleeplessness and/or restless sleep," "difficulty in going to sleep and frequent waking

**EXHIBIT 2 PAGE 11**

during the night," "disturbed sleep due to inability "to switch off", "tenseness and restlessness," "light sleep and excessive dreaming," among other representations. You advertise Anxiety Relief with the claims that it "soothes and calms," "relieves symptoms of apprehension, restlessness, and simple nervous tension associated with anxiety," among other representations. You advertise Ear Wax Relief for "relief of chronic ear wax congestion" and claim it "removes wax," among other representations. In fact, the Products do not prove relief as advertised. The purported active ingredients in Ear Wax Relief are Causticum for itching and wax build-up; Graphites for dryness and wax build-up; Lachesis for dryness and wax build-up; and Lycopodium for wax build-up. The purported active ingredients in Anxiety Relief are Argentum nitricum for anxiety, apprehension and nervousness; and Strophanthus gratus for nervousness and palpitations. The purported active ingredients in Sleeplessness Relief are Avena sativa for sleeplessness, nervousness; Hepar sulphuris for restlessness; Pulsatilla for irregular/agitated sleep; and Zincum valerianicum for sleeplessness. The purported active ingredients in Stress & Tension Relief are Asa foetida for apprehension, irritability, and restlessness; Crataegus for nervousness and restless sleep; and Lycopus virginicus for inner tension and palpitations; and Passiflora for restless sleep from exhaustion.

In summary, YOU claim that YOUR products contain active ingredients that will alleviate the symptoms indicated above. In fact, even if YOUR products contain the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the product, such that the product is ineffective for its intended uses. Further, YOUR products are essentially sugar pills with no efficacy beyond a placebo.

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding your products or services.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR products under the representation that they provide significant health benefits, when in fact they do not.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

**EXHIBIT 2 PAGE 12**

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations.  Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the first amended class action complaint on behalf of our client, Ms. Kim Allen, and all other similarly-situated California and U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation. See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990).  This firm anticipates that all e-mails, letters, reports, internal corporate instant messages, and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process.  You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is a **senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000)... [emphasis added]".

**EXHIBIT 2 PAGE 13**

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

Sincerely,

THE LAW OFFICES OF RONALD A. MARRON APLC

/s/ Ronald A. Marron
Ronald A. Marron
Attorney for Kim Allen,
and all others similarly situated

**EXHIBIT 2 PAGE 14**

**U.S. Postal Service**[TM]
**CERTIFIED MAIL**[TM] **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Similasan Corporation

Street, Apt. No.; or PO Box No. 1745 Shea Center Drive #380

City, State, ZIP+4 Highlands Ranch CO 80129

7009 1680 0001 2306 3422

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Similasan Corp.
Similasan AG
Attn Legal Department
1745 Shea Center Drive
S e 380
Highlands Ranch Co 80129

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Krystyna Cisneros   ☑ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

Krystyna Cisneros 2-6-12

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

FEB 2012

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
*(Transfer from service label)*

7009 1680 0001 2306 3422

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**EXHIBIT 2 PAGE 15**

Law Offices of

# Ronald A. Marron

A Professional Law Corporation

3636 Fourth Avenue, Ste 202
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

March 29, 2012

### Via: Certified Mail, (receipt acknowledgment with signature requested

Similasan Corporation
Similasan AG
Attn: Legal Department
1745 Shea Center Drive, Suite 380
Highlands Ranch, CO 80129

Daniel J. Herling
Howard I. Miller
Michelle Gillette
Keller and Heckman LLP
One Embarcadero Center
Suite 2110
San Francisco, CA 94111

**RE:    NOTICE:** *Violations of the California Consumer Legal Remedies Act and Duty to Preserve Evidence*

Dear Sir or Madam,

   **PLEASE TAKE NOTICE** that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,* (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **SIMILASAN CORPORATION and SIMILASAN AG** ("YOU" and "YOUR") of violations of the Act and of our demand that YOU remedy such violations within thirty (30) days from your receipt of this letter.

   This firm represents Lainie Rideout, who purchased products YOU distribute in California and elsewhere. For example, Ms. Rideout frequently purchased Similasan's Sinus Relief and Nasal Allergy Relief (the "Products") at CVS and Walgreens pharmacies in Victorville, California. Ms. Rideout was exposed to and saw YOUR claims about the Products, purchased the Products in reliance on those claims, and suffered injury in fact as a result of YOUR false and misleading advertising.

