1
2
3
4
5
6
7
8
9
10
11                    **UNITED STATES DISTRICT COURT**
12                  **SOUTHERN DISTRICT OF CALIFORNIA**

13
14  KIM ALLEN, LAINIE RIDEOUT,           Case No. 12-cv-376 BAS (JLB)
    and KATHLEEN HAIRSTON, on
15  behalf of themselves, all others     **ORDER:**
    similarly situated, and the general    **(1) GRANTING IN PART AND**
16  public,                                     **DENYING IN PART**
                                                **DEFENDANT'S MOTION**
17              Plaintiff,                       **TO STRIKE; AND**
                                           **(2) GRANTING IN PART AND**
18        v.                                     **DENYING IN PART**
                                                **PLAINTIFFS' MOTION**
19  SIMILASAN CORPORATION,                      **FOR CLASS**
                                                **CERTIFICATION**
20              Defendant.
                                         **[ECFs 106, 100]**
21

22        Before the Court is Plaintiffs Lainie Rideout and Kathleen Hairston's motion

23  for class certification. ECF 100. Defendant Similasan Corporation opposed (ECF

24  114) and Plaintiffs replied (ECF 121). Defendant has also moved to strike two

25  supplemental expert reports attached to Plaintiffs' motion to certify class because

26  they were untimely, as well as the initial reports of those experts. ECF 106. The

27  Court finds these motions suitable for determination on the papers submitted and

28  without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, Plaintiffs'

motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Defendant produces, markets, and sells homeopathic products in hundreds of retail stores across the country, including major chains such as Walgreens, Target, CVS, Rite-Aid, and Walmart. TAC ¶ 10; Pls.' Mot. 1. Plaintiffs challenge six over-the-counter products "that are marketed and sold as ear, nose and eye remedies[.]" Pls.' Mot. 1. These include "Earache Relief (now called Ear Relief), Nasal Allergy Relief, Sinus Relief, Pink Eye Relief (now called Irritated Eye Relief), Dry Eye Relief, and Allergy Eye Relief" (collectively, the "Products"). *Id.* Each Product's label claims the respective Product is effective, as well as other assertions, including "Eye Doctor Recommended," "Pharmacist Recommended," "Preservative Free," etc. *Id.* at 2. Plaintiffs allege that every label states the respective Product has "100% Natural Active Ingredients," or another similar statement. TAC 14:15–16[1], 17:26-27, ¶¶ 78, 88, 99, 107.

Plaintiffs purchased Defendant's products, allegedly in reliance on Defendant's marketing claims. Pls.' Mot. 2–3; TAC ¶ 123. Rideout purchased both Nasal Allergy Relief and Sinus Relief two to three times a year from 2000 to 2010. TAC ¶ 60, 16:22-27. Rideout ceased purchasing Defendant's Products in October 2010 after researching them online, where she "discovered [that] the Product[s] did not provide the benefits, characteristics and qualities as advertised[.]" *Id.* at ¶ 62, 17:3-8. Between 2009 and 2010, Hairston purchased Allergy Eye Relief, Earache Relief, Dry Eye Relief, and Pink Eye Relief at least twice each. *Id.* at ¶¶ 75, 84, 96, 104. In October 2010, Hairston concluded that the Products did not work for their denoted purposes after using the Products as their labels directed. *Id.* at ¶¶ 76, 85, 97, 105.

---

[1] The paragraphs of Plaintiffs' TAC are misnumbered starting on page 16, resulting in duplicate paragraph numbers. Subsequent citations to the TAC will be to a specific paragraph unless the paragraph is duplicated elsewhere, in which case citation will be to the page and line numbers.

1

Plaintiffs claim Defendant's Products are "worthless" because they do not work, describing several of the Products as mere "high-priced water." TAC 15:3-17, 18:11-22, ¶¶ 81, 93, 100, 108, 120, 129. Plaintiffs also claim "Preservative Free" and "100% Natural" are false labels because the Products contain artificial preservatives. *Id.* at 15:3-17, 18:11-22, ¶¶ 81, 100, 108. Lastly, Plaintiffs claim both Earache (Ear) Relief and Pink Eye (Irritated Eye) Relief are illegal to sell. *Id.* at ¶¶ 91, 110; Pls.'s Mot. 1–2.

Plaintiffs move for certification of the following classes:

> All purchasers of Similasan Corporation homeopathic Products in California labeled Nasal Allergy Relief or Sinus Relief, for personal or household use and not for resale, from April 2, 2008 to the present (the "Nasal Allergy and Sinus Relief Purchasers Class");

and

> All purchasers of Similasan Corporation homeopathic Products in California, for personal or household use and not for resale, labeled Allergy Eye Relief, Earache Relief (also called Ear Relief), Dry Eye Relief and Pink Eye Relief (also called Irritated Eye Relief) from June 4, 2009 to present (the "Allergy Eye, Earache, Dry Eye and Pink Eye Relief Purchasers Class").

> Excluded from both Classes are governmental entities, Defendant, any entity in which Defendant has a controlling interest, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

Pls.' Mot. 3. It appears from Plaintiffs' proposed classes that Rideout is to represent the first class and Hairston the second class.

