**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**GOMEZ TRIAL ATTORNEYS**
JOHN H. GOMEZ (SBN 171485)
*john@gomeztrialattorneys.com*
JOHN P. FISKE (SBN 249256)
*jfiske@gomeztrialattorneys.com*
DEBORAH S. DIXON (SBN 248965)
*ddixon@gomeztrialattorneys.com*
655 West Broadway, Suite 1700
San Diego, California 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496

*Class Counsel*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM ALLEN, et al., on behalf of themselves, all others similarly situated, and the general public,<br><br>       Plaintiffs,<br><br>   v.<br><br>SIMILASAN CORPORATION,<br><br>Defendants. | Case No. 3:12-cv-00376-BAS (JLB)<br>Class Action<br>Filed:  February 10, 2012<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SIMILASAN CORP.'S MOTION TO DECERTIFY CLASSES**<br><br>Judge:      Hon. Cynthia A. Bashant<br>Date:       October 13, 2015<br>Room:     4B(Schwartz Courthouse)<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

INTRODUCTION .......................................................................................... 1

LEGAL STANDARD ..................................................................................... 2

ARGUMENT ................................................................................................. 4

I.   MATERIALITY IS A QUESTION OF FACT FOR THE JURY TO
     DETERMINE AND NOT SUITABLE FOR DECERTIFICATION .................. 4

II.  COMMON ISSUES PREDOMINATE IN THIS CASE ..................................... 5

     1. CLRA ............................................................................................5

        i.   The Krosnick Survey, Common Sense, and Plaintiffs' FTC Evidence
             Establish Materiality ......................................................... 6

        ii.  The Materiality of the Labeling Claims Does Not Vary Among
             Consumers ........................................................................ 11

             a.   Plaintiffs' Science Experts Provide a Classwide Method of
                  Proving Falsity, Tied to the Products in this Case ...................... 12

     2. Reliance, and thus Materiality, Are Only Elements of the CLRA Claim,
        Not Plaintiffs' UCL and FAL Claims ...........................................16

     3. Plaintiffs' Breach of Warranty and MMWA Claims Are Subject to
        Predominate, Common Proof ........................................................18

III. PLAINTIFFS' DAMAGES MODEL MATCHES THEIR THEORY OF
     LIABILITY ..................................................................................... 18

CONCLUSION ......................................................................................... 24

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

# TABLE OF AUTHORITIES

**Cases**

*Algarin v. Maybelline, LLC*,
 300 F.R.D. 444 (S.D. Cal. 2014) ................................................................. 10

*Allen v. Hyland's, Inc.*,
 300 F.R.D. 643 (C.D. Cal. 2014) ...................................... 6,7,10,20,21,22,23

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) .......................................................................................... 3

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
 133 S. Ct. 1184 (2013) ................................................................................... 19

*Brazil v. Dole Packaged Foods, LLC*,
 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ................... 19, 20

*Bruno v. Eckhart Corp.*,
 280 F.R.D. 540 (C.D. Cal. 2012) ..................................................................... 2

*Califano v. Yamasaki*,
 442 U.S. 682 (1979) ......................................................................................... 3

*Comcast v. Behrend*,
 133 S. Ct. 1426 (2013) ................................................................................... 19

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
 660 F.3d 1170 (9th Cir. 2011) ......................................................................... 4

*Crown, Cork & Seal Co. v. Parking*,
 462 U.S. 345 (1983) ......................................................................................... 2

*Delarosa v. Boiron, Inc.*,
 818 F. Supp. 2d 1177 (C.D. Cal. 2011) ..................................................... 11,15

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
 213 F.3d 454 (9th Cir. 2000) ........................................................................... 3

*Dvora v. Gen. Mills, Inc.*,
 2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) ................................ 6

*F.T.C. v. Pantron I Corp.*,
 33 F.3d 1088 (9th Cir. 1994) ......................................................................... 21

*Forcellati v. Hyland's*,
 CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)
 ........................................................................................ 7,11,13,20,21,22

*Forcellati v. Hyland's, Inc.* ("*Forcellati II*"),
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ....................................................... 20

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) .................................................................................... 3

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996) ................................................................. 2

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... 3

*Herazo v. Whole Foods Market*,
   No. 14-61909-CIV, 2015 WL 4514510 (S.D. Fla. July 24, 2015) ............................. 14

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) .................................................................... 18

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ............................................................. 8, 9,10

*In re POM Wonderful LLC Marketing & Sales Practices Litig.*,
   2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ............................................. 16

*In re POM Wonderful LLC*,
   ML 10-02199 DDP (RZx), 2014 WL 1225184 (C.D. Cal. March 25, 2014) ............. 20

*In re Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2009) .............................................................. 6,17,22,23

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ......................................................................... 11,16,17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods
   Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal 2010) ....................................................... 6

*Johns v. Bayer Corp.*,
   2012 U.S. Dist. LEXIS 13410 (S.D. Cal. Feb. 3, 2012) ............................... 4

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
   285 F.R.D. 573 (E.D. Cal. 2012) ............................................................. 10

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ............................................................. 17

*Kosta v. Del Monte Foods, Inc.*,
   No. 12-CV-1722 YGR, 2015 WL 4593175 (N.D. Cal. July 30, 2015) ................. 10

iii

*Allen et al. v. Similasan Corp., et al.*, Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

*Kwikset v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ................................................................... 5

*Lanovaz v. Twinings N. Am., Inc.*,
  C-12-02646-RMW, 2014 WL 165238 (N.D. Cal. Apr. 24, 2014) ............................ 20

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ................................................................... 17

*Leyva v. Medline Indust., Inc.*,
  716 F.3d 510 ................................................................... 19

*McCrary v. Elations Co.*, LLC,
  EDCV 13-00242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............ 20

*Menagerie Prods. v. Citysearch*,
  2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009) ................................... 16

*Nat'l Council Against Health Fraud v. King Bio Pharms., Inc.*,
  107 Cal.App.4th 1336 (2003) ................................................................... 12

*Occidental Land, Inc. v. Super. Ct.*,
  18 Cal. 3d 355 (1976) ................................................................... 11

*Ortega v. Natural Balance, Inc.*,
  300 F.R.D. 422 (C.D. Cal. 2014) ............................................. 20, 21,22,23

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ................................................................... 2

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ................................................... 4, 5,16

*United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*,
  265 U.S. 438 (1924) ................................................................... 6

*Valentino v. Carter–Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................... 3

*Wal–Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011) ................................................................... 3

*Weinstat v. Dentsply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (2010) ................................................................... 11

*Werdebaugh v. Blue Diamond Growers*,
  12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014) ...................... 19,20

