THEODORE H. FRANK (SBN 196332)
Competitive Enterprise Institute
  Center for Class Action Fairness
1899 L Street NW 12th Floor
Washington, DC 20036
Voice: (202) 331-2263
Email: ted.frank@cei.org


*Attorneys for Objector M. Frank Bednarz*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Allen v. Similasan Corp.<br><br><br>M. Frank Bednarz,<br>     *Objector.* | Case No. 3:12-cv-0376-BAS (JLB)<br><br>**OBJECTION TO PROPOSED CLASS SETTLEMENT IN *ALLEN V. SIMILASAN CORP.*, NO. 3:12-CV-00376 AND INTENT TO APPEAR**<br><br>Judge:        Hon. Cynthia Bashant<br>Courtroom:  4B<br>Date:         August 1, 2016<br>Time:         10:30 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

**I.**    The objector is a member of the class and has standing to object. .................................. 2

**II.**   The settlement should be rejected because it provides unnamed class members no relief and gives preferential treatment to class counsel. ............................................... 4

      A.    Unnamed class members receive no value from the proposed settlement. .......... 5

      B.    In fact, the "injunction" benefits the Defendant, which was already obligated to update its product labels. ....................................................... 8

      C.    The Court has a fiduciary duty to absent class members, so must reject the settlement as self-dealing. ................................................................... 10

      D.    Even if the alleged relief were meaningful, class members receive no marginal benefit compared to non-class members and therefore receive no consideration for waiver of their claims. ........................................... 16

**III.**  The proposed settlement should further be rejected because Class Counsel has not acted as a fiduciary to unnamed class members. .......................................... 16

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ........................................................ 13

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591, 617 (1997) ............................................................... 10

*Dennis v. Kellogg Co.,*
   697 F.3d 858 (9th Cir. 2012) ...................................................... 1, 13

*Diaz v. Trust Territory of Pacific Islands,*
   876 F.2d 1401 (9th Cir. 1989) ....................................................... 16

*Eubank v. Pella Corp.,*
   753 F.3d 718 (7th Cir. 2014) ......................................................... 12

*Fischer v. SJB-P.D., Inc.,*
   214 F.3d 1115, 1121 (9th Cir. 2000) ............................................ 15

*Grunin v. International House of Pancakes,*
   513 F.2d 114 (8th Cir. 1975) ......................................................... 10

*In re Baby Prods. Antitrust Litig.,*
   708 F.3d 163 (3d Cir. 2013) .......................................................... 14

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*") ........................... *passim*

*In re Classmates.com*, No. 09-cv-0045-RAJ,
   2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ............. 3

*In re Dry Max Pampers Litig.,*
   724 F.3d 713 (6th Cir. 2013) ("*Pampers*") .............................. *passim*

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
   55 F. 3d 768 (3d. Cir. 1995) ............................................... 10, 11, 13

*In re HP Inkjet Printer Litig.,*
   716 F.3d 1173 (9th Cir. 2013) ("*Inkjet*") .......................... 5, 14, 15

*In re Katrina Canal Breaches Litig.,*
   628 F.3d 185 (5th Cir. 2010) ........................................................... 5

*In re Mercury Interactive Corp.,*
   618 F.3d 988 (9th Cir. 2010) ......................................................... 10

*In re Relafen Antitrust Litigation,*
   360 F.Supp.2d 166 (D. Mass. 2005) .............................................. 10

*In re Washington Pub. Power Supply Sys. Lit.,*
    19 F.3d 1291 (9th Cir. 1994) ................................................................ 10

*Keirsey v. Ebay, Inc.,* No. 12-cv-01200-JST,
    2014 U.S. Dist. LEXIS 21371 (N.D. Cal. Feb. 18, 2014) .................................. 15

*Mandujano v. Basic Vegetable Products, Inc.,*
    541 F.2d 832 (9th Cir. 1976) ................................................................ 17

*Mirfasihi v. Fleet Mortg. Corp.,*
    356 F.3d 781 (7th Cir. 2004) ................................................................ 11

*Otey v. Crowdflower, Inc.,* No. 12-cv-05524-JST,
    2014 U.S. Dist. LEXIS 52192 (N.D. Cal. Apr. 15, 2014) .................................. 15

