MARK BRNOVICH, ATTORNEY GENERAL
STATE OF ARIZONA

BRUNN W. ROYSDEN III (CA SBN 265810)
Beau.Roysden@azag.gov
ORAMEL H. SKINNER (AZ SBN 032891)
DANA R. VOGEL (AZ SBN 030748)
Assistant Attorneys General
Office of the Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8472
Facsimile: (602) 542-4377

Attorneys for *Amicus Curiae* Arizona Attorney General

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM ALLEN, LAINIE RIDEOUT and KATHLEEN HAIRSTON, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SIMILASAN CORPORATION,<br><br>Defendant. | Case No. 12-cv-376-BAS-JLB<br><br>**BRIEF OF *AMICI CURIAE* STATE ATTORNEYS GENERAL OPPOSING FINAL APPROVAL OF PROPOSED SETTLEMENT AND RELATED MOTIONS FOR ENTRY OF FINAL JUDGMENT AND AWARD OF FEES**<br><br>Hearing Date: AUGUST 1, 2016<br>Time:  10:30 a.m.<br>Courtroom: 4B (Schwartz Courthouse)<br>Presiding Judge: Hon. Cynthia A. Bashant |

# INTRODUCTION

The Attorneys General of Arizona, Arkansas, Louisiana, Michigan, Nebraska, Nevada, Texas, and Wyoming (hereinafter, "the Attorneys General") hereby make a limited appearance as *amici curiae* to respectfully urge the Court to reject the Proposed Settlement now pending and deny the parties' related motions.[1]  The Attorneys General, having been notified of this settlement pursuant to the provision of the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.* ("CAFA"), and having reviewed the July 18 Joint Motion for an Order Granting Final Approval of Class Action Settlement, make this filing to present their unique perspective on how the Proposed Settlement fails to properly serve the interests of the non-named members of the class, including consumers in the states the Attorneys General serve.[2]

Put simply, the Proposed Settlement is not fair, reasonable, and adequate under traditional Rule 23(e) analysis and pertinent federal precedent.  Only the Defendant, class counsel, and the named plaintiffs receive particularized value from the deal, which fails to protect the absent class members.  Indeed, if all absent class members had opted out of the settlement they would have benefitted just as equally and there would have been no change in the way in which the injunctive provisions would be implemented.  "[T]he Rule 23(e) inquiry protects unnamed class members from unjust or unfair settlements agreed to by fainthearted or self-interested class representatives." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997).  And in reviewing settlements, courts "have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992); *see also Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987) ("In approving a proposed class action settlement, the district court has a fiduciary

---

[1] The Attorneys General, appearing only as *amici curiae*, are not submitting to this Court's jurisdiction (as parties or otherwise), and this brief is filed without prejudice to any State's ability to enforce its consumer protection laws and/or otherwise investigate claims related to the issues here in dispute.

[2] Counsel for all parties have been contacted, and do not object to the submission of this brief.  CAFA provides no deadline for such a brief to be filed. *See* 28 U.S.C. §1715(b).

responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.'"). Given the Proposed Settlement's imbalance and the fact that the implemented Notice Plan was inadequate (resulting in only about one hundred and fifty (150) total recorded demonstrations of interest in the settlement), the duties owed to the absent class members compel its rejection as well as the denial of the related motions filed by the parties.

## INTEREST OF AMICI CURIAE STATE ATTORNEYS GENERAL

Amici are their respective States' chief law enforcement officers. Given the ability of Attorneys General to speak for the interests of their States' citizens, CAFA envisions a role for interested Attorneys General in the approval of proposed class action settlements by requiring notice. *See* 28 U.S.C. § 1715; *see also* S. REP. 109-14, 5, 2005 U.S.C.C.A.N. 3, 6 (the requirement "that notice of class action settlements be sent to appropriate state and federal officials," is in place "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens."); S. REP. 109-14, 35, 2005 U.S.C.C.A.N. 3, 34 ("notifying appropriate state and federal officials of proposed class action settlements will provide a check against inequitable settlements in these cases. Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties."). The Attorneys General therefore have an interest in these proceedings both in their overarching role as protectors of the interests of the general public, and also, more specifically, in light of CAFA. It is in furtherance of both of these interests that the Attorneys General submit this brief as *amici curiae*, speaking on behalf of their citizen consumers.

