1  **LAW OFFICES OF RONALD A. MARRON**
2  RONALD A. MARRON (SBN 175650)
   *ron@consumersadvocates.com*
3  SKYE RESENDES (SBN 278511)
4  *skye@consumersadvocates.com*
   651 Arroyo Drive
5  San Diego, California 92103
6  Telephone: (619) 696-9006
   Facsimile: (619) 564-6665
7
8  [Additional counsel on signature page]
   *Class Counsel*
9

10          **UNITED STATES DISTRICT COURT**
11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  KIM ALLEN, LAINIE RIDEOUT,      | Case No. 3:12-cv-00376-BAS (JLB)
    and KATHLEEN HAIRSTON, on       | **CLASS ACTION**
14  behalf of themselves, all others | Filed:  Feb. 10, 2012
    similarly situated, and the general |
15  public,                          |
16                                   | **AMENDED AND CORRECTED**
                                     | **JOINT RESPONSE TO OBJECTION**
17          Plaintiffs,             | **TO FINAL APPROVAL OF CLASS**
        v.                          | **ACTION SETTLEMENT**
18
19  SIMILASAN CORPORATION,
20                                   | Hearing:      August 1, 2016
            Defendant.               | Judge:        Hon. Cynthia A. Bashant
21                                   | Courtroom:   4B
22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 3

   A.   The Court Should Consider the Background of
        Mr. Bednarz and His Counsel ................................................. 3

   B.   The Settlement Does Not Give Preferential Treatment to Class Counsel ... 5

   C.   Bednarz' Attacks on the Injunctive Relief Are Based on
        Untrue Statements ..................................................................... 6

        (i)    The Injunctive Relief Is a Result of this Litigation and
               the Settlement ................................................................. 7

        (ii)   The FDA And the FTC Have Not Changed Any of Their
               Regulations Regarding Homeopathic Drugs ................... 8

        (iii)  It is Similarly Untrue that the AAHP Requires its Homeopathic
               Drug Manufacturing Members to Do Anything ............... 9

   D.   The Settlement Does Not Demonstrate Self-Dealing But
        Rather Concern for the Class Members .................................. 11

III. CONCLUSION................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**

*Dennis v. Kellogg Co.*,
No. 09-cv-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ..............................3

*Dewey v. Volkswagen of Am.*,
2012 WL 6586511 (D.N.J. Dec. 14, 2012)................................................5

*Dunk v. Ford Motor Co.*,
48 Cal. App. 4th 1794 (1996) ...........................................................13

*Ellis v. Costco Wholesale Corp.*,
240 F.R.D. 627 (N.D. Cal. 2007)........................................................10

*Gallucci v. Bioron, Inc.*,
No. 11CV2039 JAH NLS, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012).......... 9-10

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016).............................................................4

*Hanlon v. Chrysler Corp.*,
10 150 F.3d 1011,  (9th Cir. 1998) .........................................................1

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).....................................................................14

*In re Apple Inc. Sec. Litig.*,
2011WL1877988 (N.D. Cal. May 17, 2011) ..............................................5

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013).............................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................11, 12

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S. D. Fla. 2011) ..................................................5

ii

*In re Law Office of Jonathan E. Fortman, LLC*,
No. 4:13MC00042, 2013 WL 414476 (E.D. Mo. Feb. 1, 2013) .............................3

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
842 F. Supp. 2d 346 (D. Me. 2012) ............................................................5

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)....................................................................13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)..............................................................10

*Londaro v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010)........................................................5

*Margolin v. Regional Planning Comm.*,
134 Cal. App. 3d 999 (1982) ..................................................................13

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*,
107 Cal. App. 4th 1336 (2003). ..................................................................1

*Nightingale v. Hyundai Motor Am.*,
31 Cal. App. 4th 99 (1994) ....................................................................13

*Sommers v. Erb*,
2 Cal. App. 4th 1644 (1992) ...................................................................13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..................................................................14

*Trs. of Cent. States Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*,
697 F. Supp. 1538 (C.D. Cal. 1988) ..........................................................13