**EXHIBIT 2 PAGE 16**

YOU falsely market YOUR Products by putting false and misleading claims on the labels.  For example, YOU represent that Sinus Relief "soothes & moisturizes," "relieves congestion," relieves symptoms such as "runny nose due to colds & flu," "inflammation of mucous membranes (rhinitis)," "sinus congestion" "nasal congestion," "post-nasal drip" and "irritating dryness of nasal passages."  The purported active ingredients in Sinus Relief include *Kali bichromicum 6X, Luffa operculata 6X* and *Sabadilla 6X*.  However, even if Sinus Relief contains the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the product, such that the product is ineffective for its intended uses.

Further, YOU claim on the labels of Nasal Allergy Relief that it "relieves allergic congestion, itching & runny nose," "gently stimulates the body's natural ability to relieve allergic congestion, itchy, runny nose and rhinitis cause by pollen, pet dander dust and mold spores," relieves symptoms of "allergies accompanied by runny nose, itching and/or burning of the nose, watery eyes, sneezing and swollen mucous membranes (congestion)," "acute and chronic allergic rhinitis," "post nasal drip caused by allergies," and "sinus pressure caused by allergies."  The purported active ingredients in Nasal Allergy Relief include *Cardiospermum 6X, Galphimia glauca 6X, Luffa operculata 6X* and *Sabadilla 6X*.  However, just like with Sinus Relief, even if Nasal Allergy Relief contains the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the product, such that the product is ineffective for its intended uses.

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding your products or services.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR products under the representation that they provide significant health benefits, when in fact they are essentially sugar pills with no efficacy beyond a placebo.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

**EXHIBIT 2 PAGE 17**

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations.  Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the first amended class action complaint on behalf of our client, Ms. Lainie Rideout, and all other similarly-situated California and U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation.  See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990).  This firm anticipates that all e-mails, letters, reports, internal corporate instant messages, and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process.  You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is a **senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000)... [emphasis added]".

**EXHIBIT 2 PAGE 18**

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

<div style="margin-left: 40%">

Sincerely,

THE LAW OFFICES OF RONALD A. MARRON APLC

/s/ Ronald A. Marron
Ronald A. Marron
Attorney for Lainie Rideout,
and all others similarly situated

</div>

**EXHIBIT 2 PAGE 19**

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Attn Legal Dept.

Sent To Similasan Corporation; Similasan AG
Street, Apt. No.; or PO Box No. 1745 Shea Center Dr. Suite 360
City, State, ZIP+4 Highlands Ranch, CO 80129

PS Form 3800, August 2006          See Reverse for Instructions

7009 1680 0001 2306 3576

---

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Similasan Corporation
Similasan AG
Attn: Legal Department
1745 Shea Center Dr. Suite 360
Highlands Ranch, CO 80129

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)           ☐ Yes

2. Article Number
(Transfer from service label)     7009 1680 0001 2306 3576

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**EXHIBIT 2 PAGE 20**

Law Offices of

# Ronald A. Marron
### A Professional Law Corporation

3636 Fourth Avenue, Ste 202
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

May 16, 2012

**Via: Certified Mail, (receipt acknowledgment with signature requested**

Similasan Corporation
Similasan AG
Attn: Legal Department
1745 Shea Center Drive, Suite 380
Highlands Ranch, CO 80129

Daniel J. Herling
Howard I. Miller
Michelle Gillette
Keller and Heckman LLP
One Embarcadero Center
Suite 2110
San Francisco, CA 94111

*RE:    NOTICE: Violations of the California Consumer Legal Remedies Act and Duty
to Preserve Evidence*

Dear Sir or Madam,

**PLEASE TAKE NOTICE** that this letter constitutes notice under the California
Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,*
(the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying
**SIMILASAN CORPORATION and SIMILASAN AG** ("YOU" and "YOUR") of
violations of the Act and of our demand that YOU remedy such violations within thirty
(30) days from your receipt of this letter.

This firm represents Kathleen Hairston, who purchased products YOU distribute
in California and elsewhere.  For example, Ms. Hairston purchased Similasan's Allergy
Eye Relief, Earache Relief, Dry Eye Relief and Pink Eye Relief (the "Products") at
Target located in Upland, California on at least two occasions.  Ms. Hairston was
exposed to and saw YOUR claims on the Products' labels that the Products provide
healthy and natural relief of various symptoms and ailments, purchased the Products in
reliance on those claims, and suffered injury in fact as a result of YOUR false and
misleading advertising.