## **DEFENDANT'S MOTION TO STRIKE**

Defendant has moved to strike the Third Report of Dr. Jon A. Krosnick (ECF 100-4) and the Addendum to the Expert Report of William R. Ackerman, CPA by Charlene Podlipna (ECF 100-6) on the grounds they were untimely filed and contain new opinions and information prejudicing Defendant. Def.'s Mot. Str. 2–3,

ECF 106. In the same motion, Defendant also moves to strike the initial reports of Dr. Krosnick and Ackerman under *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Def.'s Mot. 1. For the following reasons, the Court **GRANTS** Defendant's motion to strike insofar as it relates to the supplemental reports of Dr. Krosnick (ECF 100-4) and William R. Ackerman (ECF 100-6) and **DENIES** it as it relates to Dr. Krosnick's and Ackerman's initial reports. ECF 106.

## I.     The Supplemental Reports Are Inadmissible

On March 24, 2014, Magistate Judge Bernard G. Skomal amended the scheduling order to require the parties to submit their initial expert reports by April 28, 2014. ECF 84. Magistrate Judge Jill L. Burkhardt later set the rebuttal expert disclosure deadline for May 23, 2014. ECF 94. Class discovery closed on July 18, 2014, and Plaintiffs were required to move for class certification by July 29, 2014. *Id.* Plaintiffs' initial expert reports did not mention the premium pricing method of calculating damages. One of Defendant's experts did discuss the premium pricing model in her initial report. Def.'s Mot. Str. 11. A premium pricing model attempts to quantify the decrease in true market value if a false or misleading statement is removed from a product's label. A plaintiff then can recover the difference between the "premium" amount paid and the true market value of the product. *See Carr v. Tadin, Inc.*, No. 12–CV–3040, 2014 WL 7499454, at *3 (S.D. Cal. Dec. 5, 2014). Without evidence of this theory, Plaintiffs' standalone challenges to ancillary representations (those representations unrelated to the Plaintiffs theory of liability that the products are worthless because they are ineffective, *e.g.*, "Eye Doctor Recommended") are not entitled to class certification because common questions do not predominate.

Plaintiffs did not submit a rebuttal expert report on the premium pricing model before the rebuttal expert deadline. Def.'s Mot. Str. 11. On June 20, 2014, the district court in *Allen v. Hyland's, Inc.*, 300 F.R.D. 643 (C.D. Cal 2014) ordered supplemental briefing from Plaintiffs' attorneys, who also manage that

case. Pls.' Opp'n Mot. Str. 13. The relevant order is four pages long, with approximately one page discussing the need for supplemental briefing on the premium pricing model. *See* Marron Decl. Ex. A, ECF 117-1.

One month later, on July 18, 2014, Plaintiffs notified Defendant of their intention to file supplemental expert reports on the premium pricing model in this case. Pls.' Opp'n Mot. Str. 14–15. Plaintiffs filed for class certification on July 29, 2014, including untimely supplemental reports from Dr. Krosnick and Ackerman in their motion. ECFs 100-4, 100-6. The Krosnick supplemental report discusses a new methodology for determining whether the label's representations caused consumers to pay a premium, and Ackerman's supplemental report discusses how to calculate the premiums paid with information supplied by Dr. Krosnick. *Id.*

Federal Rule of Civil Procedure 26(e)(1) states a party "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete . . . ." "Rule 37(c)(1) provides that a party failing to provide information required by Rule 26(a) or (e) 'is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting Fed. R. Civ. Proc. 37(c)(1)). Factors considered by Courts in determining whether to exclude evidence include: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Branch v. Gannis*, No. 1:08–cv–01655, 2014 WL 5819212, at *1 (E.D. Cal. Nov. 7, 2014) (internal citation and quotation marks omitted).

Plaintiffs attempt to explain their untimeliness by pointing to Defendant's production of its financial data from 2012–2014 as the impetus for these supplemental reports. Pls.' Opp'n Mot. Str. 12. However, Plaintiffs admit that

Defendant had previously provided financial data for the period between 2008–2012. *Id.* There is no meaningful change in the character or applicability of the data found in any of the updated production that would necessitate Plaintiffs' experts' radically new damage theory almost three months after the initial expert report deadline. It is disingenuous to attempt to excuse these untimely expert reports based on new facts.

Plaintiffs further argue that the *Hyland's* order is "new authority," which necessitated these untimely reports. Pls.' Opp'n 13–14. The Court disagrees with Plaintiffs' definition of "new." The relevant *Hylands* order, totaling less than a page, ordered those plaintiffs to produce supplemental briefing addressing the Supreme Court's decision in *Comcast v. Behrend*, 133 S. Ct. 1426 (Mar. 27, 2013). *Id. Comcast* requires damages models to demonstrate a connection between the injury and the damages sought at the class certification stage. *Id.* at 1432–1433. Without an adequate methodology to calculate damages on a class-wide basis, "individual damage calculations will inevitably overwhelm" class litigation, precluding satisfaction of Rule 23's predominance requirement. *Id.* at 1433.

The Supreme Court decided *Comcast* over a year before the expert disclosures deadline in this case; nevertheless, Plaintiffs' experts failed to address its requirements in their reports. It is counsel's duty to remain apprised of binding precedent; "new authority" is newly decided, not newly discovered, precedent.