*Wiener v. Dannon Co.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ................................................................... 11

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................... 6, 16

*Zeisel v. Diamond Food Inc.*,
    2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) ........................... 4

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................ 3

**Statutes**

Cal.Bus. & Prof. Code § 17200 ................................................................... 1

Cal. Bus. & Prof. Code § 17203 ................................................................. 17

Cal.Bus. & Prof. Code § 17500 ................................................................... 1

Cal. Health & Safety Code § 109875 ......................................................... 15

Cal. Health & Safety Code § 110110 ......................................................... 15

Cal. Health & Safety Code § 110111 ......................................................... 15

Cal. Health & Safety Code § 110115 ......................................................... 15

Cal. Civ. Code § 1750. ................................................................................ 2

**Rules**

Fed. R. Civ. P. 23(b)(3) ......................................................................... 3, 19

Fed. R. Civ. P. 23(c)(1) ............................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **INTRODUCTION**

Plaintiffs Lainie Rideout and Kathleen Hairston bring this consumer protection class action lawsuit on behalf of themselves and the certified classes of purchasers of Defendant Similasan Corporation's ("Similasan") products for violations of the California Consumer Legal Remedies Act ("CLRA," Civ. Code §§ 1750, *et seq*.), the California Unfair Competition Law ("UCL," Bus. & Prof. Code §§ 17200, *et seq*.), the California False Advertising Law ("FAL," Bus. & Prof. Code §§ 17500, *et seq*.), and breach of warranty. *See generally* Dkt. No. 58 (Third Am. Compl. or "TAC").

On March 30, 2015, this Court certified two classes: one for California purchasers of Defendant's Nasal Allergy and Sinus Relief products, and a second for California purchasers of Defendant's Allergy Eye Relief, Earache Relief (also called Ear Relief), Dry Eye Relief and Pink Eye Relief (also called Irritated Eye Relief). Dkt. No. 143 ("Order"). Defendant now moves for decertification (Dkt. No. 164, "Mot.") on three grounds, which should be denied for the following reasons:

First, Plaintiffs' experts' opinions, the labels, government reports, and a recently released Federal Trade Commission ("FTC") report demonstrate that effectiveness claims on over-the-counter ("OTC") remedies are material to consumers' purchasing decisions. This same evidence shows purchasers are mislead by the marketing of homeopathic products, including Defendant's own drugs.

Second, Plaintiffs have common evidence that the effectiveness claims on the Products at issue are false or deceptive. Plaintiffs' scientific evidence is directly linked to the Products. In contrast, Defendant's own expert, Peter A.G. Fisher of London, U.K., has zero experience with the Products as they are not even sold in Great Britain. *See* Pls.' Evid. Objs. to Def.'s Experts, filed concurrently herewith.

Third, Plaintiffs' damages methodology for restitution of the full purchase price is tethered to their liability theories that the Products are ineffective, illegal, and nothing more than placebos. Binding Ninth Circuit precedent holds that a manufacturer who sells

placebo pills without informing consumers cannot take credit for the placebo effect. Rather, for ineffective products and unlawful products, the full purchase price must be restored to defrauded consumers.

As a whole, Defendant's Motion asks the Court to consider the same evidence it already considered during class certification. It is, in essence, a motion for reconsideration and not decertification. Now that discovery has closed, Plaintiffs have gathered even stronger evidence to prove their classwide claims. Any dispute between the experts only shows that classwide treatment is appropriate for resolving this case on the merits. The Court should therefore deny Defendant's Motion in its entirety.

## LEGAL STANDARD

An order certifying a class represents a tentative ruling that is subject to alteration or amendment before final judgment. Fed. R. Civ. P. 23(c)(1). Because a plaintiff seeking certification bears the burden of demonstrating that the proposed class satisfies the requirements of Rule 23, "[i]t follows, therefore, that a party seeking decertification of a class bear the burden of demonstrating that the elements of Rule 23 have not been established." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000); *see also Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 544 (C.D. Cal. 2012). The burden for decertification is "relatively heavy, since doubts regarding the propriety of class certification should be resolved in favor of certification." *Slaven*, 190 F.R.D. at 651. This is because upon certification the "parties can be expected to rely on it, conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that it will not be altered except for good cause." *Bruno*, 280 F.R.D. at 544.

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parking*, 462 U.S. 345 (1983)). A class action "may be certified if the trial court is satisfied after a rigorous analysis, that

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon* ("*Falcon*"), 457 U.S. 147, 161 (1982).  To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Wal–Mart Stores, Inc. v. Dukes* ("*Dukes*"), 131 S.Ct. 2541, 2548 (2011); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 462 (9th Cir. 2000).  These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b).  *Dukes*, 131 S.Ct. at 2548.  Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here.  A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).  The predominance inquiry measures the relative weight of the common to individualized claims.  *Id.*  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ARGUMENT**

### **I.   MATERIALITY IS A QUESTION OF FACT FOR THE JURY TO DETERMINE AND NOT SUITABLE FOR DECERTIFICATION**

Defendant first contends that Plaintiffs cannot prove materiality for the CLRA. Defendant is wrong, however, because materiality is a question of fact susceptible to common proof that Plaintiff need not demonstrate for class certification. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011) ("a plaintiff need not prove materiality at the class certification stage . . . [because] materiality is a merits issue to be reached at trial or by summary judgment"); *Zeisel v. Diamond Food Inc.*, 2011 U.S. Dist. LEXIS 60608, at *31 (N.D. Cal. June 7, 2011) ("Diamond's argument and evidence focus largely on its position that the disputed labels were not material to a reasonable consumer. That argument goes to the merits of Zeisel's claims, and Diamond does not argue persuasively that Zeisel would be unable to establish reliance by means of common proof."); *Johns v. Bayer Corp.*, 2012 U.S. Dist. LEXIS 13410, at *16-17 (S.D. Cal. Feb. 3, 2012)

> Bayer claims the related issue of materiality also involves individual inquiries, since people buy multivitamins for a variety of reasons, many of which have nothing to do with prostate health benefits. But as noted above, California's consumer protection laws evaluate materiality under a reasonable person standard, not on an individualized basis. Given that the prostate health language appeared on four panels of every package of Men's Vitamins, it very well could have been material to a reasonable person. However, that is a question of fact to be determined at a later stage.).

In addition, Defendant takes issue with Dr. Krosnick's methodology, but that argument is best reserved for summary judgment, a motion in limine, or trial, which would be the correct forums for these contentions. *See Conn. Ret. Plans & Trust Funds*, 660 F.3d at 1177.  Any effort to argue the point now is an inappropriate attempt to convert decertification into a summary judgment motion.