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) .......................................................... 2, 12, 16

*Redman v. RadioShack Corp .,*
    768 F.3d 622 (7th Cir.2014) ................................................................ 12

*Reynolds v. Beneficial Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002) ............................................................. 8, 10

*Richardson v. L'Oreal USA, Inc.,*
    991 F. Supp. 2d 181 (D.D.C. 2013) ..................................................... 2, 13

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................ 17

*Silber v. Mabon,*
    957 F.2d 697 (9th Cir. 1992) ................................................................ 11

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ................................................................ 12

*Sobel v. Hertz Corp.,* No. 3:06-cv-00545-LRH-RAM,
    2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011)...... 14

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................ 8, 11, 12

*True v. Am. Honda Co., Inc.,*
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ............................................... 11, 16

### Rules and Regulations

Rule 23(c)(2)(B)(v) ................................................................................ 17

Rule 23(e) ................................................................................ 4, 10, 11

Rule 23(e)(5) ................................................................................ 4, 17

Rule 23(g)(4) ................................................................................ 17

Food and Drug Administration, Compliance Policy Guide § 400.400 ....................... 6, 8

### Other Authorities

American Law Institute, Principles of the Law of Aggregate Litig. § 3.05(c) (2010) ... 11

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
    2003 U. CHI. LEGAL F. 403 (2003) ................................................... 3

Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or
    Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) ....... 3

Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*,
    N.Y. Times, Aug. 13, 2013, at A12 .................................................. 2-3

Herbert Newberg & Alba Conte,
    4 Newberg on Class Actions (4th ed. 2002) ........................................ 10-11

Charles Silver, *Due Process and the Lodestar Method*,
    74 TULANE L. REV. 1809, 1839 (2000) ................................................ 13

# INTRODUCTION

The proposed settlement has been prepared using traditional homeopathic principles: not one molecule of relief exists for unnamed class members. In contrast, those who formulated it (Class Counsel) have retained a potent draught of $545,000 in fees for themselves. Such disparate relief might be tolerable in the over-the-counter medicine aisle, but it is not permitted under Rule 23. This settlement presents exactly the sort of self-dealing scenario criticized by Congress and by the Ninth Circuit in such cases as *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*") and *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012). Class counsel is requesting all monetary relief for itself (and $5,000 for named plaintiffs), while unnamed plaintiffs receive *nothing* in exchange for the release of all related their claims.

The alleged injunctive relief—label changes and a website page—provides no value to class members. There is no credible argument that the newly agreed label terms will prevent the class (or any consumer) from being misled. For example, the settlement agreement requires Similasan to link to a webpage which is currently subtitled, without qualification, "How our products work." This "amounts to little more than an advertisement" for the Defendant. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) ("*Pampers*"). Moreover, regardless of the settlement Defendant will need to change its labels anyway to comply with industry guidelines and thus is obtaining a release of claims by thousands of class members at no cost. At the same time, the Defendant will receive from the Court an official imprimatur on the same sorts of misleading language that gave rise to the suit. Moreover, this dubious injunctive relief is "enjoyed" by class members and non-members alike, and many class members will never have an opportunity to read the new fine print because they will never again purchase Similasan products.

Because a class member will receive the same relief whether or not she participates in the settlement, a fiduciary would advise their clients to opt-out of the suit.  Class Counsel

instead seeks speedy approval of the release and fee request, which demonstrates a breach of fiduciary duty to unnamed clients.

The Court should exercise its own fiduciary responsibility to unnamed class members and reject the proposed settlement, which extinguishes class claims in exchange for no relief.

## I.    The objector is a member of the class and has standing to object.

Objector Michael Frank Bednarz is a member of the class. Bednarz resides at 1145 E. Hyde Park Blvd. Apt 3A, Chicago, IL 60615. His phone number is 801-706-2690. On June 29, 2016, Bednarz purchased for personal use Similasan Anxiety Relief Globules, 154 doses, NDC No. 59262-602-30. *See* Declaration of M. Frank Bednarz ("Bednarz Decl.") at ¶¶ 2-4 & Ex. 1.