## ARGUMENT

### I.  THE COURT SHOULD REJECT THE SETTLEMENT TO PROTECT ABSENT CLASS MEMBERS

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1026 (9th Cir. 1998)). Indeed, while "[c]lass counsel are duty bound to represent the best interests of class members," "the interests of class members and class counsel nearly always diverge[.]" *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). District courts must therefore step in to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees" when asked to weigh the fairness, adequacy, and reasonableness of a class action settlement under Rule 23(e)(2). *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003); *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) ("The settlement of a class action must be fair, adequate, and reasonable." (citing Fed. R. Civ. P. 23(e)(2))). In carrying out this role, courts must not just search for signs of explicit collusion, "but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products*, 654 F.3d at 946.

The Proposed Settlement represents just the type of imbalanced settlement where the interests of class counsel and named plaintiffs have diverged from those of the unnamed members of the class. It benefits class counsel, the named class representatives, and the Defendant, but does not specifically benefit the absent class members in comparison with the public at large. And the structural failings of the Proposed Settlement, which alone warrant rejection by the Court, are only amplified by the wholly inadequate notice provided. Failing to make a more robust effort to inform absent class members of the terms of the Proposed Settlement, thereby giving those class members the chance to salvage their claims, results in absent class members losing most of their damages claims without additional value in return.

A. **The Settlement Does Not Uniquely Benefit Absent Class Members**

The core purpose of a class-action settlement is to benefit members of the class. For that reason, "'[t]he fairness of the settlement must be evaluated primarily based on how it *compensates class members*'—not on whether it provides relief to other people."

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 720 (6th Cir. 2013) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)).[3]

But the relief offered by the proposed settlement is neither directed specifically to the absent class members nor otherwise designed to redress the injuries alleged in the complaint. In the Proposed Settlement, the Defendant agrees to provide certain limited prospective injunctive relief in the form of updates to product labeling and other additional disclosure provisions. In particular, the Defendant will, within twelve months, ensure that existing product packaging include a disclaimer in addition to the labels' prior content, noting that the statements on the label are based on traditional homeopathic principles and were not reviewed by the Food and Drug Administration. Dkt. 202-4 at ¶¶ 5.1.2 and 5.1.4. Furthermore, the Defendant will in the future maintain a webpage that "provides an explanation" of the homeopathic dilutions contained in the Defendants' products, with the only content requirement being that the information therein is to "substantially conform to the explanations provided by the [Homœopathic Pharmacopœia of the United States]" and contain a link to the Food and Drug Administration's Compliance Policy Guide for homeopathic drugs. Dkt. 202-4 at ¶ 5.1.3.

Injunctive relief may well be an appropriate resolution to certain class actions, as an injunction assures that the conduct at issue will not be continued. But, the prospective injunctive relief in this particular case, focused solely on future additional disclosures, fails to direct any particular benefit to the absent members of the class compared with the public at large. The Proposed Settlement will benefit the absent members of the class no more than it benefits the public at large. For example, revised labels will eventually be

---

[3] Proponents bear the burden to establish this element. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010) ("the burden is on the settlement proponents to persuade the court that the agreement is fair, reasonable, and adequate for the absent class members who are to be bound by the settlement."); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623 (S.D. Cal. 2005) (settlement proponents "have the burden of sufficiently documenting that the settlement terms are fair, reasonable and adequate *to the class*." (emphasis added)).

provided on all future packaging, and the required website will likewise be available to all, not just members of the class. Put simply, the absent class members are irrelevant to the implementation and success of the proposed injunctive relief. Again, it is telling that if all absent class members opted out of the settlement, they would benefit from its terms just as equally as if they had remained, and there would be no change in the way in which the injunctive relief would be implemented. And yet all class members are giving up all of their non-personal injury monetary claims against Defendant without receiving any compensation different from the public at large.[4]