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) ....................................................................5

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) ..................................................................13

iii

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

**RULES**

Fed. R. Civ. Proc. 23(h) ............................................................................14

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

# I.   **INTRODUCTION**

After more than four years of hotly contested litigation, on the eve of trial, the parties settled this action for injunctive relief on behalf of the Class.  While this action has been pending, two trials were held against over-the-counter homeopathic drug manufacturers, alleging identical consumer fraud claims as this one:  *Allen v. Hyland's, Inc.* (in which Class Counsel here served as class and trial counsel) and *Lewart v. Boiron, Inc.*  At the conclusion of both trials, jurors found in favor of the homeopathic drug manufacturers, finding no damages should be awarded to Plaintiffs or the classes in those cases.  ECF No. 216-3 at ¶¶3-4.  Given the foregoing facts, it cannot be doubted that the Class' claims for monetary relief in this case are, in the minds of jurors, weak.

In addition, this Court previously ruled, twice, that injunctive relief was unavailable to Plaintiffs and the class, for lack of Article III standing.  ECF Nos. 34, 57.  Plaintiffs vigorously opposed this ruling, filing a motion for reconsideration (ECF No. 35), which was denied (ECF No. 53), and a Ninth Circuit petition for interlocutory relief (ECF No. 38), which was rejected (ECF Nos. 42, 54).

On top of all of the foregoing, there is a third known trial that was held against a homeopathic drug manufacturer asserting claims of lack of efficacy and consumer fraud, which also resulted in a defense verdict:  *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1344-46 (2003).  As such, consumers are batting 0 for 3 in their claims against homeopathic drug manufacturers.

In light of these facts, Class Counsel settled this action for injunctive relief for class members – relief that could not be obtained at trial, and only seek a fraction of their lodestar and out-of-pocket costs.  Out of the tens of thousands of class members and fifty state Attorneys General that received notice of this settlement, only one objected.  As such, the reaction of the Class to the settlement has been overwhelmingly positive, and this is perhaps the most significant factor to be weighed when considering the adequacy of the proposed settlement. *See Hanlon v. Chrysler Corp.*, 10 150 F.3d 1011, 1027 (9th

1

Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").

The sole objection was filed by Mr. Michael Frank Bednarz, who is represented by a professional objector, Theodore Frank, of the formerly-named Center for Class Action Fairness ("CCAF") (hereafter, the "Frank Objection").  While long on page length, the Frank Objection is short on facts and merit.  The Court should overrule the objection for the following reasons:

First, Mr. Bednarz appears to be a manufactured objector, who purchased a Similasan Product two days before the deadline to object, asking that it be shipped by two-day mail.  ECF No. 215-1, ¶ 3 & Ex. 1.  There is no way Mr. Bednarz could even have taken the Product at the time of his objection, or reviewed the labeling in person, making his objection suspect.  Mr. Bednarz' counsel, Ted Frank, then goes on at length about how he is not a professional objector, at the same time admitting that he runs an entity that exists for the sole purpose of objecting to class action settlements.  That is the very definition of a professional objector:  one who is in the business of objecting to class action settlements.  But at the end of the day, Mr. Bednarz is not a typical Class member and the objection appears to have an axe to grind against class action settlements, which is divorced from the reality of this case, as discussed above.

Second, the objections Mr. Frank posits must be overruled.  Mr. Frank avoids the facts, invents others, and does not state he has experience prosecuting consumer fraud cases nor that he has any trial experience.  Here, Class Counsel has trial experience, including prosecuting an almost identical over-the-counter homeopathic drug case.  ECF No. 216-3 at ¶ 3.  Class Counsel is in a better position to evaluate the risks and merits of this action, which it did prior to entering into the settlement.  *See id.*  None of Mr. Frank's objections take into account the realities of this action.  This is a fair settlement for what are apparently weak claims.  Class Counsel did not sell out the class and is not profiting

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

at all from this case.  It is settling because, based on the actual known risks, it is the best thing to do for the Class.