YOU falsely market YOUR Products by putting false and misleading claims on
the labels.  For example, YOU represent that Allergy Eye Relief is "100% natural" "sting
free formula," that "relieves itching, burning and watering associated with allergies,"
"give[s] your eyes soothing relief from irritating allergens such as pet dander, mold
spores and more," "stimulates the body's natural ability to relieve the symptoms of

**EXHIBIT 2 PAGE 21**

allergies such as burning, itching, redness and excessive watering of your eyes," "sterile eye drops." The purported active ingredients in Allergy Eye Relief include *Apis* 6X, *Euphrasia 6X* and *Sabadilla* 6X. However, even if Allergy Eye Relief contains the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the Product, such that the Product is ineffective for its intended uses.

Further, YOU claim on the label of Earache Relief that it is "100% natural," "relieves pain, soothes and calms," that "The sharp pain of an earache needs quick relief. Soothe the pain and discomfort with Similasan's Earache Relief," "Earache Relief stimulates the body's natural ability to soothe and relieve earache pain that may be caused by colds, flu or swimmer's ear. Plus, it is gentle enough for children and strong enough for adults." The purported active ingredients in Earache Relief include *Chamomilla* 10X, *Mercurius Solubilis* 15X and *Sulphur* 12X. However, just like with Allergy Eye Relief, even if Earache Relief contains the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the Product, such that the Product is ineffective for its intended uses.

Further, YOU claim on the label of Dry Eye Relief that it is "Eye Doctor Recommended," "100% natural," "Sting Free Formula," "Preservative free," "Healthy Relief" that "Relieves Dryness, Clears Redness- Soothes & Moisturizes," "Stimulates the Body's Natural Ability to Relieve Symptoms of Dry Eyes Such as Redness of Eyes and Lids, Sensitivity to Light and the Sensation of Grittiness," where "Smog, Stress, Age and Contact Lens Wear Can Dry out the Eyes but you Can Have Soothing Relief from the Discomfort of Dry Eyes with Similasan's Dry Eye Relief Eye Drops." The purported active ingredients in Dry Eye Relief include *Belladonna* 6X, *Euphrasia* 6X and *Mercurius Sublimatus* 6X. However, just like with Allergy Eye Relief and Earache Relief, even if Dry Eye Relief contains the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the Product, such that the Product is ineffective for its intended uses.

Further, YOU claim on the label of Pink Eye Relief that it has "100% Natural Active Ingredients," "Relives the Redness, Watery Discharge and Burning Associated with Conjunctivitis," "[] Relieves minor symptoms associated with viral and environmental conjunctivitis, such as inflammation and redness of the whites of the eyes and inner eyelids, excessive watery (clear) discharge, sensation of grittiness, redness or burning." The purported active ingredients in Pink Eye Relief include *Belladonna* 6X, *Euphrasia* 6X and *Hepar Sulphuris* 12X. However, just like with Allergy Eye Relief, Earache Relief and Dry Eye Relief, even if Pink Eye Relief contains the purportedly active ingredients as listed above, those ingredients are so greatly diluted as to be non-existent in the Product, such that the Product is ineffective for its intended uses.

**EXHIBIT 2 PAGE 22**

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding your products or services.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR products under the representation that they provide significant health benefits, when in fact they are essentially sugar pills with no efficacy beyond a placebo.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations. Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the amended class action complaint on behalf of our client, Ms. Kathleen Hairston, and all other similarly-situated California and U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

**EXHIBIT 2 PAGE 23**

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation. See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990). This firm anticipates that all e-mails, letters, reports, internal corporate instant messages, and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process. You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is a **senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000)… [emphasis added]".

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

              Sincerely,

              THE LAW OFFICES OF RONALD A. MARRON APLC

              /s/ Ronald A. Marron
              Ronald A. Marron
              Attorney for Lainie Rideout,
              and all others similarly situated

**EXHIBIT 2 PAGE 24**

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☒ Agent  ☐ Addressee<br>B. Received by (*Printed Name*) _____  C. Date of Delivery 5-21-12 |
| 1. Article Addressed to:<br><br>Similusan Corporation<br>Similusan AG<br>Attn: Legal Department<br>1745 Shea Center Drive, Suite 380<br>Highlands Ranch, CO 80129 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7012 0470 0002 2191 8244 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | Postmark<br>Here |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To Similasan Corporation, Similasan AG
Street, Apt. No.;
or PO Box No. 1745 Shea Center Dr. Suite 380
City, State, ZIP+4
Highland Ranch, CO 80129    (Hairston)

PS Form 3800, August 2006    See Reverse for Instructions

7012 0470 0002 2191 8244

**EXHIBIT 2 PAGE 25**