Plaintiffs' minimization of the prejudice to Defendant is unconvincing. They argue Defendant could not be surprised by Plaintiffs' novel damages model because Defendant's initial expert report discussed *Comcast*'s implications. *Id.* at 17. While it is true that Defendant's expert initially considered the issue, Plaintiffs' experts did not. Further, Plaintiffs' novel damage theory was not included in their rebuttal to Defendant's disclosures, and therefore Defendant could reasonably surmise that Plaintiffs chose not to proceed on such a theory. When Plaintiffs informed Defendant less than two weeks before the class certification deadline that

they would pursue a new damages model, it was inexcusably short notice. Considering the short notice, and that class discovery ended on the date Plaintiffs notified Defendant of their intent, there was little time for Defendant to adequately respond to Plaintiffs' supplemental reports. Defendant's surprise and Plaintiffs' inability to cure both favor a ruling of inadmissibility.

In light of the foregoing, the Court finds that Plaintiffs' untimely supplemental reports were neither substantially justified nor harmless. Consequently, the Court **GRANTS** Defendant's motion to strike the Third Report of Dr. Jon A. Krosnick (ECF 100-4) and the Addendum to the Expert Report of William R. Ackerman, CPA by Charlene Podlipna (ECF 100-6). ECF 106. The Court **ORDERS** both supplemental reports **STRICKEN** from the record. ECFs 100-4, 100-6.

## II. Ackerman's Initial Report Is Admissible

Federal Rule of Civil Procedure 702 provides that an expert witness may testify as to that expert's opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principals and methods; and

(d) the expert has reliably applied the principals and methods to the facts of the case.

The inquiry required by Rule 702 "is a flexible one." *Daubert*, 509 U.S. at 594. The Court must find "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 590. "The focus, [] must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

Ackerman is a Certified Public Accountant who has been practicing in California for over 25 years. Ackerman Decl. ¶ 2, ECF 100-5. Ackerman reviewed data produced by Defendant during discovery and concluded that restitution damages can be calculated in this litigation by multiplying retail prices by the

number of units sold. *Id.* at ¶¶ 8–10. Although simplistic in nature, Ackerman has reliably shown a method with which to calculate the damages based on the facts of this case. Considering that a satisfactory damage calculation model is necessary to satisfy Rule 23(b)(3)'s predominance requirement, the Court finds that Ackerman's report is relevant and helpful for purposes of this motion. The Court therefore **DENIES** Defendant's motion to strike as it pertains to the Expert Report of William R. Ackerman, CPA (ECF 100-5). ECF 106.

### III.    Dr. Krosnick's Initial Report is Admissible

It is clear that Dr. Krosnick is well-educated and highly qualified in his field of expertise. *See* Krosnick Decl. 28–116, ECF 100-3. A large part of Dr. Krosnick's report discusses the usefulness of surveys generally, as well as criticisms of a survey purportedly received by Plaintiffs from Defendant in discovery. *Id.* at ¶¶ 10–35. The Court finds these portions of Dr. Krosnick's report to be irrelevant. However, Dr. Krosnick does present a methodology for determining whether Defendant's representations on the packaging of its Products "affects a reasonable consumer's preferences regarding purchasing and using the products." *Id.* at ¶ 48. As discussed *infra*, an objective standard is utilized for most, if not all, of Plaintiffs' claims. Consequently, the Court finds Dr. Krosnick's report to be helpful, reliable, and relevant. Defendant's motion to strike as it pertains to the First Report of Dr. Jon A. Krosnick (ECF 100-3) is thus **DENIED**.

## CLASS CERTIFICATION

### I.    Legal Standard

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). In order to justify departing from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,

431 U.S. 395, 403 (1977)). In this regard, Rule 23 contains two sets of class-certification requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co*., 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp*., 251 F.R.D. 439, 443 (N.D. Cal. 2008).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id*. at 443 (citing Fed. R. Civ. P. 23(a)). "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id*. (citing Fed. R. Civ. P. 23(b)). Plaintiff seeks class certification under Rule 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. The Court must engage in a "rigorous analysis," often requiring some evaluation of the "merits of the plaintiff's underlying claim," before finding that the prerequisites for certification have been satisfied. *Id*. "Although some inquiry into the substance of a case may be

necessary[,] . . . it is improper to advance a decision on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (citations and internal quotation marks omitted).

## II. Discussion

### A. *Ascertainability*

Defendant argues that Plaintiffs' proposed class is not clearly ascertainable because each putative class member must self-identify. Def.'s Opp'n 17–20. Courts require that a proposed class be "adequately defined and clearly ascertainable before a class action may proceed." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014); *see Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014). A proposed class is sufficiently ascertainable if its members can be identified through objective criteria. *Id.* (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999). The proposed class "need not be so ascertainable that every potential member can be identified at the commencement of the action." *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 544 (E.D. Cal 2014) (quoting *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (internal quotation marks omitted)).