In sum, Defendant's attempts to have the materiality of the claims and purchases decided as part of decertification proceedings is inappropriate.  *Stearns*, 655 F.3d at 1022.

## II.   COMMON ISSUES PREDOMINATE IN THIS CASE

### 1.  CLRA

Defendant challenges predominance as to Plaintiffs' CLRA claims on two general grounds:  (a) that the materiality of effectiveness claims on these Products cannot be adjudicated by classwide proof; (b) that Plaintiffs' science experts' do not prove the Products do not work, but argue against homeopathy generally.  Not only are the latter grounds an incorrect bases for challenging certification, but Defendant is incorrect as to its contentions.

Even if Plaintiffs were required to make some threshold showing of materiality to obtain certification, which they are not, *see* Sec. I. *supra*, they have done so.

First, California courts have recognized the materiality of label representations. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label . . . ."); *accord Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939, n.3 (9th Cir. 2008) ("It is not difficult to choose statements, designs and devices which will not deceive." (quoting *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924))); *Dvora v. Gen. Mills, Inc.*, 2011 U.S. Dist. LEXIS 55513, at *15 (C.D. Cal. May 16, 2011) (finding it "difficult to discount Plaintiff's contention that Defendant marketed its product . . . to capitalize on current health conscious messages" (record citation and internal quotation mark omitted)).

Second, it defies common sense to accept Defendant's assertion it labeled the Products for years with prominent but immaterial claims.  The application of common sense to facts is a well-established method for determining materiality. *See*, *e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab.*

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

*Litig.*, 754 F. Supp. 2d 1145, 1191 (C.D. Cal 2010) ("The Court agrees. . . that 'common experience supports Plaintiffs' claim that a potential car buyer would view as material a defect' that relates to control over the speed of the car.") (internal citation omitted).  The Court has already done that here, finding that common sense shows there is no other reason to buy these Products but for their effectiveness.  Order at 20-21.

Third, Defendant's contention that materiality varies from consumer to consumer, Mot. 11-14, does not defeat a finding that "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action . . ." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2009).  The labeling claims here will be judged by a reasonable consumer standard, and not subjective beliefs.  *Allen*, 300 F.R.D. at 661 ("Injury under California's consumer protection statutes is established by an objective test and does not depend on a consumer's particular state of mind.").  Therefore, Ms. Stamm's reports, on which Defendant relies for this contention (Mot. 12-13 & Dkt. Nos. 164-9, -10, -11), do not interject variability into the consumer fraud claims at issue in this case.  Rather, Ms. Stamm argues from a subjective consumer standpoint and uses anonymous consumer opinions posted online (*e.g.*, Dkt. No. 164-9 at ¶¶ 11, 20), which lack foundation, constitute hearsay, and are irrelevant to the issue of the objective consumer standard.  *See Allen*, 300 F.R.D. at 661.  Such online reviews also do not account for the placebo effect.  Ms. Stamm, an accountant, is not qualified to opine on consumer perception.  Pl.'s Evidentiary Objs., filed concurrently herewith.  She admits that the determination of whether claims of efficacy are material to consumers is outside the scope of her opinion.  Marron Decl., Ex. 5 (Stamm Dep. 70:1-11, 71:22-24).  Thus, none of Ms. Stamm's fatally flawed opinion affects predominance.

i.  *The Krosnick Survey, Common Sense, and Plaintiffs' FTC Evidence Establish Materiality*

Defendant takes issue with Dr. Krosnick's survey.  But a consumer survey is not absolutely necessary for certification or trial of this case.  This Court already found, without reference to any Krosnick report or survey, that, "[i]f Plaintiffs provide the Products are ineffective, then Defendants have made material misrepresentations,

6

1  establishing causation for the entire class under the CLRA.  Plaintiffs' CLRA claims are

2  thus subject to common proof."  Order at 21 (citing to *Allen v. Hyland's, Inc.*, 300 F.R.D.

3  643, 667 (C.D. Cal. 2014)).  The basis of this ruling was case law and the common sense

4  understanding that for consumers the effectiveness of OTC drugs, which only serve one

5  purpose – symptom relief, is material or an important factor to a consumer purchase.  *See*

6  *Allen*, 300 F.R.D. at 661 ("[A] plaintiff need not prove that the defendant's

7  misrepresentation was the only cause, or even the predominant or decisive factor

8  influencing his conduct.") (internal quotations and citations omitted); "Defendant[s]

9  cannot reasonably argue that a putative class member would purchase a product that does

10  not work."  *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL

11  1410264, at *11 (C.D. Cal. Apr. 9, 2014).

12      Defendant attacking Dr. Krosnick's methodology through use of another expert's

13  opinion (Dr. Poret's report at Dkt. 164-4)[1] does not disturb common proof – it supports

14  the use of this common proof in one trial to resolve these experts' competing contentions,

15  on the merits, as to all class members.  *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537,

16  561 (C.D. Cal. 2014) ("challenges to defects in methodology normally affect the weight

17

18  ─────────────────

19  [1] For the reasons set forth in Plaintiffs' Evidentiary Objections filed herewith, the Court
should disregard the opinion of Hal Poret, which Defendant offers to criticize Dr.
20  Krosnick's methodology and ultimate opinions.  Mr. Poret fails to satisfy the
requirements of *Daubert* and Federal Rule of Evidence 702.  Mr. Poret has never
21  conducted a consumer perception survey regarding the Similasan Products.  Marron
Decl., Ex. 8 (Poret Dep. 39:6-8).  Nor has Mr. Poret ever been published in a reputable
22  journal, aside from an intellectual law publication unrelated to homeopathy or consumer
perceptions.  *Id.* at 42:19-25.  Mr. Poret does not even know if the Similasan Products
23  claim to be effective for their intended uses (*id.* at 51:25-52:4), or even whether Dr.
Krosnick's report pertains to just the Similasan Products or homeopathic products in
24  general (*id.* at 52:22-53-21; 55:14-20; 58:13-23).  Accordingly, Mr. Poret does not have
25  the necessary qualifications to opine as an expert on consumer perceptions of OTC
homeopathic labeling.  To the contrary, Mr. Poret admits that Dr. Krosnick is a well-
26  qualified, knowledgeable expert in the field of consumer surveys/consumer science.  *Id.*
27  at 47:20-25.