Bednarz intends to appear at the August 1, 2016 fairness hearing through his *pro bono* attorney Theodore H. Frank of the Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"). Frank is a member of the bar of the Southern District of California. At this time, Bednarz does not intend to call any witnesses at the fairness hearing, but reserves the right to make use of all documents entered on the docket by any settling party or objector, including exhibits to the Bednarz Declaration. Bednarz also reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval.

CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (observing that CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *Pampers*, 724 F.3d 713, 716-17 (describing CCAF's client's objections as "numerous, detailed, and substantive.") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement.") (rejecting settlement approval and certification);

Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. Times, Aug. 13, 2013, at A12 (calling Frank "[t]he leading critic of abusive class-action settlements").

Since it was founded in 2009, CCAF has won over $100 million for class members. *See, e.g., In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel … at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are often styled "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. Some courts presume that such objectors' legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

For this reason, Bednarz objects to the burdensome disclosure requirements that settling parties have attempted to impose on objections in this case.[1] These requirements,

---

[1] The Court's Preliminary Approval Order, which was drafted by the settling parties, states that objectors must disclose "any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a proposed class action settlement." Dkt. 204, ¶ 21. Failure to disclose these unrelated actions is said to deem the objection or

drafted by the settling parties, are clearly intended to reduce scrutiny of the settlement. Rule 23(e)(5) makes it clear "Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval." The settling parties' agreement purports to turn this rule on its head. Notwithstanding these unfair burdens, a list of Bednarz's and his counsel's objections can be found in the accompanying declarations of M. Frank Bednarz and Theodore H. Frank.

To avoid doubt about his motives, Bednarz is willing to stipulate to an injunction prohibiting him from accepting compensation in exchange for the settlement of his objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Bednarz brings this objection through CCAF in good faith to protect the interests of the class. Bednarz Decl. at ¶ 6.

## II.  The settlement should be rejected because it provides unnamed class members no relief and gives preferential treatment to class counsel.

A class action settlement may not confer preferential treatment upon class counsel to the detriment of class members. "Such inequities in treatment make a settlement unfair" for neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724 F.3d at 718-21 (reversing settlement where class counsel received $2.73 million and absent class members were offered a money-back refund program with a likely small claims rate, prospective labeling changes, and a *cy pres* donation).

---

opt-out request invalid, and such class member will be involuntarily bound by the proposed settlement agreement. *Id.* ¶ 22, 26. The Preliminary Approval Order also purports to prohibit objections or opt-outs on behalf of groups of people.  *Id.* ¶ 19, 21. As discussed in Section III, a class action attorney acting as a fiduciary to unnamed class members would remove *all* class members from this settlement. This purported requirement lessens the chance that another class action attorney would seek to intervene on behalf of the class.

The proposed settlement is inequitable because the alleged injunctive relief is worthless to the class; let alone worth the $1.6 million needed to justify a fee of $545,000.[2] The relief is illusory and benefits only the Defendant, which is already obliged to add an FDA disclaimer to its label. The Court should reject the settlement due to the inequitable treatment between Class Counsel and unnamed members of the class, and for the independent reason that the settlement provides class members no marginal benefit over non-class members in exchange for their release.

### A.     Unnamed class members receive no value from the proposed settlement.

The purported injunctive relief to the class is neither relief, nor is it directed to the class.  The settling parties provide only conclusory statements that these provisions have value, and this is inadequate to find a settlement fair. The burden of proving the quantum of benefit lies with the proponents of the settlement. *Pampers*, 724 F.3d at 719 (compiling authorities). They must demonstrably show that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010). In fact, making such a showing is impossible here because the grab bag of meaningless marketing revisions does not in any way compensate class members for their injuries. Such changes cannot possibly be appreciated by those members of the class who no longer purchase Similasan products.

The "injunctive relief" consists of essentially three things. *First*, the product label must include this statement:

> These statements are based upon traditional homeopathic principles. They have not been reviewed by the Food and Drug Administration.

---

[2] A proportionate fee request adheres to the Ninth Circuit's benchmark reasonable fee of 25% of the common fund in cases alleging economic injury. *See, e.g., Bluetooth*, 654 F.3d at 942; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 (9th Cir. 2013).