### B. The Settlement Substantially Benefits Other Interested Parties

Even as the absent class members fail to obtain any specific and unique benefit from the Proposed Settlement (as compared to the public at large), the Defendant, class counsel, and the named plaintiffs all obtain concrete and specific benefits. First, and foremost, the Defendant will be released from all claims held by the members of the class (named and unnamed), other than those for personal injury, relating in any way to "Defendant's advertising, marketing, manufacturing, packaging, labeling, promotion, sale, and distribution" of the products at issue, including all claims for damages; this includes class claims and individual claims, as well as all claims for injunctive relief and for damages. Dkt. 202-4 at ¶¶ 2.22 and 7.1.[5] Second, named class representatives will

---

[4] This is in contrast to injunctive relief obtained in enforcement actions by Attorneys General, which do not require consumers to waive or surrender claims.

[5] As noted in the recent filings by class counsel, *e.g.*, Dkt. 216-1 at 5-6, after conversations took place between counsel for the parties and the staff of certain Attorneys General (though staff from Texas is referenced in the filing, no Texas representative took part in these conversation with counsel for the parties), additional language was added to the proposed final order to clarify that the release provided for in the Proposed Settlement does not bar class members from contacting state or federal agencies or benefiting from any relief obtained by a state or federal agency in connection with the actions and products at issue in these proceedings. The Attorneys General appreciate the inclusion of this clarifying language in the proposed final order, but, as was made clear in conversations with counsel for the parties, supporting the inclusion of such a clarification does not represent an endorsement of the Proposed Settlement or a waiver as to future action by any Attorney General against the Defendant.

each receive $2,500 under the Proposed Settlement. Dkt. 202-4 at ¶ 10.1. And third, the agreement provides for $550,000 in compensation to class counsel. Dkt. 202-4 at ¶ 10.1. While these monetary compensation and incentive numbers may not be particularly substantial in and of themselves—and may well be appropriate in a different case (e.g., one where the absent class-members likewise receive monetary compensation)—there can be no dispute that the monetary compensation received by the named plaintiffs and class counsel is materially more substantial than the benefits directed to absent class-members, further demonstrating the inequitable nature of the Proposed Settlement.

### C. Inadequate Notice Amplifies The Settlement's Imbalance

As Defendant recently confirmed, the "Notice Plan" implemented in this case consisted solely of creating a settlement website and publication of the settlement in the *San Diego Union Tribune*, the *USA Today*, and *Reader's Digest*. Dkt. 216-1 at 4. No digital outreach or other more direct efforts were undertaken to help ensure that the absent class members were informed of the settlement and given an opportunity to object or opt out prior to the July 1, 2016, deadline. And based on the information provided in counsels' final approval exhibits, the "Notice Plan" that was intended to reach tens of thousands of class members resulted in only one hundred and thirty-six (136) unique visitors to the settlement website and twenty-one (21) calls to the toll-free settlement line. Dkt. 216-6 at 1. Given that absent class members who did not opt out are locked into releasing all non-bodily injury claims (including both monetary and injunctive relief claims), are obtaining no monetary compensation, and would be equivalently benefited by the settlement had they all opted out (*see supra* at subsection A), the lack of a more robust notice plan exacerbates the imbalance of the Proposed Settlement.

\*   \*   \*

The Proposed Settlement, which broadly bargains away the claims of the absent class for insufficient benefit, should be rejected. In related circumstances, when faced with a settlement that specifies no particular relief to absent class members as a group (as opposed to society at large or future consumers), courts have refused to grant approval.

*See, e.g.*, *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (disapproving settlement; noting that prospective injunctive relief requiring changes to future versions of allegedly abusive debt collection letter offered nothing of value to members of the class, even if changes may have been of some value to future debtors). Indeed, courts have repeatedly explained that forward looking injunctive relief targeting additional disclosure for future purchasers, including non-class-members, does not fulfill the purposes of Rule 23. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014) ("future purchasers are not members of the class, defined as it is as consumers who have purchased [defendant's product]."); *Synfuel*, 463 F.3d at 654 (approval of settlement was abuse of discretion; noting the insufficiency of operational changes that primarily benefited "future customers who are not plaintiffs"). Here, the Court should likewise look past whatever benefit might be provided to future, non-class-member purchasers of the Defendant's products and reject the Proposed Settlement as not properly respecting the duties owed by class counsel and the Court to the unnamed members of the class.