## II.   ARGUMENT

## A.   The Court Should Consider the Background of Mr. Bednarz and His Counsel

Although objectors can provide genuine assistance by identifying problems in a proposed settlement, courts recognize that "serial" or "professional" objectors often file objections to receive payoffs to go away or to advance their own ideological agenda that class action attorneys are somehow bad people.  Accordingly, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.*, No. 09-cv-1786, 2013 WL 6055326, at *4 (S.D. Cal. Nov. 14, 2013), appeal dismissed (May 15, 2014) (quoting *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 WL 414476, at *5 (E.D. Mo. Feb. 1, 2013)).

Mr. Bednarz is not your average consumer.  It appears he only purchased a Similasan Product so that he could qualify as a Class member.  *See* ECF 215-1, ¶ 3 & Ex. 1 (purchasing by two-day shipment two days before the Objection Deadline).  He did not purchase in reliance on the product label (*see generally id.* [not specifying that he relied on any representations made on the Product's labeling]), and appears to have requested rush delivery for the sole purpose of being window dressing for professional objector, Ted Frank and his class action objection enterprise, CCAF.  *See* ECF 215-11 (outlining how Frank and CCAF have made a business out of objecting to class actions, but not demonstrating any trial experience).

In addition, Mr. Frank is not your typical attorney – his career centers around objecting to class action settlements, both on behalf of himself and as counsel for others. *See* https://www.serialobjector.com/persons/67.  *See* Marron Decl., Ex. 1 (noting that Mr.

3

"Frank conceded that, in some ways, he has lost the right to claim moral authority by accepting payments derived, as least in part, from a business model he has loudly deplored.").  At present, Mr. Frank goes on at length to claim that his past of profiting from class actions is at an end, which remains to be seen, but this change of heart does not dispense with the fact that Mr. Frank is clearly tilting at the windmills of class actions for ideological purposes that are divorced from the reality of the cases in which he interjects.

Here, Mr. Frank appears to be putting his personal motives ahead of the Class, by ignoring the hard-fought and risky nature of this action and comparing apples to oranges. For example, Mr. Frank repeatedly cites the *In re Dry Max Pampers* case (Frank Obj., beginning at 4:18), in which "counsel did not take a single deposition, serve a single request for written discovery, or even file a response to [the defendant's] motion to dismiss." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 277-278 (6th Cir. 2016). But this Similasan case could not have been harder fought.  Among other actions taken over the years, both of Plaintiffs' depositions were taken; one named Plaintiff dropped out; Class Counsel deposed Defendant and all of its witnesses; all experts on both sides were retained, wrote reports and were deposed; numerous motions to dismiss were briefed and heard; two summary judgment motions were briefed (one heard, one pending); a motion to certify was brought followed by a motion to decertify; and tens of thousands of pages of documents were requested, produced, and reviewed.  Marron Decl. ¶ 3.  This case even saw Plaintiffs file a Ninth Circuit Court of Appeal petition for interlocutory appeal, to undo the damaging ruling on lack of prospective injunctive relief for lack of Article III standing.  As Mr. Frank conveniently ignores, this case settled on the eve of trial and was vigorously litigated.  Thus, this action is unlike *Pampers* entirely.

In sum, Mr. Frank is no stranger to this Court or other courts around the country. Indeed, many have labeled him as a professional objector who uses the objection process as a means to advance an ideological agenda. *See, e.g., Londaro v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773 (N.D. Ohio 2010) (describing Mr. Frank's arguments as "long

4

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

on ideology and short on law."). Mr. Frank and his "Center for Class Action Fairness" have filed dozens of class action objections around the country and, while he urges the Court to believe that he is not a fee-seeking objector, the reality is that like other such objectors, he too makes a living by objecting to class action settlements. *See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 842 F. Supp. 2d 346, 351 (D. Me. 2012), *Dewey v. Volkswagen of Am.,* 2012 WL 6586511 (D.N.J. Dec. 14, 2012); *In re Apple Inc. Sec. Litig.,* 2011WL1877988 (N.D. Cal. May 17, 2011). "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1361 n. 30 (S. D. Fla. 2011).   In any event, regardless of their motivation, objectors bear the burden of proving any challenges to the reasonableness of a class action settlement. *See United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). Here, the objections raised by Bednarz are meritless.