Defendant cites *Maybelline* for the proposition that where a court has no way to verify if a purchaser is actually a class member, "class certification may be improper." *Maybelline*, 300 F.R.D. at 456; Def.'s Opp'n 18. In *Maybelline*, the proposed class was unascertainable because it was not administratively feasible to determine the class members. *Maybelline*, 300 F.R.D. at 455. The district court looked to the low price of the makeup and determined that self-identification would be unreliable because class members would not "precisely recall the items purchased, the quantity purchased, and the amount paid." *Id.* at 456. However, even though in that case the class was unascertainable, that fact alone did not defeat class certification. *Id.* The *Maybelline* court ultimately denied class certification on multiple grounds. *Id.* at 458 (typicality not satisfied), 460–461

(predominance and superiority not satisfied).

In *Lily v. Jamba Juice Co.*, No. 13–cv–02998, 2014 WL 4652283, at *2–*6 (N.D. Cal. Sept. 18, 2014), the court addressed the ascertainability concerns inherent in class actions targeting inexpensive consumer goods. There, the class members purchased low-priced smoothie kits in alleged reliance on the packaging's "All Natural" claim. *Id.* at *1. Similarly to the present case, Jamba Juice had no records of who purchased kits from third-party retailers. *Id.* at *4; Def.'s Opp'n 18. The district court observed that it is these situations, in which individual injuries are small but cumulative injury is large, that most benefit from treatment as a class action. *Lily*, 2014 WL 4652283, at *4. The court found the class ascertainable, determining the criteria for identification was objective (*i.e.*, either the class member purchased the kit or not) and the plaintiffs' plan gave sufficient notice to class members. *Id.* at *3, *5. The district court also noted that if false claims appeared to dilute legitimate claims, the court could address it when, and if, that issue arose. *Id.* at *6.

Here, Plaintiffs' proposed class definitions do use objective criteria to identify class members. Consumers either purchased the Products during the specified time or they did not. Additionally, Plaintiffs have provided a detailed notice plan for class members, including advertisements on Facebook, in the California editions of *US Today*, and in the *San Diego Union-Tribune*. Retnasaba Decl. ¶¶ 4–11. This class notice targets the largest demographic of homeopathic remedy purchasers, Caucasian women over 35 years of age. *Id.* Plaintiffs also urge the Court to order Defendant to post notice of this suit on its website, which would likely result in the notice reaching over 50% of the class members. *Id.* at ¶ 12. Lastly, Plaintiffs propose several methods to weed out fraudulent claims, including identifying (1) separate claims from the same Internet Protocol address, (2) known submitters of fraudulent claims who are known in the class action community, (3) claims requesting payment be sent to penal institutions, (4) claims selecting

– 11 –

incorrect corroborating information such as the incorrect color of a Product package, and (5) claims that the Products were purchased in retail stores not used by Defendant. *Id.* at ¶ 28.

Because the class is objectively defined and any concerns of fraudulent claims can be adequately assuaged, the Court finds the classes ascertainable.

### B. *Federal Rule of Civil Procedure 23(a)*

#### i. Numerosity

Rule 23(a) requires the proposed class to be sufficiently numerous so that "joinder of all members is impracticable." The "requirement that an attempt to join all parties be 'impracticable' does not equate to 'impossible.'" *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal 2008). "Instead, an attempt to join all parties must only be difficult or inconvenient." *Id.* (internal citation omitted). And, "where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) (quoting *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)) (internal quotation marks and alteration omitted).

Defendant cites *Schwartz* for the proposition that "[a] higher level of proof than mere common sense impression or extrapolation from cursory allegations is required to establish numerosity." Def.'s Opp'n 24 (quoting *Schwartz*, 183 F.R.D. at 681) (internal quotation marks omitted). Plaintiffs support this criterion with more than cursory allegations, and Defendant's own statements support the conclusion that numerosity is met. *See* Quail Decl. ¶ 3, ECF 14-2 ("Similasan sells a portion of its products in California through approximately 6 California retailers and 7 national retailers."). Defendant sells its Products through at least thirteen retailers, and it is therefore readily apparent that the class is so numerous that it would be impracticable to join all parties.

ii. <u>Commonality</u>

"[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 755 F.3d 1161, 1164–1165 (9th Cir. 2014) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)) (internal quotation marks omitted). This requirement is construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). To satisfy commonality, "even a single common question will do[.]" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal citation, quotation marks, and alteration omitted). The question raised must drive the resolution of the litigation. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 962 (9th Cir. 2013) (internal citation and quotation marks omitted).

Plaintiffs raise four specific questions: (1) whether Defendant committed the conduct alleged in the TAC; (2) whether Defendant's conduct constituted a violation of the law; (3) whether Defendant acted willfully, recklessly, negligently, or with gross negligence in violating the law; and (4) whether class members are entitled to relief. Pls.' Mot. 11. Plaintiffs also state that another common contention arises from these four questions: whether "Defendant's claims of Similasan's effectiveness and the Products' qualities were so misleading as a whole that they were able to deceive a reasonable consumer." *Id.* This is an objective test, and as such is a common question determinable on a class-wide basis, and it is a question that drives the resolution of this case. Under this requirement's permissive standard, the Court rejects Defendant's arguments that individual inquiries are necessary to determine both whether the Products are efficacious and whether a representation was material. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 660–661 (C.D. Cal. 2014) ("If . . . Defendants made material misrepresentations about products which do not work and cannot possibly work . . . then consideration of individual users' symptoms and the distinct active

ingredients in each product is unnecessary.") The Court instead analyzes these arguments in its discussion of the predominance requirement of Rule 23(b)(3).