28

*Allen et al. v. Similasan Corp., et al.*, Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

to be accorded the survey and not its admissibility"). Defendant takes issue with the fact that Dr. Krosnick's survey concerned other homeopathic products. But Dr. Krosnick's results were broadly stated such that, in his opinion, those findings in the other case sufficiently correlated to the Products in this case: "The primary conclusion of the survey is that providing this [lack of effectiveness] information was material to consumers." Dkt. No. 164-5 at ¶ 11-12. Thus, it is untrue, as Defendant claims, that Dr. Krosnick's survey did not test whether "the efficacy representations on the labels shown, . . . were specifically 'material'." Mot. 810-11. That is precisely what Dr. Krosnick's survey did show – that efficacy statements on homeopathic drugs are material to consumers and an important reason why consumers buy these types of products.

Further, Dr. Krosnick's survey, the labels, the scientific evidence, and common sense are not the only common evidence Plaintiffs will use at trial. Plaintiffs produced to Defendant a FTC report that was publicly released on August 21, 2015, which further supports their claims that efficacy statements of homeopathic products like Similasan's are material to the average consumer. Decl. of Ronald Marron filed herewith, Ex. 1. The FTC report surveyed consumer perceptions about homeopathic drugs in general but also discussed, in detail, consumer perceptions about Similasan's own products, mirroring Dr. Krosnick's survey method of providing corrective information about lack of effectiveness to consumers. *See id.* at 12-13 [marked as PLSIMILASAN001280-1281] ("The three versions of the Similasan product consisted of the original product available in the market at the time, a version that was identical to the original product available in the market except that the word "HOMEOPATHIC" at the top of the package front panel was made larger and more prominent, and a third version that was identical to the original product except that the words '*This product has not been shown to relieve cold symptoms*' was introduced in red lettering in a black box at the bottom of the back panel of the package.").

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

The FTC disclaimer language to test materiality was similar to the disclaimer provided to consumers in the Krosnick survey. *See* Dkt. No. 164-5 at ¶ 10 (consumers were given Hyland's homeopathic product packaging that contained a disclaimer "that the FDA has stated that no medical evidence documents effects of the homeopathic products beyond what would result from a placebo."). The FDA disclaimer used by Dr. Krosnick may have been as to another manufacturer's products, but it mirrors the public statement made by the FDA as to <u>all</u> homeopathic products, including all of Similasan's Products, which FDA statement is key evidence in this case. *See* labels.fda.gov ("FDA is not aware of scientific evidence to support homeopathy as effective."), attached to Marron Decl. as Ex. 2.

Finally, the FTC determined, based on exemplars of Similasan's own products, that effectiveness claims are overwhelmingly material to the average consumer. Marron Decl., Ex. 1 at Ex. 6, p. 6 [or PLSIMILASAN001337] ("[A] vast majority of respondents took away the appropriate 'relief' claim associated with the product they saw."). This coincides with the Court's existing ruling on materiality, which was based on case law and common sense that effectiveness claims on these drug Products, which have one use only – to cure the symptoms advertised on the package, are material to the average consumer buying them. *See* Order at 21 ("Defendant has not convinced the Court that any consumer would purchase Defendant's Products if they made no efficacy claims. Thus, these efficacy representations are material. *See Hyland's*, 300 F.R.D. at 667 ("It strains credulity to suggest that a significant portion of the general consuming public or of targeted consumers do not rely—at least in part—on representations about the products' uses and effectiveness on product packaging when buying the products.") (internal quotation marks omitted).").

Defendant cites *In re ConAgra Foods* for the proposition that Plaintiffs here must have a consumer survey as to the Products at issue. Mot. 10:22-26. But the court in that case was weighing "100% Natural" claims, and held there was no evidence linking the

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

advertising to the claim that natural cooking oil meant it contained no "genetically modified organisms." *In re ConAgra Foods, Inc.*, 302 F.R.D. at 577.  It stands to reason that a plaintiff would need a consumer survey to make this marketing leap from "natural" to no GMOs.  *See id.*  Defendant's other cases concern similar standalone marketing claims that may or may not have been material given the nature of the products purchased, and not lack of effectiveness of an OTC drug, which goes to the very heart of that product's purpose.  *See Kosta v. Del Monte Foods, Inc.*, No. 12-CV-1722 YGR, 2015 WL 4593175, at *1 (N.D. Cal. July 30, 2015) (concerning canned tomato and fruit products and allegedly false "antioxidant claims," "natural source" claims and "no artificial flavors or preservatives" claims, but no claims that the foods were unfit for their purpose); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 450, 453 (S.D. Cal. 2014) (regarding premium pricing claims for purported "24 hour" lipstick, and "unrefuted" expert evidence that consumers might buy lipstick for many reasons other than its staying power); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 576, 581 (E.D. Cal. 2012) (regarding claims that "allegedly excessive heat produced by Defendants' motorcycles can distract riders" but admitting that "Defendants have such a devoted following that they can successfully market and sell a defective product").

The claims here do not involve "price, size, and other [peculiar] characteristics" like color or flavor, *Johnson*, 285 F.R.D. at 581, and therefore Defendant's line of cases are not analogous to homeopathic drug cases, where materiality has been found on the basis of ineffectiveness.  *See*, *e.g.*, *Allen*, 300 F.R.D. at 668 ("Defendants' survey does not consider all the reasons why consumers purchase the products, and thus does not address the relevant legal question.") (citing *In re Tobacco II Cases*, 46 Cal. 4th at 328 (''[W]hile a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct.'')); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL

1410264, at *11-12 (C.D. Cal. Apr. 9, 2014) (finding there was "objective materiality of the alleged misrepresentations" that OTC homeopathic drugs were not effective" and "Defendants' argument that the products 'worked for some individual class members goes to the proof of the merits of Plaintiff[s'] claim.' *Delarosa*, 275 F.R.D. at 594. Such an argument that challenges the merits of Plaintiffs' allegation about the uniform inefficacy of the products has no bearing on the Rule 23 predominance inquiry.").

As with these directly analogous cases, the Court should similarly find that "Defendant[s] cannot reasonably argue that a putative class member would purchase a product that does not work." *Forcellati*, 2014 WL 1410264, at *11. *See also* Order at p. 21 (already so finding).

### ii. *The Materiality of the Labeling Claims Does Not Vary Among Consumers*

In order to prove that "materiality varies from consumer to consumer," Mot. 11:7, Defendant relies on Plaintiffs' testimony and the reports of Dr. Stamm.  Dr. Stamm is not, however, qualified to opine as to materiality.  *See* Pls.' Evid. Objs. filed herewith.

Further, Plaintiffs' own behavior evinces materiality. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("'[T]he purchases made by plaintiffs were acts consistent with their reliance on Dannon's alleged misrepresentations regarding the health benefits of the Products. Thus, the Court finds that the evidence presently before the Court allows for an inference of reliance in this case." (quoting *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355 (1976))); *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010) (materiality of Defendant's representations established objectively by plaintiffs' use of product in accordance with representations).  Plaintiffs here purchased the Products, believing they would help them for their conditions, and the Products did not work as advertised.