Settlement Agreement, Dkt. 202-4, § 5.1.2.1-3. *Second*, Similasan must print a website address on its label "to reference Similasan's website for further information on the meaning of 'homeopathic principles'." *Id.* § 5.1.2.4-5.[3] *Third*, Similasan must maintain a "Homeopathic Dilution Page" on its website (the agreement is silent about whether this page should be the same address as printed on the label). *Id.* § 5.1.3. Other provisions are ancillary to these requirements (for example, the disclaimer must be visible in advertising where the label is visible, and the "Homeopathic Dilution Page" must be accessible from other pages on Similasan's website and should include an explanation of what an "X" dilution is according to the pro-homeopathy HPUS (Homeopathic Pharmacopeia of the United States)). Similasan is given 12 months to make these minor labeling and marketing adjustments.

Plaintiffs do not provide evidence that this meager "relief" provides any benefit over the current labels, let alone sufficient value to class members in exchange for their release. The website requirement is particularly dubious "relief" because Similasan has maintained a page that satisfies nearly all requirements of the proposed "Homeopathic Dilution Pages" since before the settlement agreement was even executed. *Compare* Bednarz Decl. Exhs. 2 and 3 (Similasan's current "About Homeopathy" webpage and a verbatim version saved by the Internet Archive on January 30, 2016).[4] The only requirement unmet by the current "About Homeopathy" page is that it does not include a link to an FDA guideline, Compliance Policy

---

[3]   In their notice to class, the settling parties further elaborated "(e.g., 'See http://www.similasanusa.com/about-homeopathy for more information.')," suggesting that Similasan's existing "About Homeopathy" webpage is intended to fulfill this requirement. Indeed it appears to meet the minimal requirements by providing promotional material about the "homeopathic principles." It done so before the settlement agreement with executed. *See* Bednarz Decl. Ex. 3 ("About Homeopathy" as of January 30, 2016), which is available at: https://web.archive.org/web/20160130024123/http://similasanusa.com/about-homeopathy.

[4]   Bednarz Decl. Ex. 2 ("About Homeopathy") is available at: http://www.similasanusa.com/about-homeopathy.

Guide § 400.400, which is dense regulatory guidance intended for consumption by FDA personnel and the regulatory affairs departments of drug manufacturers. *See* Bednarz Decl. Ex. 5.[5] It is implausible that class members will be better informed by this change. "Any unnamed class member with the means to access [similasanusa.com] and then follow a link to a more informative website is almost certainly a class member who is familiar with Google." *Pampers*, 724 F.3d at 721.

If anything, the website *worsens* consumer confusion. To the extent that a consumer is misled by Similasan's current product labels, they will be further misled by Similasan's "About Homeopathy" webpage, which is subtitled "How our products work." Bednarz Decl. Ex. 2. This webpage statement is even more misleading than Similasan's product labels. The product labels carefully avoid making unqualified statement of efficacy. Yet Class Counsel now proposes that more consumers find to a webpage that currently says in bold text "How our products work" and further confuses consumers by wrongly analogizes homeopathy to "a conventional allergy or flu shot." *Id.*

Many class members will never even see the new fine print on the labels because they have no intention of purchasing another Similasan product. Class members like the named plaintiffs who learn that Similasan products are ineffective are unlikely to ever shop for them again, much less scrutinize the packaging. Yet the named plaintiffs stand to gain $2500, while Similasan-boycotting class members receive absolutely nothing in return for their claims. Such a settlement cannot be fair, reasonable, or adequate.

---

[5] Bednarz Decl. Ex. 4 (FDA CPG § 400.400) is available at: http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074360.htm

**B.    In fact, the "injunction" benefits the Defendant, which was already obligated to update its product labels.**

Class Counsel claims that "Without the Settlement Agreement, Similasan would not be obligated to change its labeling to provide more consumer information" (Dkt. 202-2, Mem. in Support of Prelim. Approval, ¶ 35), but this is false. In the first place, the settlement agreement encompasses marketing changes that Similasan had *already undertaken* prior to the settlement. As discussed above, Similasan's "About Homeopathy" page already satisfies nearly all of the requirements for the website. Relief is entirely illusory to the extent it "requires" Similasan to do something it has already done. *See Pampers*, 724 F.3d at 719; *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (It is "the *incremental* benefits" that matter, "not the total benefits." (emphasis in original)).