In order to warrant approval by the Court, the Proposed Settlement would need to, at a minimum, generate particularized value for the absent class members (separate and apart from the disclosure-focused prospective injunctive relief that benefits the absent class members no more than any other consumer or the public at large). However, in the absence of a fundamental rebalancing of the benefits and a wholesale revision of the notice provisions, neither of which the Court can accomplish on its own as part of the review process, the Proposed Settlement must be rejected in its entirety for failing to serve the absent members of the class to whom class counsel and the Court owe a duty, and for whom the Attorneys General now speak. *See, e.g.*, *Hanlon*, 150 F.3d at 1026 ("The settlement must stand or fall in its entirety," as no court has "the ability to 'delete, modify or substitute certain provisions.'" (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 628 (9th Cir.1982)). While rejecting the Proposed Settlement may put the class at risk of the case failing on dispositive motions (in one scenario) or at trial (in another scenario), as Judge Walker of the Northern District

noted in rejecting a similarly inadequate settlement, "in that event, [the] class would end up essentially in the same situation it would be if final settlement approval were approved: with nothing." *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009).

## CONCLUSION

For the reasons stated herein, the Attorneys General ask the Court to reject the Proposed Settlement that is before the Court for review and deny the related motions.

DATED: July 28, 2016                           RESPECTFULLY SUBMITTED,

                                                         MARK BRNOVICH
                                                        ARIZONA ATTORNEY GENERAL

By: */s/ Brunn W. Roysden III*_____
    Brunn W. Roysden III
    Oramel H. Skinner
    Dana R. Vogel
    Assistant Attorneys General

Attorneys for *Amicus Curiae* Arizona Attorney General

**ALSO SUPPORTED BY:**

**LESLIE RUTLEDGE**
**ATTORNEY GENERAL OF ARKANSAS**
323 Center Street, Suite 200
Little Rock, Arkansas 72201

**JEFF LANDRY**
**LOUISIANA ATTORNEY GENERAL**
P.O. Box 94005
Baton Rouge, Louisiana 70804

**BILL SCHUETTE**
**MICHIGAN ATTORNEY GENERAL**
P.O. Box 30212
Lansing, Michigan  48909

**DOUGLAS J. PETERSON**
**ATTORNEY GENERAL FOR NEBRASKA**
2115 State Capitol
Lincoln, Nebraska 68509

1  **ADAM PAUL LAXALT**
   **ATTORNEY GENERAL OF NEVADA**
2  100 North Carson Street
   Carson City, Nevada  89701

3  **KEN PAXTON**
   **ATTORNEY GENERAL OF TEXAS**
4  P.O. Box 12548 (MC 059)
   Austin, Texas  78711-2548
5
   **PETER K. MICHAEL**
6  **ATTORNEY GENERAL OF WYOMING**
   2320 Capitol Avenue
7  Cheyenne, Wyoming 82002

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I am employed in the County of Maricopa, State of Arizona. I am over the age of 18 years and not a party to this action. My business address is Arizona Attorney General's Office, Consumer Protection and Advocacy Section, 1275 West Washington Street, Phoenix, Arizona 85007-2926.

I hereby certify that on the date below, I electronically filed the above **BRIEF OF *AMICI CURIAE* STATE ATTORNEYS GENERAL OPPOSING FINAL APPROVAL OF PROPOSED SETTLEMENT AND RELATED MOTIONS FOR ENTRY OF FINAL JUDGMENT AND AWARD OF FEES** with the Clerk, using the Court's CM/ECF Electronic Filing System, which will generate and serve a Notice of Electronic Filing (NEF) to the parties and registered CM/ECF users in the case. Under said practice, all parties to this case who have consented to electronic service have been served. Also, I further certify that I have mailed the foregoing document via the United States Postal Service to any non-CM/ECF participants indicated in the Manual Notice List.

I declare that I am a member of the Bar of California, permitted to practice before this Court, and declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2016, at Phoenix, Arizona:     */s/Brunn W. Roysden III*
                                                                                       Brunn W. Roysden III