## B.   The Settlement Does Not Give Preferential Treatment to Class Counsel

Class Counsel are seeking an award of less than half of the more than one million dollars in uncompensated time and out-of-pocket costs they have spent prosecuting this action over the course of more than four years.  This is not preferential.  It is a substantial discount, given in exchange for a settlement that provides assured and valuable injunctive relief for Class members.  With injunctive relief not even possible, and damages unlikely, the Settlement provides value to the class.

Early in this case, this Court ruled that no injunctive relief was available at trial, for lack of Article III standing.  Mr. Frank's objection even highlights this – claiming erroneously that no Class member will ever buy these Products again.  But, Mr. Frank presents no evidence to back up that statement, whereas Plaintiffs have evidence that Class members tend to be repeat purchasers.  *See* ECF No. 119 at p. 60 (lines 43:15 to 44:6), p. 61 (lines 87:23-25) (Rideout, asserting she kept buying the Products and would consider

5

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

buying them again).

Class Counsel's research, including mock trials, showed the following: 1) the large majority of purchasers of homeopathic drugs do not know what they are buying but still want something natural for their symptoms, 2) the minority of purchasers may know the drugs are homeopathic but do not know exactly what that means, and 3) almost all purchasers are unaware that the drugs are not reviewed by the FDA. This was borne out by the very FTC consumer surveys Frank cites to, as cited *infra*. To put it bluntly, the drugs in this case are lawfully sold in the United States. Class Counsel do not have the power to ban their sale. Thus, the Settlement gives consumer disclaimers so that they can make an informed choice about their health care. This is of great value in the over-the-counter drug field, as the FTC recently stated publicly. *See* ECF No. 215-10 at p. 12-18.

Mr. Frank also ignores the two defense verdicts in cases almost identical to this one. Given the very slim chance damages could be attained at trial, and the certainty that injunctive relief was not available at all (despite it being needed per the FTC survey), Plaintiffs and Class Counsel reasonably decided that the Settlement was the only realistic way to deliver something of significant value to the Class.

In addition to advocating that the Settlement is somehow unfair, Mr. Frank's objection is also impractical. If he is successful and the Court does not grant final approval, there is only one potential outcome: the motion to decertify will have to be heard, the motions to exclude experts will be decided, and the case will eventually go to trial, if a class still exists and if Class Counsel were willing to take it this far knowing the severe risks. Under all these circumstances, Plaintiffs could face a huge costs bill if they lose, and the Class is likely to receive nothing. This is a worse outcome than approving the Settlement currently before the Court.

## C.  <u>Bednarz' Attacks on the Injunctive Relief Are Based on Untrue Statements</u>

Mr. Bednarz' objections are premised on faulty facts. He claims that (1) Similasan

6

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

already had some of the same injunctive relief in place as of January 2016, (2) Similasan must update its marketing anyway because of regulatory changes by the Federal Trade Commission (FTC), and (3) Similasan was obligated to have a FDA disclaimer based on its membership in the American Association of Homeopathic Pharmacists (AAHP).  Each of these premises are flawed.

> ### (i)   The Injunctive Relief Is a Result of this Litigation and the Settlement

Bednarz claims Similasan already had the majority of injunctive relief in place as of January 2016.  This argument misses several points.  First, Similasan did not have in place any FDA disclaimer prior to the Settlement.  Second, the product *label* did not advise consumers to see a URL for a homeopathic dilution explanation.  Third, the web page did not direct consumers to the FDA Compliance Policy Guide.  These are major changes that will significantly benefit consumers.  Bednarz tries to minimize the labeling change by criticizing it as "fine print" that class member will not see because they will never buy another Similasan Product.  Bednarz filed no facts, however, to support this claim.