### iii.  Typicality

Under the typicality requirement, the Court examines "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted). The focus is on the nature of the claim rather than the specific facts from which the claim arises. *Id.* (internal citation omitted). The Court construes this requirement permissively. *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 560 (9th Cir. 2013) (citing *Hanlon*, 150 F.3d at 1020).

Defendant argues that Plaintiffs' claims are not typical because (1) they admitted to taking medications that could interfere with the Products' efficacy; (2) two Products were effective for Rideout, which creates a divergence from the class in the evidence she will need to present; and (3) Plaintiffs are both uniquely subject to Defendant's statute of limitations defense, which, to the class's detriment, will require much time and effort to resolve. Def.'s Opp'n 22–23. The Court has determined that Plaintiffs, like many other purchasers of the Products, would be on inquiry notice of the Products' ineffectiveness shortly after initially using them. The continuous accrual doctrine nevertheless permits Plaintiffs to proceed on those claims predicated on purchases within the statutory timeframe. It is likely that the statute of limitations analysis undertaken in this Court's Order on Defendant's Motion for Summary Judgment is broadly applicable to the class, not unique to these Plaintiffs. *See* Summ. J. Order Section II, ECF 142. Thus, a class definition bounded by the statutory time limits appropriately addresses Defendant's concerns.

Defendant's argument regarding other medications is also unpersuasive. It is

likely that some members of the class took allopathic medications at the same time they took Defendant's homeopathic Products, while others solely used Defendant's homeopathic Products. However, Plaintiffs' legal theory is that the Products are mere placebos, and such placebos by definition cannot interact with other medications. This renders all class members' use of other medications irrelevant if Plaintiffs prove ineffectiveness.

This is not to say that Plaintiffs' legal theory is correct; Defendant can attempt to prove that the use of allopathic medications affects the Products' efficacy. But, when determining typicality, the Court focuses on the defendant's conduct and the plaintiff's legal theory, not the specific facts from which the claim arises. *Parsons*, 754 F.3d at 685 (internal citation omitted); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (internal citation omitted). Defendant's conduct in the instant case was uniform: it sold its Products bearing representations about the Products' effectiveness. *See, e.g.*, Quail Decl., Ex. 4 (Dry Eye Relief package stating "The active ingredients in Similisan Eye Drops work effectively with no known side effects and no known drug interactions."), ECF 114-15. Plaintiffs' legal theory that the Products do not work encompasses those who took allopathic medication in addition to the homeopathic remedies. For this reason, the Court rejects Defendant's argument.

Defendant's argument that the products were "effective" for Rideout also fails, in part because it misstates Rideout's deposition testimony. Rideout stated she purchased the Sinus Relief Product for "nasal dryness," and that the Product relieved that symptom. Rideout Dep. 34:7–9; 40:1–3, ECF 114-2. This is potentially consistent with Plaintiffs' theory that the Product was mere water, as water has the known property of reducing dryness even in the absence of effective medication. *See, e.g.*, TAC 18:19–22 (describing Sinus Relief as "simply water with preservatives, with no trace of the hyper diluted 'active ingredients'"); "it wets it, so it's not dry . . . it just made—made it so that it wasn't dry in my nose."

Rideout Dep. 39:2–13, ECF 114-2. Contrary to Defendant's argument, this does not "create[] substantial divergence in the evidence required to prove Rideout's efficacy claims versus the class members for whom the Products allegedly provided no relief." Def.'s Opp'n 22. This statement does not necessarily amount to an admission that the Sinus Relief Product's active ingredients are effective in relieving the symptoms listed on its box, which include sinus congestion, nasal passage inflammation, and nasal dryness and irritation. Quail Decl., Ex. 1 (Sinus Relief package), ECF 114-12. Because Plaintiffs' theory is that the Products are no more effective than water, Rideout's statements are consistent with that theory.

The Court finds that Plaintiffs' claims are typical because they arise from the same general course of conduct Plaintiffs allege has injured the class. The deviations Defendant forwards are either illusory or do not render Plaintiffs' claims atypical.

### iv. Adequacy

Rule 23 requires that Plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Defendant argues that Plaintiffs are not adequate representatives because they "have displayed a striking lack of knowledge regarding their claims and the underlying facts." Def.'s Opp'n 25. In assessing whether the adequacy requirement is satisfied, "courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020) (internal quotation marks omitted). Defendant does not argue that Plaintiffs or their counsel have any existing conflicts of interest with the putative class. Because the Court is unable to identify one, it finds that the first question is answered in the negative.

Defendant does not expressly address the second question, but the Court

analyzes its opposition to this prong under that context. Defendant refers to instances in which Plaintiffs "did not recall" certain facts, including what Products they purchased, purchase dates, and the specific representations they relied on. Def.'s Opp'n 25. First, Defendant's statement that Plaintiffs could not remember the Products they purchased is disingenuous. Defendant cites numerous examples of Plaintiffs' deposition testimony in which neither Plaintiff remembered specific dates of purchases or the name of the first Product they purchased. Def.'s Opp'n 25 n.9. This does not equate to the inability to remember *which* Products each Plaintiff purchased. Moreover, both Hairston and Rideout testified that they did remember the Products they purchased. Rideout Dep. 27:10–15, ECF 114-2; Hairston Dep. 76:15–20, ECF 114-3.