Defendant essentially recycles the same arguments it already made, and which this Court rejected, on class certification.  For example, Defendant talks about reasons why Rideout and Hairston purchased the Products.  Mot. 11:19-12:19.  But "customer

11

satisfaction," Mot. 12:22-23, even of the named Plaintiffs, is not reliable evidence in this placebo pill case. This Court has already ruled that effectiveness is a material factor in consumers' purchasing decisions regarding these Products, and Defendant has not put on any persuasive evidence that effectiveness is not material to consumers. *See* Order at 20-21. The Court should therefore deny Defendant's Motion on grounds of materiality.

> a.   *Plaintiffs' Science Experts Provide a Classwide Method of Proving Falsity, Tied to the Products in this Case*

As a threshold matter, Defendant claims that Plaintiffs must prove "falsity," Mot. 14:19, but the actual standard for the CLRA is actual falsity or that the advertising, even if true, is likely to deceive a reasonable consumer.

In addition, Defendant appears to claim that Plaintiffs have no common proof of falsity because experts are required to test the Products or use them in their practice,[2] Mot. 15:16-19, rather than relying on other forms of evidence, such as anecdotal evidence, scientific articles, and their own background experience. But the case they cite as proof that somehow Plaintiffs cannot meet their burden of proof as a matter of law, Mot. 17:13 to 18:4 (citing *National Council Against Health Fraud (NCAHF) v. King Bio Pharms.*), held that "[t]he falsity of the advertising claims may be established by testing, scientific literature, or anecdotal evidence." *Nat'l Council Against Health Fraud v. King Bio Pharms., Inc.*, 107 Cal.App.4th 1336, 1348 (2003). Plaintiffs here have done that, using scientific literature, testing of other products from which the ineffectiveness of these Products may be inferred, and anecdotal evidence. *See* Dkt. Nos. 164-18 (Report of Dr. Lee), 164-19 (Decl. of Dr. Rose), 164-20 (Report of Dr. Rose).

Defendant selectively cite both doctors, neglecting to inform the Court that Dr. Rose opined "[t]here is no scientific evidence that the homeopathic remedies sold by Similasan produce any benefit beyond their placebo effect for the conditions

---

[2] Notably, Defendant's expert, Dr. Peter Fisher, has *zero* experience with the Products in this case. Similasan is not even sold in the United Kingdom. Marron Decl., Ex. 6 (Dep. Tr. of Dr. Fisher) at 17:16-18, 115:19-24. If not using the Products or not testing them is the bar to which Defendant wishes to hold Plaintiffs' experts, then Dr. Fisher would similarly be excluded.

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

recommended on the label." Dkt. No. 164-20 at p. 9.  He directly linked his opinion to the Products in this case.  "The products at issue in the present case are, therefore, unlikely to be of significant benefit (beyond their possible placebo effect) in the conditions for which they are advocated." Dkt. No. 164-19 at ¶ 14.  Dr. Lee looked at the evidence *Defendant* produced as evidence of the efficacy of the Products, plus the Materia Medica and HPUS pages for each of the Products, and each ingredient in the Products. Dkt. No. 164-18 at ¶¶ 15-28.  This is hardly the cursory examination or unlinked opinion Defendant would lead the Court to believe.  *Id.* at ¶¶ 29-51.  Dr. Lee ultimately concluded that each of the Products in this case are "Not Effective" based on exhaustive analysis. *Id.* at ¶¶ 52-75.  Thus, Plaintiffs' experts presented opinions sufficiently tethered to the Products in this case as to establish classwide proof of falsity or deception.

Defendant is actually arguing to strike Plaintiffs' experts in their entirety under a type of *Daubert* standard, but did not brief that issue or standard at all.  Instead, it attempts to cloak its argument as to the *weight* of Plaintiffs' experts' opinions, with which it does not agree, as somehow lacking in common proof.  But this is disingenuous.  If Plaintiffs' expert opinions were that devoid of probative weight, then such fact would weigh in favor of trying this case on a classwide basis, using one set of evidence for all of Plaintiffs' claims.  Class certification is not an exercise in determining whether a plaintiff can prove his claims, only whether it should be adjudicated on a classwide basis.

Further, it is appropriate for experts to make inferences based on testing of other products, including circumstantial evidence from scientific literature.  *See Forcellati*, Order on Mot. for Summary Judgment, attached to Marron Decl. as Ex. 3 at p. 6 ("The theory behind Plaintiffs' class action is that the homeopathic method of preparing the active ingredients in the Class Products renders their active ingredients ineffective. The CC4K study suggests this theory may be correct as to one of the Class Products. It is reasonable to infer that the theory may be correct as to all the Class Products as well, since they are all prepared using the same homeopathic methods."); *id.* at p. 7 (citing

1   experts' review of scientific literature as to homeopathy generally, and denying summary

2   judgment on the basis of their opinions that "fundamental concepts of homeopathic

3   preparation run contrary to established medical principles").

4        Defendant next asserts that even if one of the bases of Plaintiffs' expert opinions is

5   that homeopathy, generally, does not work, those experts' ultimate opinions that the

6   Products in this case do not work is somehow flawed under *NCAHF v. King Bio*.

7   Defendant is incorrect in this assumption.

8        First, *NCAHF v. King Bio* is not analogous to this case.  *See* Marron Decl., Ex. 3 at

9   p. 5 ("Defendants claim that *King Bio* is controlling here in light of its 'nearly identical

10  facts.' . . . We disagree. The similarities between this case and *King Bio* are mostly

11  superficial because, as we have already noted, Plaintiffs are not alleging that Defendants

12  failed to substantiate their representations.").  In *King Bio*, "the plaintiff argued that

13  because the defendant's products were drugs, they should be held to the standards

14  expected of drugs by the scientific community and that any claims 'regarding the efficacy

15  of drugs [should be] supported by acceptable scientific evidence.'"  *Id.*  That is dissimilar

16  to this case because Plaintiffs here "are not arguing that Defendants have the burden to

17  prove that their products are effective or that they must conduct tests showing their

18  products are effective.  Instead, Plaintiffs argue that they can affirmatively prove that the

19  Class Products do nothing.  Plaintiffs' argument relies on studies and expert evidence—

20  but that is appropriate under *King Bio*."  *Id.*  And, unlike the experts in *King Bio*,

21  Plaintiffs' experts here do link their opinions to the Products.  *See* discussion *supra*.

22       Second, as also discussed above, Plaintiffs' experts may rely on clinical trials of

23  other homeopathic products, and science articles generally discussing homeopathy, in