As for labeling, Similasan needed to update its marketing anyway to conform with industrial guidelines in the face of likely regulatory changes initiated by the Federal Trade Commission (FTC), which is not attributable to the proposed settlement.

Until recently, the Food and Drug Administration (FDA) had a policy of tolerating over-the-counter homeopathic products provided that the "active ingredient" is listed in HPUS (published by a private organization of homeopaths), and the product was indicated for a self-limiting condition. *See* Bednarz Decl. Ex. 5 (FDA CPG § 400.400). Until last year, the FTC generally deferred to FDA inaction on homeopathic remedies, the FTC and FDA did not pursue manufacturers meeting these lax requirements. Recent regulatory actions suggest this is no longer true.

Last year, the FDA held a series of meetings and sought public comment on its regulatory regime with respect to homeopathic products. In order to address the FDA's concerns, on April 20, 2015, the American Association of Homeopathic Pharmacists (AAHP) represented to the FDA that its members were required print a disclaimer like the one in the proposed settlement agreement:

OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

> AAHP's advertising guideline = Requires disclaimer:
> "These statements have not been reviewed by the Food and Drug Administration."

AAHP Presentation, Bednarz Decl. Ex. 6 at 32.[6] Similasan is a member of the AAHP, and AAHP guidelines do indeed require display of the FDA disclaimer shown in the AAHP presentation above. *See* Bednarz Decl. Exhs. 7-8.[7] AAHP encourages reporting violations of its policy to the AAHP, or to FDA, FTC, or Council of Better Business Bureau's National Advertising Division. *See* Bednarz Decl. Ex. 8. Therefore, Similasan was already obliged to update its labelling.

Even if Similasan were not part of the AAHP, the FTC has signaled that they intend to pursue actions for homeopathic efficacy claims. Evidencing this intent, on August 21, 2015, the FTC submitted a comment in response to the FDA's notice opining that the current lax labelling regime is misleading consumers and is contrary to FTC's interpretation of its governing statute. *See* Bednarz Decl. Ex. 9 (Comments of FTC Staff).[8] The FTC then initiated its own request for comments on homeopathy marketing, premised on the belief that homeopathic claims of efficacy should be regulated more like vitamins and nutritional supplements. These actions signal that reliance on HPUS listings soon will no longer be an adequate defense for unqualified claims of efficacy. Even if the AAHP did not require a

---

[6] Bednarz Decl. Ex. 6 (AAHP Presentation given April 20, 2015) available at: http://www.fda.gov/downloads/Drugs/NewsEvents/UCM443498.pdf.

[7] Bednarz Decl. Ex. 7 (AAHP Voting Members) available at: http://www.aahp.info/membership/members/voting-members/. Bednarz Decl. Ex. 8 (AAHP Consumer Advertising Guideline for Over-the-Counter Homeopathic Medicines) available at: http://www.aahp.info/position-statements/consumer-advertising-guideline-for-over-the-counter-homeopathic-medicines/.

[8] Bednarz Decl. Ex. 9 (FTC comment to FDA, dated August 21, 2015) available at: https://www.ftc.gov/system/files/documents/advocacy_documents/ftc-staff-comment-food-drug-administration-regarding-current-use-human-drug-biological-products/150821fdahomeopathic.pdf

disclaimer, it is likely the FTC soon will. For this independent reason, the settlement agreement provides no relief to consumers and indeed may soon be rendered moot by more aggressive FTC and/or FDA enforcement.[9]

To the extent that labeling changes benefit anyone, it is the Defendant, who otherwise faces increased scrutiny from the FTC and from its own homeopathic trade group. If the settlement is approved, Similasan also stands to gain official imprimatur from this Court that its misleading marketing website is "fair, reasonable, and adequate," and potentially insulate its marketing materials from further attack. The Court should decline the invitation to benefit Defendant and Class Counsel to the detriment of the class.