In fact, as the FTC survey cited by Bednarz showed, consumers do read the fine print, most homeopathic drug purchasers (i.e., Similasan's customers and the class) are repeat purchasers, and most consumers do not know the Products are not reviewed by the FDA before they hit the market.  *See*, *e.g.*, ECF No. 215-7 at p. 12 ("Consumers most likely to buy homeopathic medicines are committed to their health and devote considerable research effort in evaluating health care choices," including reading the internet for information).

More importantly, the injunctive relief achieved through the Settlement (the FDA Disclaimer, and the Homeopathic Dilution Disclaimer appearing on the website since the packaging cannot hold all that information) is precisely what one federal agency, in charge of false of deceptive advertising, would like to see happen for homeopathic drugs.  ECF No. 215-10 at p. 3 (the FTC, opining after detailed research that "a significant percentage of consumers do not understand homeopathy, how the FDA regulates homeopathic drugs,

7

or the level of scientific evidence supporting homeopathic claims."); *see also id.* at pp. 12-18 (discussing how the FTC determined that consumers are confused about whether the FDA reviews homeopathic drugs, and the nature of homeopathic drugs as highly diluted agents rather than being just natural or herbal substances, and supporting the view the labeling changes will defeat consumer confusion). The Settlement achieves what the FTC recommends. It is hard to understand how Bednarz could find fault with the injunctive relief, when it accomplishes what the FTC and the FDA have not been able to do, or have been unwilling to do, to date.

As Bednarz is forced to admit, the Settlement now requires Similasan to relabel its drugs, advise consumers the Products are not reviewed by the FDA, direct consumers to their website so that dilution can be explained for them, and to link their web page to the FDA Compliance Policy Guide, where consumers can get even more information about the true nature of homeopathic drugs. *Compare* ECF No. 215-10 at p. 3 (addressing all of the problems the FTC had raised to the FDA, but which the FDA has not and may not act on). None of this was in place before. In addition, the Settlement requires Similasan to maintain certain font type sizes and colors so that the disclaimers are readable by consumers, and the prominence of the homeopathic dilution page is enhanced by its required placement via a link on the home page of every web site Similasan owns or operates. Bednarz fails to appreciate that any minor voluntary conduct Similasan may have engaged in in anticipation of final approval could be discontinued at any time if the Settlement is rejected.

(ii)   *The FDA and the FTC Have Not Changed Any of Their Regulations Regarding Homeopathic Drugs*

Contrary to Bednarz' assertion, the FDA has <u>not</u> changed its regulations to require Similasan to change anything on its labels. *See* Frank Objection at 8:13 (referring to "likely regulatory changes initiated by the" FTC). These objections expose the baseless nature of Mr. Frank's briefing. First, the FDA is the one who decides what changes, if

8

any, Similasan has to undergo (or else why would the FTC be asking FDA to change its policies and regulations) and Mr. Frank's inexperience in the Food, Drug and Cosmetic Act (FDCA) is telling in this regard. *See* Frank Objection 9:9-10 (asserting that the FTC is going to pursue homeopathic drug makers when, admittedly, the FTC possesses joint enforcement powers with the FDA and *only* the FDA can change homeopathic drug labeling and regulations).

Second, how could Defendant change its labels in response to unknown regulatory changes? This is a non-sequitur, thus exposing it as a completely invalid objection. It is unknown whether the FDA will take *any* action whatsoever in regard to the recent hearings. Consumers' groups have petitioned the FDA for years to do something and nothing has happened as yet. The Settlement, on the other hand, supports the FTC's opinions, and forces Similasan to educate its purchasers about the Products at issue.

(iii)    *It is Similarly Untrue that the AAHP Requires its Homeopathic Drug Manufacturing Members to Do Anything*

Similasan was not required to have a FDA disclaimer merely because they are members of the AAHP. Frank Objection 8:25 to 9:8. AAHP issues voluntary guidelines and Similasan need not abide by them. Decl. of Dan Quail (ECF No. 216-5), a copy of which is also concurrently filed herewith. Indeed, notwithstanding AAHP's recommendation, Similasan did *not* change it labels to have a FDA disclaimer, and will not unless the Settlement is finally approved. *Id.* at 3:9-11 ("Prior to the settlement in this case, Similasan had not made any such FDA disclaimer and had not agreed to do so without the requirement in the settlement agreement.")