Second, Defendant cites *Burkhalter Travel Agency v. MacFarms Int'l Inc.*, 141 F.R.D. 144, 154 (N.D. Cal 1991), for the proposition that an unknowledgeable class representative creates the risk of denying due process to the putative class members. Def.'s Opp'n 24–25. However, in *Burkhalter* the class representative lacked the basic understanding of who the defendants were. *Burkhalter*, 141 F.R.D. at 154. The representative also separately testified that the class would be composed of defendants, only purchasers in Hawaii, and then only purchasers in San Francisco. *Id.* Plaintiffs here are aware of the identity of the defendant, the Products they purchased, and the basis for their claims. *See* Rideout Dep. 51:10– 52:24; Hairston Dep. 152:23–153:12, ECF 114-3. The Court is unsurprised that Plaintiffs cannot remember specific dates of purchases, and it is not a "striking lack of knowledge" about Plaintiffs' claims.

Both Plaintiffs filed declarations stating that they understand the responsibilities associated with being a class representative, such as acting in the best interest of the class and actively participating in the litigation, including being available for questioning at trial. Hairston Decl. ¶ 11, ECF 100-7; Rideout Decl. ¶ 8, ECF 120. The minor discrepancies highlighted by Defendant do not persuade

the Court that Plaintiffs would be inadequate representatives.

Finally, Defendant does not attack the adequacy of Plaintiffs' counsel. After close examination of counsel's qualifications, the Court finds that they would fairly and adequately represent the class. *See* Marron Decl. Ex. 7, 88–94, ECF 119. Consequently, Plaintiffs satisfy the adequacy requirement.

### C. *Federal Rule of Civil Procedure 23(b)(3)*

#### i. Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal citation and quotation marks omitted). "The focus is on 'the relationship between the common and individual issues.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). "The predominance test of Rule 23(b)(3) is far more demanding than the commonality test under Rule 23(a)(2)." *Villalpando v. Excel Direct Inc.*, No. 12–cv–04137, 2014 WL 6625011, at *18 (N.D. Cal. Nov. 20, 2014) (quoting *Amchem Prod.'s, Inc. v. Windsor*, 521 U.S. 591, 624 (1997)) (internal quotation marks omitted).

Defendant argues that "Plaintiffs' claims raise individualized inquiries on injury, causation, materiality, and damages, all of which dwarf the questions allegedly common to the classes." Def.'s Opp'n 3. Rather than addressing each claim separately, Defendant breaks its argument down into two parts: (1) Determining efficacy of the Products requires individualized proof and (2) Plaintiffs' labeling claims do not raise common questions as to causation, reliance, and materiality. *Id.* at 4, 8. Because each cause of action includes different material elements, the Court addresses each of Plaintiffs' causes of action separately.

#### 1. *California Business and Professions Code*

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

misleading advertising. . . ." Cal. Bus. & Prof. Code § 17200. "[R]elief under the UCL is available without individualized proof of deception, reliance and injury." *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009). Under California's False and Misleading Advertising Law ("FAL"), "[i]t is unlawful . . . to make or disseminate . . . [in] any advertising device . . . [that] which is untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500. Further, "[a]ny violation of the FAL constitutes a violation of the UCL." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012) (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). To prove a UCL or FAL claim based on false advertising, Plaintiffs must show that "members of the public are likely to be deceived." *Tobacco II*, 46 Cal. 4th at 312 (internal citation and quotation marks omitted). This is an objective standard which focuses on the effect of the advertising on a "reasonable consumer." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161–1162 (9th Cir. 2012) (internal citation omitted).

Defendant argues that predominance is not satisfied for these claims because Plaintiffs have not introduced evidence "showing the reasonable consumers' uniform interpretation of what uses and benefits each Product advertised or were expected." Def.'s Opp'n 9. However, at this stage the focus is on whether Plaintiffs' claims are subject to common proof, not whether Plaintiffs have proved their claims. The "reasonable consumer" standard is an objective one and may be used to prove the effect of the advertising as to the whole class.

There are six Products at issue, each with various labels throughout the class period. However, the front of every package of every Product states in some form that the Product "relieves" specified symptoms. Though the labels changed, the efficacy representations remained essentially the same. *See, e.g.*, Marron Decl. Ex. 2, 6 (Nasal Allergy Relief package stating "Multi-Symptom Relief" above bullet point list which includes "Allergic Congestion," "Itching," and "Runny Nose), 7 (different Nasal Allergy Relief package stating "Relieves allergic congestion,

itching & runny nose"), 15 (Allergy Eye Relief package stating "Multi-Symptom Relief" above bullet point list which includes "Itching," "Burning," "Watering," and "Redness"), 16 (different Allergy Eye Relief package stating "Relieves Itching, Burning and Watering Associated with Allergies"). Given the uniformity of the efficacy representations, the Court is not persuaded that the small differences in labelling would cause individual issues to predominate.