24  support of their opinions.  *Id.* at pp. 6-7.  *Herazo v. Whole Foods Market,* No. 14-61909-

25  CIV, 2015 WL 4514510 (S.D. Fla. July 24, 2015) is an out of jurisdiction case, in which

26  the court could not have considered all laws applicable to homeopathic drugs because the

27  FDA's regulatory scheme does <u>not</u> state that meeting the minimal requirements of the

28  Compliance Policy Guide ("CPG") or any federal law means Defendant is immune from

a lawsuit.  *See* FDA CPG, attached to Marron Decl. as Ex. 4 ("A product's compliance with requirements of the HPUS, USP, or NF does not establish that it has been shown by appropriate means to be safe, effective, and not misbranded for its intended use").  Rather, Defendant can be sued by consumers for mislabeling their Products, even in the absence of FDA action.  *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189-90, n.8 (C.D. Cal. 2011) (conducting exhaustive review of all forms of preemption for OTC homeopathic drugs and holding there was no preemption:  "the Court concludes that Plaintiff's claims, if proven to be true, would simply require Defendant to truthfully state its efficacy or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA.").   With this argument, Defendant essentially asks the Court to find preemption, but preemption does not exist.  If Defendant wishes to bring a proper brief on the issue, Plaintiffs will happily respond to it.[3]

Finally, the determination of deception and actual falsity is not made with regard to each class member, but under the common reasonable consumer standard, which is itself resolved through objective inquiries, like materiality and veracity.  *See*, *e.g.*, *Tobacco II*,

---

[3] Defendant offers the Field Report for an improper purpose, appearing to argue that the Products are not unlawful, which goes beyond the scope of certification and well into the merits.  The Court should not consider his testimony on that basis alone.  In addition, however, Dr. Field's testimony that Defendant's Products comply with FDA regulations is wholly irrelevant, as Plaintiffs do not bring this action for violations of the FDCA.  Rather, Plaintiffs allege that the Products are unlawful under the California Sherman Law, Cal. Health & Safety Code §§ 109875, *et seq.*, which incorporates the general misbranding section of the FDCA.  *See id.* §§ 110110-110111, 110115 (all nonprescription drug regulations and regulations for new drug applications under the FDCA are the regulations of this State).  Dr. Field's testimony is also wholly unrelated to the issue of whether the Products' labeling violates any California consumer statutes (including the UCL, FAL, CLRA, and Sherman Law) and thus is entirely irrelevant and unsupportive of Defendant's Motion to Decertify the Classes.  Dr. Field's opinions are also fatally flawed because he admits the FDA began enforcement proceedings against Similasan as to specific Products, which were admittedly unlawful during the Class Period, Dkt. No. 164-22 at p. 8.  Thus, his opinion is not helpful or trustworthy.  *See also* Pls.' Evid. Objs. filed herewith.

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

46 Cal. 4th at 327-328 (reversing motion to decertify class and ruling that materiality is an objective standard); *Williams*, 552 F.3d at 938; *In re POM Wonderful LLC Marketing & Sales Practices Litig.*, 2012 WL 4490860, at *4 (C.D. Cal. Sept. 28, 2012) ("A false or misleading advertising campaign need not 'consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class.'").  Accordingly, Defendant's incessant focus on absent class members' characteristics, habits, thoughts, feelings, motivations and beliefs is misplaced. *See Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *43-44 (C.D. Cal. Nov. 9, 2009) ("common issues predominate with regard to plaintiffs' claim of a common classwide omission under the 'fraudulent' prong of the UCL. This UCL claim will be adjudicated under the 'reasonable consumer' standard rather than by examining the individual circumstances of each plaintiff.") (citation omitted).

## 2. Reliance, and thus Materiality, Are Only Elements of the CLRA Claim, Not Plaintiffs' UCL and FAL Claims

"A CLRA claim warrants an analysis different from a UCL claim because the CLRA requires each class member to have an actual injury caused by the unlawful practice." *Stearns*, 655 F.3d at 1022 (citation omitted). Except for the lead plaintiff, reliance is not an element of the class's UCL or FAL claims. *See id*. at 1020; *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009). Accordingly, no such reliance presumption is necessary.[4]  Rather, entitlement to restitution in a UCL or FAL action requires nothing more than *exposure* to the alleged misrepresentation:  "The focus of the UCL is 'on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.'"  *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 154 (quoting *Tobacco II*, 46 Cal. 4th at 312).

Accordingly, the UCL authorizes restitution "to restore to any person . . . any money or property . . . which *may have* been acquired" by unfair practices. Cal. Bus. &

---

[4] *Tobacco II's* discussion of a reliance presumption concerned only the named plaintiff's standing under Proposition 64.  *See* 46 Cal. 4th at 326-27.

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

Prof. Code § 17203 (emphasis added).  But someone <u>unexposed</u> to an unfair practice can have lost money or property (even potentially) because of it.  *See generally Tobacco II*, 46 Cal. 4th at 320.  On the other hand, someone exposed to a misrepresentation, even if he did not rely on it, "may have" been injured, for example, because the product commanded a higher market price than it would have without the misrepresentation.  Thus, while Defendant claims Plaintiffs "must also prove materiality," for their UCL claims, Mot. 19:14-15, they are wrong, *see Tobacco II*, 46 Cal. 4th at 320.

There is also no need to prove reliance for class members under the UCL or FAL. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 533 (C.D. Cal. 2012) (holding that for UCL claims, "there is no need to prove reliance on an individual basis").  Moreover, under the UCL, every person enjoys the "substantive right . . . to protection from fraud, deceit and unlawful conduct."  *Tobacco II*, 46 Cal. 4th at 324 (citation omitted). Accordingly, any person who purchases a product containing a fraudulent statement, even if he does not actually rely on the statement, has both suffered a UCL injury and lost money or property, justifying restitution.  *See id.*

Defendant claims that Plaintiffs must provide their case as to "the target population," Mot. 10:22, but provide no authority for such claim other than the *Lavie* case.  In *Lavie*, the *plaintiff* claimed defendant was targeting its Aleve advertising to "a particularly disadvantaged or vulnerable" group of people – a claim that has not been made here.  *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507 (2003) ("Where advertising is aimed at a particularly susceptible audience, such as [] preschool children . . . its truthfulness must be measured by the impact it will likely have on members of that group, not others to whom it was not primarily directed. . . . However, unless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.") (citations omitted). Similasan's Products in this case appear on store shelves where anyone can buy them. TAC ¶ 10 (noting "extensive on-the-shelf presence of the Products in hundreds of retail stores in California, including major chain stores").  There is no vulnerable or

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES

disadvantaged population targeting alleged.  Thus, the reasonable consumer standard applies.