## C.    The Court has a fiduciary duty to absent class members, so must reject the settlement as self-dealing.

A district court must act as a "fiduciary for the class," "with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp.*, 618 F.3d 988, 994–95 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Lit.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). "Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192–94 (D. Mass. 2005), citing *inter alia Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'"); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279–80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed

---

[9] *See* FDA Law Blog, "Will FTC Kill Homeopathic Products – or Will FDA?" http://www.fdalawblog.net/fda_law_blog_hyman_phelps/2015/06/will-ftc-kill-homeopathic-products-or-will-fda.html. *See also* Bednarz Decl. Ex. 9 (FTC letter) at 7 (recounting complaint about unsubstantiated Similasan product claim as an example where FTC believes it has authority to require changes to label regarding efficacy claims).

settlements of class actions" prior to settlement).

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, 4 Newberg on Class Actions § 13:20 (4th ed. 2009). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992).

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. Am. Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* American Law Institute, Principles of the Law of Aggregate Litig. § 3.05(c) (2010) ("*ALI Principles*"). The settling parties ask this Court to assume the fairness of this settlement, but that is what they are obliged to prove.

To be lawyer-driven and self-dealing, a settlement need not be collusive. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Staton*, 327 F.3d at 960); *see also id.* at 948 ("the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations."). There need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (quoting *GMC Pick-Up*, 55 F.3d at 819-20); *accord Bluetooth*, 654 F.3d at 949; *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

"If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton*, 327 F.3d at 964; *accord Bluetooth*, 654 F.3d at 947. This is the case here, where the class obtains no meaningful recovery whereas Class Counsel applies for $545,000 in attorney fees with clear sailing (that is, Similasan agreed in advance not to oppose the fee request).

This settlement has all three indicia identified by the Ninth Circuit in *Bluetooth* suggesting an inequitable distribution between counsel and the class. *See* 654 F.3d at 947 (listing the indications: (1) a disproportionate distribution of fees to counsel; (2) a "clear sailing agreement"; and (3) a "kicker" (a segregated fund for attorneys' fees that reverts any excess fees to the defendant)).

The most telling sign of self-dealing in this settlement is counsel's receipt of an exceedingly "disproportionate distribution of the settlement." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon*, 150 F.3d at 1021). The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *Id.* at 942; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Here, plaintiffs alleged an economic injury, yet the class's claims would be released for nothing—"injunctive relief" that does not benefit any class member and indeed more likely benefits the Defendant at the expense of future consumers. In other words, the proposed settlement awards nearly 100% of the benefit to attorneys—far in excess of this Circuit's benchmark or any reasonable measurement of fairness.

The settlement also provides for clear sailing and a kicker—that is, Similasan has agreed not to oppose the fee request, and any reduction in attorney fees reverts to the Defendant. The "kicker" is widely recognized to be a red flag for lawyer-driven settlements and begets a "strong presumption of…invalidity." *Pearson*, 772 F.3d at 787; *accord Bluetooth*, 654 F.3d at 949 (kicker "amplifies the danger of collusion already suggested by a clear sailing

provision"); *Redman v. Radio Shack*, 768 F.3d 622, 637 (7th Cir. 2014) (kicker is a "defect"); *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (kicker is a "questionable provision").

In a typical common fund settlement, the district court can reduce the fees requested by plaintiffs' counsel—and when it does so, the class will benefit from the surplus. The class is unambiguously worse off when any reduction in a fee award reverts to a defendant instead of the class. Moreover, a segregated fee fund has the self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined with the clear sailing agreement means that any reversion will only go to the defendant that had already agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TULANE L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

Class Counsel attributes the *Bluetooth* indicia to *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015). *See* Dkt. 209, Mem. in Support of Motion for Fees ("Fee Memo") at 22-23. Class Counsel thus dances around the inescapable similarities between this settlement and the unfair settlement reversed by *Bluetooth*. Counsel makes three untenable statements in support of their fee request:

- "Class Counsel are not receiving a disproportionate distribution of the settlement' because there is no common fund." Fee Memo 23. *Bluetooth* itself involved no pure common fund, yet this did not prevent the Ninth Circuit from finding that counsel had seized a disproportionate share of the "constructive common fund." 654 F.3d at 945; *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 862-863, 868 (9th Cir. 2012) (in a "constructive common fund" settlement, an attorneys' award of "38.9% of the total…is clearly excessive*"). *Bluetooth* speaks of not only a disproportionate share of the common fund, but also "when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947; *Richardson*, 991 F. Supp. 2d 181, 204; *In re GMC Truck*

*Fuel Tank Prods. Liab. Litig.*, 55 F.3d 755, 803 (3d Cir. 1995) ("non-cash relief…is recognized as a prime indicator of suspect settlements).