Moreover, the Ninth Circuit recently upheld labeling changes almost identical to those agreed to via this Settlement in another case in which Class Counsel represented homeopathic drug consumers. *See Gallucci v. Bioron, Inc.*, No. 11CV2039 JAH NLS, 2012 WL 5359485, at *6 (S.D. Cal. Oct. 31, 2012), *aff'd sub nom. Gallucci v. Gonzales*, 603 F. App'x 533 (9th Cir. 2015). And, the FTC recently conducted consumer surveys to

9

evaluate whether labeling changes might be needed for homeopathic drugs like Similasan's Products.  The FTC is of the opinion that enhanced labeling disclaimers are necessary.  The Settlement achieves all this, without regulatory action.  Moreover, the Settlement makes all the new disclaimers permanent and binding on Similasan.  This is a benefit to the class, as the FTC's own surveys show.  *See* ECF No. 215-10 at p. 12-18.

Numerous cases have commented that the value of injunctive relief is long-standing and cannot be summarily discounted.  "[T]he long-lasting effect of an injunction would likely be greater than a damages award.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 610 (N.D. Cal. 2009) (citing *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 643 (N.D. Cal. 2007)).

In sum, Mr. Frank, on behalf of the two-day rush delivery purchaser, Mr. Bednarz, nitpicks at the Settlement in the hopes of convincing this Court the settlement is not fair, reasonable and adequate, rather than evaluating the Settlement as a whole, and in light of the hard and perhaps unpleasant facts.  This piecemeal approach is not the standard the Court must use.  This Court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components."  *Lane v. Facebook, Inc.,* 696 F.3d 811, 818-19 (9th Cir. 2012).  Taken as a whole, the Settlement achieves relief that the FTC is pushing for, but which may never be adopted by the FDA.  The Settlement achieves this relief now, and its fairness is supported by the FTC consumer surveys.  This alone, even without Class Counsel's experienced opinions that the Settlement is fair, reasonable, and adequate, speaks volumes about the true merits of the Settlement.  The Court should overrule all of Mr. Bednarz' objections to the injunctive relief.[1]

---

[1] As for Mr. Bednarz' final substantive objection that the class period cannot extend to judgment but can only reach through to the opt out date, the parties are not opposed to modifying the class period to cut off at the objection/opt out deadline.  ECF No. 216-4 at ¶ 12; ECF No. 216-12 at ¶ 16.

10

**D.**     **The Settlement Does Not Demonstrate Self-Dealing But Rather Concern for the Class Members**

The Settlement was not achieved overnight or with ease.  In fact, Class Counsel was forced to admit that the risks for attaining monetary relief were very high, too high to risk losing out on some form of relief for the class by way of the Settlement and its required injunctive relief that Class Counsel cannot even attain at trial.

Frank erroneously and irresponsibly claims that the proposed settlement has "all three indicia" of self-dealing identified by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011). An honest read of *Bluetooth,* however, reflects otherwise. In *Bluetooth,* the Ninth Circuit identified the following three "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations":

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.* at 947 (internal citations and quotations omitted). If such signs are present, a district court must examine the negotiation process to ensure the absence of collusion.

*Id.* at 950.  But, here, there are no "signs," subtle or otherwise, of collusion. This case was hotly contested throughout every stage, including through motion practice, discovery, two mediation conferences before Judge Burkhardt, pretrial exchanges, and months of settlement negotiations. The Settlement, in fact, reflects the adversarial nature of the parties' relationship.  Similasan will not pay money, as it feels it will be as successful as its larger competitors, Boiron and Hyland's, Inc., who just won two trials.  Similasan need not provide injunctive relief per this Court's prior rulings, but is willing to do so to avoid

11

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

1   the risk this will be the trial that finally sees damages awarded in favor of consumers.