### 2. Consumers Legal Remedies Act

California's Consumers Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices[,]" including "[r]epresenting that goods or services have . . . characteristics . . . [or] benefits . . . which they do not have . . . ." Cal. Civ. Code § 1770(a). "Establishing the first element—that the defendants engaged in conduct prohibited by the statute—is plainly susceptible to common proof, as it focuses on the defendants' actions." *Webb v. Carter's Inc.*, 272 F.R.D. 489, 501 (C.D. Cal 2011).

"[T]he CLRA differs from the UCL because it requires that each class member have an actual injury caused by the practice declared to be unlawful by the CLRA." *Hyland's*, 300 F.R.D. at 668 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)). In a class action, causation "may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (emphasis removed) (internal citation omitted). "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did." *Webb*, 272 F.R.D. at 502 (quoting *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1294 (2002)).

Defendant argues that "the question of what label information is 'material' to a 'reasonable consumer' is so variable as to make class treatment impossible and

improper." Def.'s Opp'n 9. The Court disagrees. Defendant has not convinced the Court that any consumer would purchase Defendant's Products if they made no efficacy claims. Thus, these efficacy representations are material. *See Hyland's*, 300 F.R.D. at 667 ("It strains credulity to suggest that a significant portion of the general consuming public or of targeted consumers do not rely—at least in part— on representations about the products' uses and effectiveness on product packaging when buying the products.") (internal quotation marks omitted). If Plaintiffs prove the Products are ineffective, then Defendants have made material misrepresentations, establishing causation for the entire class under the CLRA. Plaintiffs' CLRA claims are thus subject to common proof.

### 3. Breach of Express Warranty

"To prevail on a breach of express warranty claim . . . a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, No. CV 11–05379, 2015 WL 1062756, at *35 (C.D. Cal Feb. 23, 2015) (internal citation and quotation marks omitted). "Proof of reliance on specific promises or representations is not required." *Id.* (citing *Weinstat v. Dentsply Int'l. Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)). "As with California's consumer protection statutes, [] class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer." *Id.* (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493, 509 (S.D. Cal 2013)). Privity is not required for breach of express warranty claims. *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 143–144 (2008) (internal citation omitted).

Whether the Defendant's statements about the Products' efficacy are affirmations of fact, promises, or a description of the goods focuses on Defendant's labels, not consumers, and therefore is plainly subject to common proof. If those

labels are express warranties, such warranties are the basis of the bargain because consumers have no other reason to purchase the Products. Finally, if Plaintiffs' theory that the Products are ineffective is true, then Defendant breached the warranty. *See Hyland's*, 300 F.R.D. at 669 (applying the same analysis to similar facts). Predominance is therefore met for Plaintiffs' breach of express warranty claims.

### 4. Breach of Implied Warranty of Merchantability

"Under the Song–Beverly Act [("SBA")], every retail sale of 'consumer goods' in California includes an implied warranty by the manufacturer and the retail seller that the goods are 'merchantable' unless the goods are expressly sold 'as is' or 'with all faults.'" *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009) (quoting Cal. Civ. Code §§ 1791.3, 1792). Under the SBA, goods are merchantable if they "(1) [p]ass without objection in the trade under the contract description[; ¶] (2) [a]re fit for the ordinary purposes for which such goods are used[; ¶] (3) [a]re adequately contained, packaged, and labeled[; and ¶] (4) [c]onform to the promises or affirmations of fact made on the container or label." *Id.* (quoting Cal. Civ. Code § 1791.1).

Plaintiffs need only show that the Products did not conform to the promises or affirmations on the Products' labels in order to successfully prove this claim. Plaintiffs' theory is that homeopathy is ineffective in general, and, consequently, Defendant's Products are ineffective as well. Pls.' Mot 2. General ineffectiveness is subject to common proof, and thus common questions predominate Plaintiffs' SBA claim. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal 2012) (finding predominance met for plaintiffs' SBA claim because the falseness of defendant's representation about the products safeness was subject to common proof).

"[U]nlike the implied warranty under the Commercial Code, there is no privity requirement under the Song–Beverly Warranty Act." *In re Carrier IQ, Inc.*,

No. C–12–md–2330, 2015 WL 274054, at \*41. Because Plaintiffs' implied warranty claim is brought under the Song–Beverly Act, this case is unlike those which have found predominance unsatisfied for implied warranty claims due to privity issues. *See Hyland's*, 300 F.R.D. at 670 (finding the predominance requirement not satisfied where each class member would have needed to prove vertical privity with the defendant); *ConAgra*, 2015 WL 1062756, at \*37 (same).

### 5. *Magnuson–Moss Warranty Act*

In their opposition to summary judgment, Plaintiffs argued that their Magnuson–Moss Warranty Act ("MMWA") claims are based on state law, and not on the federal statute's definition of "warranty." Pls.' Opp'n Summ. J. 23, ECF 116. "Therefore, the federal [MMWA] claims hinge on the state law warranty claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008). Since Plaintiffs have satisfied the predominance requirement for their state breach of express and implied warranty claims, they have also satisfied the requirement for their MMWA claims. *See Hyland's*, 300 F.R.D at 670 (explaining that an MMWA claim can be brought under state law, and that the substantive elements of the MMWA claim are the same as under state warranty law).