The UCL protects the marketplace from unfair, unlawful, or fraudulent false business conduct.  Its purpose is to protect all consumers, including Defendant's competitors.  Defendant's assertion that Plaintiffs must show falsehood or deception as to some theoretical target population in this case is therefore unfounded and wrong.  Rather, an objective reasonable consumer standard applies – neither the most nor the least sophisticated shopper.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) ("California courts consistently have looked to the ordinary consumer within the larger population.").  And, Plaintiffs have predominate common evidence to prove the UCL and FAL were violated, which consists, *inter alia*, of the labeling, the science articles, the government reports, and their expert opinions.

### 3. Plaintiffs' Breach of Warranty and MMWA Claims Are Subject to Predominate, Common Proof

The central, overriding and predominate question for warranty is whether Defendant's advertising promised something it could not deliver – effective treatments for the symptoms listed.  Order at 21-23.  For the same reasons listed above for the CLRA, UCL and FAL, Plaintiffs' experts, the labeling, articles and government reports will provide this predominate, common proof as to all class members.

## III. PLAINTIFFS' DAMAGES MODEL MATCHES THEIR THEORY OF LIABILITY

A court shall certify a class action upon an affirmative demonstration of Rule 23(a) and one provision of 23(b). See *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Rule 23(b) must further be satisfied with "evidentiary proof," and the court shall conduct a rigorous analysis to ensure this is done. *Id*. at 1432. The rigorous analysis employed by the court inevitably entails broaching the merits of the case, but this is permissible only insofar as it relates to the issues of class certification. *See id*.; *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013). Rule 23(b)(3), at issue in *Comcast* and in the present case, requires "that questions of law or fact common to class members

predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

*Comcast* stands for the proposition that, to satisfy the predominate element under Rule 23(b)(3) for class certification, plaintiffs must present a damages methodology that is capable of application to the class and consistent with the liability theory of the case. *Comcast*, 133 S. Ct. at 1433.  The damage calculation need not, however, be perfect, nor must it be performed at the class certification stage; indeed, individual damage calculations alone will not defeat class certification in the Ninth Circuit.  *See id*. at 1433; *Leyva v. Medline Indust., Inc.*, 716 F.3d 510, 514 (2013) (citing *Comcast*); *Werdebaugh v. Blue Diamond Growers*, 12-CV-2724-LHK, 2014 WL 2191901 at *25 (N.D. Cal. May 23, 2014) (same); *Brazil v. Dole Packaged Foods, LLC*, 12-CV-01831-LHK, 2014 WL 2466559 at *15 (N.D. Cal. May 30, 2014) (same). Plaintiffs need only show "that their damages stemmed from defendant's actions that created the legal liability." *Leyva*, 716 F.3d at 514.

Plaintiffs here have matched their damages model to their theories that the Products are unlawful, and falsely or deceptively advertised, such that the Products are valueless.  Defendant appears to argue that the consumers in the certified classes received some type of "benefit", Mot. 22:9, and therefore the full refund model is improper. Defendant is wrong.  As further explained below, Plaintiffs' full refund model is consistent with their liability theories that the Products are ineffective and illegal.

Plaintiffs seek restitution of the full purchase price of the Products sold during the class period for their CLRA, UCL, FAL, and breach of warranty claims.  Restitution in a mislabeling case contemplates the difference between what the consumer paid versus the value of what the consumer actually received. *See Werdebaugh*, 2014 WL 2191901 at *22; *Brazil*, 2014 WL 2466559 at *15; *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 429-30 (C.D. Cal. 2014).

Allegations that a product's efficacy statements are false and misleading will justify returning the full purchase price of the product. *Allen*, 300 F.R.D. at 671 (holding that full restitution damages model was consistent with liability theory of complete

ineffectiveness); *Ortega*, 300 F.R.D. at 430 (same); *Forcellati I*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (same, noting that lawsuits against ineffective OTC products assert a theory that the products "have no medicinal value whatsoever"); *Forcellati v. Hyland's, Inc.* ("*Forcellati II*"), 876 F. Supp. 2d 1155, 1168 (C.D. Cal. 2012) ("The 'out-of-pocket' theory [of damages] may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless."); *Brazil*, 2014 WL 2466559 at *15 (rejecting full refund as inconsistent where mislabeled food product had ancillary value in the form of "calories, nutrition, vitamins, and minerals."); *Werdebaugh*, 2014 WL 2191901 at *25 (same); *In re POM Wonderful LLC*, ML 10-02199 DDP (RZx), 2014 WL 1225184 at *3 (C.D. Cal. March 25, 2014) (same); *Lanovaz v. Twinings N. Am., Inc.*, C-12-02646-RMW, 2014 WL 165238, at *6 (N.D. Cal. Apr. 24, 2014) (same).  Because this case alleges, *inter alia*, lack of inherent effectiveness, the full refund model is correct.  *See* citations *supra*.

Under Rule 23(b)(3), courts in the Ninth Circuit have not hesitated certifying classes on the basis that a full refund methodology coincides with a liability theory of total ineffectiveness. *See, e.g.*, *Ortega*, 300 F.R.D. at 430 (holding that recovery of full purchase price consistent with theory that "product was valueless because it provided none of the advertised benefits"); *Forcellati*, 2014 WL 1410264, at *11 (certifying class where liability theory alleges that defendant's homeopathic drugs are ineffective); *Allen*, 300 F.R.D. at 671 (holding that "[p]laintiffs' damages theory – predicated on the notion that class members are entitled to full restitution for products with no value – is consistent with [p]laintiffs' liability theory.").

Furthermore, the circumstances affecting each class member's particular purchase are irrelevant where the product in question is alleged to be ineffective, as it cannot "reasonably [be] argue[d] that a putative class member would purchase a product that does not work." *Forcellati*, 2014 WL 1410264 at *11 (citing *McCrary v. Elations Co., LLC*, EDCV 13-00242 JGB (OPx), 2014 WL 1779243 at *11 (C.D. Cal. Jan. 13, 2014)).