- "There is further no "'clear sailing' arrangement" because Defendant agreed to pay a fee certain, based on a known, significant reduction from Class Counsel's lodestar based on the risks present in this case." Fee Memo 23. Again, this statement is refuted by *Bluetooth.* 654 F.3d at 943, 947 (settlement "included a clear sailing agreement" even though the lodestar "substantially exceed[ed]" the agreed upon fee).

- "[T]here is no "reverter that returns unclaimed fees to the defendant" because no fund was established." Fee Memo 23. Once again, this statement is flatly inconsistent with *Bluetooth* where the Ninth Circuit also found that the "settlement also contained a 'kicker'" even though no formal common fund was established. *Id.* at 947.

Moreover, Plaintiffs' lengthy lodestar analysis (Fee Memo 7-15) does not excuse the lack of benefit to unnamed class members. First, although the fee allotment is germane to the fairness of the settlement, even a modest request relative to lodestar cannot justify an unfair allocation of the proceeds. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 n.14 (3d Cir. 2013) (lodestar multiplier of .37 not "outcome determinative"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) ("*Inkjet*") (same with multiplier of .32); *Bluetooth*, 654 F.3d 935 (reversing settlement approval notwithstanding district court's finding that the lodestar "substantially exceed[ed]" the fee requested and awarded). As one district court described the unsuitability of applying lodestar methodology to settlement fee awards: "Class Counsel has requested for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011).

Second, even if we were at the point of discussing a reasonable lodestar, $545,000 would not be proper under established lodestar methodology.

> An attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method. For although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results.

*Inkjet*, 716 F.3d at 1182. Here, the plaintiffs seek half their proclaimed lodestar, even though the class is being ask to settle for no compensatory relief at all. They seek to use their accrued lodestar to "insulate [themselves] from the risk of pursuing an unprofitable case," something the Court "cannot" do. *Keirsey v. Ebay, Inc.,* No. 12-cv-01200-JST, 2014 U.S. Dist. LEXIS 21371, at *7-*8 (N.D. Cal. Feb. 18, 2014).

Separately, Class Counsel's failure to submit any substantive breakdown of hours worked prevents class members and the court from evaluating the reasonableness of those hours. *See, e.g., Otey v. Crowdflower, Inc.*, No. 12-cv-05524-JST, 2014 U.S. Dist. LEXIS 52192, at *26 (N.D. Cal. Apr. 15, 2014) ("The Court is...unable to determine whether the hours spent are reasonable, because Plaintiffs' counsel have provided no evidence or itemized records to support the hours they worked."). Class counsel has failed to meet the bare minimum of "listing [its] hours and identifying the general subject matter of [its] time expenditures." *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).

Class Counsel engineered this self-dealing arrangement while agreeing to sell out the unnamed class members' claims for zero dollars. Because of these terms, the settlement must be rejected in its entirety. Reducing attorney fees does nothing to resolve the inequitable arrangement between Defendant, Class Counsel, and unnamed class members, because it would only benefit the Defendant who is already a privileged party under the agreement.

**D.    Even if the alleged relief were meaningful, class members receive no marginal benefit compared to non-class members and therefore receive no consideration for waiver of their claims.**

Under the proposed settlement, all consumers will receive the same dubious relief—a vague label disclaimer and access to a promotional marketing website. Even if this were valuable, and even if Class Counsel was not the primary beneficiary of the agreement, this "relief" is conferred on *all* future Similasan consumers, regardless of class membership. Changes in future fine print disclosure will *not* benefit class members who, by definition, are past purchasers already misled by the Defendants' previous conduct. *E.g., True v. Am. Honda Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010); *Pampers*, 724 F.3d at 720 ("The fairness of the settlement must be evaluated primarily on how it *compensates class members*—not on whether it provides relief to other people, much less on whether interferes with defendant's marketing plans.") (internal quotation omitted). "Future purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786.