2       A settlement is not the achievement of perfection, but the act of compromising in

3   exchange for risk.  While it is true the Settlement requires Similasan not to object to

4   attorney's fees and costs up to a certain amount, this was to limit further protracted

5   litigation and waste of the parties' and this Court's time and resources.  Class Counsel put

6   their own funds and time at risk for over four years in litigating this contingency case.

7   And, Class Counsel are accepting an enormous reduction in that time and money spent, to

8   ensure the Class gets certain and sure relief in the form of labeling changes.  The claims

9   at issue in this case (the Consumers Legal Remedies Act [CLRA] and the Unfair

10  Competition Law [UCL]) are primary equitable in nature, and seek to correct the

11  marketplace and protect Defendant's own competitors.  Thus, Mr. Bednarz' claim that the

12  public may somehow also benefit from the Settlement is puzzling.  That is the nature of

13  the rights the CLRA and UCL protect – the right to a fair and honest marketplace, free of

14  fraud.

15      Finally, there is no "kicker" here because there is no "segregated fund", much less

16  a class member fund.  The court in *In re Bluetooth*, 654 F.3d at 947 (emphasis added),

17  define a "kicker" as being "when the parties arrange for fees not awarded to revert to

18  defendants *rather than be added to the class fund*." Here there is no fund. Class Counsel

19  agreed to accept approximately half their lodestar and costs, subject to Court approval.

20  Because attorney's fee awards are the province of the Court, Similasan could not by law

21  agree to an amount certain.  It is up to the Court to determine whether Class Counsel

22  earned the fee requested, which must be a reasonable fee in light of the contingency nature

23  and risks of this case.

24      The tasks on which time was spent were laid out, including support for the rates

25  requested.  For example, the Fee Motion specifies that Class Counsel briefed "five motions

26  to dismiss (ECF Nos. 5, 14, 20, 35, 43, 68); two motions to compel discovery (ECF Nos.

27  79, 80), two motions for summary judgment and several motions to strike expert testimony

28

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)

AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

(ECF Nos. 103, 106, 109, 128, 171), a pending motion for joinder (ECF No. 174), a motion to certify that was granted (ECF No. 100), and a pending motion to decertify the Class (ECF No. 164)."  ECF No. 209 at 22:18 to 23:4.  This is in addition to reviewing the notice, briefing preliminary and final approval, responding to objectors, drafting the Complaint, reviewing discovery, and many months spent negotiating the Settlement (*id.* 6:16-20).

Mr. Bednarz is incorrect that he did not have sufficient information to evaluate the Settlement's fee request given the foregoing details, or that timesheets spanning the course of 4.5 years would need to be filed.  Class Counsel's actual billing records are voluminous and arguably subject to privilege and work product protection. Class Counsel's declarations are sufficient to assess the reasonableness of the fee, but as stated in the Fee Motion, if the Court desires, raw timesheets of every timekeeper's individual entries can be provided for *in camera* review.  Case law supports a fee request on declaration of an licensed counselor and officer of this Court.  *See Margolin v. Regional Planning Comm.*, 134 Cal. App. 3d 999, 1006-07 (1982) (attorney declaration as to number of hours worked by firm members was sufficient); *Trs. of Cent. States Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558-59 (C.D. Cal. 1988). The lodestar analysis requires "neither mathematical precision nor bean-counting," and allows the Court to "rely on summaries submitted by the attorneys and . . . not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). California authorities likewise "permit[] fee awards in the absence of detailed time sheets," since "[a]n experienced trial judge is in a position to assess the value of the professional services rendered in his or her court." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) (citing *Sommers v. Erb*, 2 Cal. App. 4th 1644, 1651 (1992); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996); *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 103 (1994)).

Mr. Frank essentially tries to make two arguments out of one provision:  that

Similasan agrees not to an object to a fee request not exceeding a certain amount, and the unstated rule that Similasan will only pay what the Court awards. But this settling of the fee award is desirable. The Ninth Circuit has recognized that clear sailing provisions are not *per se* improper:

> [T]he parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount represented an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles.