### 6. *Damages*

Plaintiffs' experts opine that restitution damages can be calculated for the class. *See* Ackerman Decl. ¶ 10. Here, restitution is the equivalent of out-of-pocket expenses because, under Plaintiffs' theory, the purchased Products are ineffective and therefore worthless. *See Hyland's*, 300 F.R.D. at 670–671. Plaintiffs have presented a damages model consistent with the theory of their case, and therefore damages are subject to common proof on a class-wide basis.

However, Plaintiffs' theory of damages does not account for the ancillary representations, including "Eye Doctor Recommended," "Pharmacist Recommended," "Preservative Free," "100% Natural," and "100% Natural Active Ingredients." These representations, while possibly untrue, would not necessarily

render the Products worthless if invalidated. Plaintiffs' current damage model cannot account for this discrepancy. Under *Comcast*, the Court cannot certify a class based on these ancillary representations without an established relationship between the theory of liability and the damage calculation. Accordingly, the Court **DENIES** certification as to all of Plaintiffs' ancillary representations unrelated to the Products' efficacy.

## III. Statute of Limitations

In the Order denying summary judgment, the Court found that the continuous accrual tolling doctrine applies, which allows Plaintiffs to proceed only on claims that accrued within the statute of limitations. Summ. J. Order Section II, ECF 142. In light of the common questions presented by Plaintiffs, the statute of limitations analysis is the same for the class members. At this point, the classes are defined based on the four-year statute of limitations for Rideout's claims. If at some later point it becomes necessary to narrow the time frame of the certified class, the Court will reconsider the issue.[3]

## IV. Superiority

Defendant does not separately argue that the superiority requirement is not met. Instead, Defendant argues that superiority is not satisfied because "[Plaintiffs'] claims raise highly individualized inquiries that, as a practical matter, render a class action prohibitively difficult to manage." Def.'s Opp'n 17. This argument is directed primarily at the predominance requirement, which this Court has already addressed.

"In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). The first factor involves an examination of "the class members' interests in individually controlling the prosecution or defense of separate actions[.]" Fed. R.

---

[3] The Court observes that the requested remedy is the same for all causes of action, and therefore it is unlikely that such narrowing will become necessary if Defendant is found liable.

Civ. P. 23(b)(3)(A). "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190. Here, each Product costs approximately $10. The cost of each Product is so low that no prudent individual would file suit against Defendant, which makes a class action the best method of seeking restitution for each class members' claim. *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 672 (C.D. Cal. 2009) (acknowledging there was no "realistic alternative" to class action where individual class members' litigation costs far exceeded the expected recovery).

The second factor requires the Court to examine "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]" Fed. R. Civ. P. 23(b)(3)(B). Neither party identifies any suit brought by or against the putative class members. The Court could not locate any such case. Therefore this factor weighs in favor of class certification.

The third factor examines "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[.]" Fed. R. Civ. P. 23(b)(3)(C). Neither Plaintiffs nor Defendant argues this forum is less appropriate than any other. Plaintiffs are not residents of the Southern District of California, so the Court finds no grounds on which to construe this factor in favor of class certification. Consequently, the Court finds this factor to be neutral on the issue of superiority.

The fourth factor requires an examination of "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192 (internal citation omitted). Plaintiffs argue that the putative class members' claims are "virtually identical" and that the legal standards at issue are objective, both of which support class certification because the need for individual proof is low. Pls.' Mot. 19–20. Additionally, Plaintiffs have divided the classes

into two groups: those who purchased the same Products Rideout purchased and those who purchased the same Products Hairston purchased. *Id.* at 21. Since the Court has already found that individual issues will not predominate on these claims, a class action is manageable. Considering that the Rule 23(b)(3) factors weigh in favor of class certification, a class action is a superior method of adjudicating this controversy.

In sum, because Plaintiffs have met their burden at the class certification stage, the Court **GRANTS IN PART** their motion for class certification. The Court certifies the classes after modifying them to remove the ancillary representations and limit the time period in conformance with this Order.

## CONCLUSION & ORDER

In light of the foregoing, the Court rules as follows:

1. Defendant's motion to strike is **GRANTED** insofar as it relates to the supplemental reports of Dr. Jon A. Krosnick (ECF 100-4) and William R. Ackerman (ECF 100-6) and is **DENIED** as it relates to Dr. Krosnick's and Ackerman's initial reports. ECF 106;

2. Plaintiffs' motion for class certification insofar as it relates to ancillary claims for Product representations other than efficacy is **DENIED;**

3. The following classes are certified:

   (1) All purchasers of Similasan Corporation homeopathic Products in California, for personal or household use and not for resale, labeled Nasal Allergy Relief or Sinus Relief from February 10, 2008 to present; and

   (2) All purchasers of Similasan Corporation homeopathic Products in California, for personal or household use and not for resale, labeled Allergy Eye Relief, Earache Relief (also called Ear Relief), Dry Eye Relief and Pink Eye Relief (also called Irritated Eye Relief) from June 4, 2009 to present.

   Excluded from both Classes are governmental entities, Defendant, any entity in which Defendant has a controlling interest, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned

subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

**IT IS SO ORDERED.**

Dated: March 27, 2015

Hon. Cynthia Bashant
United States District Judge