And, even though some consumers may have received some relief in the form of the placebo effect, that healing, achieved under false pretenses, does not enure to the benefit of a defendant who does not so inform their consumers.  *See F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994) ("Where, as here, a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results.  In such circumstances, the efficacy claim 'is "misleading" because the [product] is not inherently effective, its results being attributable to the psychosomatic effect produced by the advertising and marketing of the [product],' . . . . Moreover, allowing advertisers to rely on the placebo effect would not only harm those individuals who were deceived; it would create a substantial economic cost as well, by allowing sellers to fleece large numbers of consumers . . ."); *Ortega*, 300 F.R.D. at 429-430 (approving full refund theory for ineffective supplement, noting "Plaintiffs are seeking to recover what they spent on Cobra. This can be readily calculated using Defendant's sales numbers and an average retail price."); *Forcellati v. Hylands,* No. 12-1983, 2014 WL 1410264, at *11-12 (same); *Allen*, 300 F.R.D. at n.26:

> While Defendants argue that some customers may have received a ''benefit'' from the placebo effect and thus are not entitled to damages, they have cited no authority for this proposition, nor is the Court aware of any. It stands to reason that a product that, in effect, has tricked people into thinking that they received a benefit should not be given credit for actually conferring a benefit. At least two other district courts in this Circuit have found the superiority requirement satisfied where the plaintiffs sought full restitution for allegedly worthless products. *See Ortega*, 300 F.R.D. at 429–30, No. 13–5942, 2014 WL 2782329, at *6; *Forcellati*, No. 12–1983, 2014 WL 1410264, at *11–*12.  While these courts did not explicitly address the ''value'' of the placebo effect, their analysis assumes that all customers who receive worthless products are entitled to full refunds. The Court finds this analysis persuasive.

Defendant appears to argue that it may use the price of saline or glycerin in a bottle as something against which it may subtract the full purchase price of its Products.  Mot. 23:16-18.  But they do not explain how, by tricking consumers into believing they were

buying effective Products that contained more than just saline or glycerin, they can receive this discount from the purchase price.  In fact, all of the authority to consider this issue reveals they cannot.  *See*, *e.g.*, *Allen*, 300 F.R.D. at n.26 (citing cases).

Here, the gravamen of Plaintiff's TAC is that Defendant's Products are misbranded as being effective, omit material information, are falsely or deceptively advertised because they do not produce their advertised benefits, plus that two Products were unlawful. *See generally* TAC ¶¶ 12-112.  Under these circumstances, restitution of the full purchase price is justified, as this Court has already ruled.  *See* Order at 7:25 to 8:5. Additionally, Plaintiffs have produced further evidence such as Dr. Rose's and Dr. Lee's expert testimony, numerous scientific studies, including from the Australian and British governments, the FDA's position that it is aware of no evidence that any homeopathic product is effective, and now the FTC report, that the Products are not inherently effective beyond the placebo effect.  *See*, *e.g.*, Marron Decl., Ex. 1.  There is no ancillary value in the Products, for example, in the form of calories or nutrients.  Therefore, Plaintiffs' theories of liability are tethered to their damages model, as required by *Comcast* and Rule 23.

In addition, Plaintiffs allege two of the Products are unlawful under the UCL and California Sherman Food, Drug and Cosmetic Law.  *See* Order 3:5-7; TAC, *e.g.*, ¶¶ 68, 70, 74, 91, 110.  For these claims, the full refund model applies.  *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157.  Defendant does not even discuss the unlawfulness of its two drug Products.   The decision of the California Court of Appeal, that full restitution of the purchase price is the standard for unlawfully sold products, is binding on this Court as it is a state court of appeal interpreting state law.  *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 150, 157.  Accordingly, Plaintiffs have set forth a damage and restitution model that is consistent with their liability theories and capable of application to the class.

Overall, Defendant's contentions ask the Court to probe far behind the curtain of a class certification decision, and decide on the merits that "purchasers received value from the Products."  Mot. 23:9-10.  The Court should decline to do so because it is not

necessary for purposes of certification. Instead, the Court should only look at whether the damages model is tethered to the theories of liability. Plaintiffs allege the Products are worthless or illegal, and calculated their full refund by using Defendant's sales figures and an average retail price. This is acceptable. *Ortega*, 300 F.R.D. at 430; *see also Allen*, 300 F.R.D. at 670-671 (citing *Ortega* for the purpose of showing that the methodology is capable of classwide application).

Interestingly, Defendant argues in the first part of the brief that Plaintiffs must prove materiality as to their omission claims, and then in a large footnote at the end of their brief (Mot. n.17) argue that omissions are not part of this case, thereafter admitting in the same footnote that omissions *are* in the case (*id.*, discussing "Plaintiffs' claim that Similasan omitted allegedly 'corrective' information from its labels"). As Defendant is bound to admit, omissions are in this case. The Court certified the classes based on "the conduct alleged in the TAC," Order 13:13-14, which includes omissions made to consumers. For example, "Plaintiffs' legal theory is that the Products are mere placebos," Order 15:3-4, but the only way a placebo works is by *not* telling consumers it is a placebo. Thus, that this fact was never communicated to consumers is and has always been a vital part of this case.

In any event, for the reasons discussed above, Defendant cannot take the benefit of a consumer achieving relief due to the placebo effect. Defendant would have to lie to consumers to achieve that effect, and California law protects consumers against that type of fraudulent or misleading conduct. *See Allen*, 300 F.R.D. at n.26.

Neither Ms. Rideout nor any other class member purchased the Products believing they were merely saline or glycerin, and it defies belief to assert this as a defense to a damages methodology. Even before the Court could begin to assume this is a proper method for Defendant to mitigate damages it owes for fraudulent business conduct, it would have to determine that the labels communicated that the Products were nothing more than saline or glycerin. They do not, and the Court cannot make such a finding. Accordingly, the Court should reject Defendant's arguments as to Plaintiffs' damages model.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendant's Motion in its entirety.

Dated: September 29, 2015                Respectfully submitted,

**LAW OFFICES OF RONALD A. MARRON**
By:  */s/ Ronald A. Marron*
*ron@consumersadvocates.com*
RONALD A. MARRON
SKYE RESENDES
651 Arroyo Drive
San Diego, California 92103
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665

**GOMEZ TRIAL ATTORNEYS**
JOHN H. GOMEZ (SBN 171485)
*john@gomeztrialattorneys.com*
JOHN P. FISKE (SBN 249256)
*jfiske@gomeztrialattorneys.com*
DEBORAH S. DIXON (SBN 248965)
*ddixon@gomeztrialattorneys.com*
655 West Broadway, Suite 1700
San Diego, California 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496

Dean A. Goetz
*dgoetz12@gmail.com*
**THE GOETZ FIRM, LLC**
603 N. Coast Hwy 101, Ste. H
Solana Beach, CA 92075
Telephone: (858) 481-8844
Facsimile: (858) 481-2139

*Class Counsel*

*Allen et al. v. Similasan Corp., et al.,* Case No. 3:12-CV-00376 BAS (JLB)
PLTFFS.' OPPOSITION TO DEF.'S MOTION TO DECERTIFY CLASSES