Given this state of affairs, the settlement puts class members in a worse position than non-class members. Class members are being compelled to surrender their claims to enjoy the same "relief" all consumers will enjoy. Because the settlement provides no marginal consideration to the class, it is against the interests of unnamed class member and cannot be approved.

**III.    The proposed settlement should further be rejected because Class Counsel has not acted as a fiduciary to unnamed class members.**

In negotiating this settlement agreement, Class Counsel has breached their fiduciary duty to the class, so the settlement should be rejected for this independent reason. "The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members" *Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989). "The class is not the client. The class attorney continues to have responsibilities to

each individual member of the class even when negotiating a settlement." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

Here, while Class Counsel's clients are obviously made better off by the settlement, unnamed class members are worse off than the public at large. Claims of the class are extinguished in exchange for no particular relief. A fiduciary to the class would advocate that every class member opt out so that they remain free to pursue their claims.

Instead, Class Counsel agreed to a proposed settlement which hobbles the class at every turn. The agreement purports to forbid groups of class members from opting out. The agreement purports to render opt-outs ineffective if they do not satisfy arbitrary disclosure requirements of the parties' own invention. The agreement purports to release the claims of all class members who purchase Similasan products though final approval, but it provides no mechanism for consumers to opt out after July 1, an apparent violation of Rule 23(e)(5), which requires an opportunity for class members to exclude themselves from settlement. All of these restrictions suggest Class Counsel was uninterested in watching over the rights on unnamed class members.[10]

In short, Class Counsel has agreed to numerous provisions against the interests of unnamed class members, and so have fallen short of the undivided loyalties counsel must have toward unnamed class members under Rule 23(g)(4). *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("The responsibility of class counsel to absent class members…does not permit even the appearance of divided loyalties of counsel.") (internal quotation omitted). For this independent reason, the Court should reject the proposed settlement.

---

[10] The restrictions further appear to violate Rule 23(c)(2)(B)(v), which requires notice "that the court will exclude from the class any member who requests exclusion."

# CONCLUSION

The settlement that makes class members worse off for the benefit of the class attorneys and the class representatives must be rejected.


Dated: July 1, 2016                    Respectfully submitted,


                                       */s/ Theodore H. Frank*
                                       Theodore H. Frank (SBN 196332)
                                       COMPETIVE ENTERPRISE INSTITUTE
                                         CENTER FOR CLASS ACTION FAIRNESS
                                       1899 L Street NW 12th Floor
                                       Washington, DC 20036
                                       ted.frank@cei.org
                                       (202) 331-2263

                                       *Attorney for Objector M. Frank Bednarz*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically served the foregoing on all CM/ECF participating attorneys at their registered email addresses, thus effectuating electronic service under S.D. Cal. L. Civ. R. 5.4(d).

DATED this 1st day of July, 2016.

*/s/ Theodore H. Frank*
Theodore H. Frank

**CERTIFICATE OF SERVICE PURSUANT TO CLASS NOTICE
AND PRELIMINARY APPROVAL ORDER**

Pursuant the requirements of class notice and Preliminary Approval Order, Dkt. 204 ¶ 23, I hereby certify that on this day I caused service of the forgoing on the following parties:

| | |
|---|---|
| Ronald A. Marron<br>Law Offices of Ronald A. Marron, APLC<br>651 Arroyo Drive<br>San Diego, CA 92103<br>Telephone: 619-696-9006 | *Via Federal Express* |
| Michelle Gillette<br>Crowell & Moring LLP<br>275 Battery St., 23rd Floor<br>San Francisco, CA 94111<br>Telephone: 415-986-2800 | *Via Federal Express* |
| Allen v. Similasan<br>c/o KCC LLC<br>P.O. Box 8060<br>San Rafael, CA 94912-8060 | *Via First Class Mail* |

DATED this 1st day of July, 2016.

*/s/ Theodore H. Frank*
Theodore H. Frank