*Staton v. Boeing Co.,* 327 F.3d 938, 972 (9th Cir. 2003).

Indeed, Rule 23(h) provides that a district court may award reasonable attorneys' fees "that are authorized by law *or by the parties' agreement."* Fed. R. Civ. Proc. 23(h)(emphasis added). And, the Supreme Court has encouraged a consensual resolution of attorneys' fees *as the ideal toward which litigants should strive.* In *Hensley v. Eckerhart,* 461 U.S. 424 (1983), the Supreme Court explained that "[a] request for attorney's fees should not result in a second major litigation. *Ideally, of course, litigants will settle the amount of a fee." Id.* at 437 (emphasis added).

Mr. Frank wants to create a second litigation on the amount of the fee, but more than enough information has been provided on how the time was spent and the hourly rates sought, and it is up to this Court to decide the amount of a reasonable fee. The agreement on the fee amount and the agreement not to dispute do not show collusion. They show a desire to wind-up this long-standing dispute with favorable labeling and website changes that will benefit the Class, in accord with a marked reduction that does not profit Class Counsel and only partially compensates them.

## III.   CONCLUSION

The parties jointly respectfully request that, in light of all the facts, including the unpleasant ones that Mr. Bednarz does not want to consider, the Settlement be given final approval and the objections on the fee and the injunctive relief be overruled. Class

14

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT

1 | Counsel is responsible for a substantial benefit to the Class – injunctive relief that mirrors
2 | what the FTC would like to see and which the FTC itself would support – and they deserve
3 | to be modestly compensated for achieving this result.

4 | Respectfully submitted,

5 | July 28, 2016            */s/ Ronald A. Marron*

6 | **LAW OFFICES OF RONALD A. MARRON**
7 | RONALD A. MARRON (SBN 175650)
   | *ron@consumersadvocates.com*
8 | SKYE RESENDES (SBN 278511)
9 | *skye@consumersadvocates.com*
10 | 651 Arroyo Drive
   | San Diego, California 92103
11 | Telephone:  (619) 696-9006
12 | Facsimile:  (619) 564-6665

13 | JOHN H. GOMEZ
14 | *john@gomeztrialattorneys.com*
   | JOHN P. FISKE
15 | *jfiske@gomeztrialattorneys.com*
16 | DEBORAH S. DIXON
17 | *ddixon@gomeztrialattorneys.com*
   | **GOMEZ TRIAL ATTORNEYS**
18 | 655 West Broadway, Suite 1700
19 | San Diego, California 92101
   | Telephone: (619) 237-3490
20 | Facsimile: (619) 237-3496

22 | DEAN A. GOETZ
   | *dgoetz12@gmail.com*
23 | **THE GOETZ FIRM, LLC**
24 | 603 N. Coast Hwy 101, Ste. H
   | Solana Beach, CA 92075
25 | Telephone: (858) 481-8844
26 | Facsimile: (858) 481-2139

27 | ***Class Counsel***

15

Dated: July 28, 2016

*/s/ Michelle Gillette*
MICHELLE GILLETTE
*mgillette@crowell.com*
Joshua Thomas Foust
*jfoust@crowell.com*
Mina Nasseri-Asghar
*mnasseriasghar@crowell.com*
CROWELL & MORING LLP
275 Battery St., 23rd Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile:  415.986.2827

**Attorneys for Defendant Similasan Corporation**

* Counsel for Plaintiffs certify that, pursuant to Section 2.f.4. of the Court's CM/ECF Administrative Policies, Defendant's counsel, Michelle Gillette, has reviewed the contents of this Joint Motion for Preliminary Approval of Settlement and authorized placement of her electronic signature on this document.

*Allen v. Similasan* No. 13-cv-00376-BAS (JLB)
AMENDED AND CORRECTED JOINT RESPONSE TO OBJECTION TO CLASS ACTION SETTLEMENT