**EXHIBIT 1**

# The Ted Frank interview: 'I was doing it for the greater good'

By Alison Frankel
June 25, 2015

(Reuters) – Even after all the decision has cost him, **Ted Frank** of the non-profit Center for Class Action Fairness believes he was justified in accepting $250,000 in fees from a plaintiffs' lawyer who engages in tactics Frank considers "repugnant" and "unethical."

"I felt I was doing it for the greater good," Frank told me Thursday. "I think good results are more important than good intentions."

Frank was explaining and justifying his business relationship with a Texas plaintiffs' lawyer named **Christopher Bandas**, who, like Frank, frequently represents clients objecting to class action settlements. But Bandas, unlike Frank, is a for-profit objector. Frank's retainer agreements contain a provision barring clients from dropping their objections in exchange for payments from class counsel. Bandas, at least according to Frank, makes such deals. (Bandas didn't return calls from me on Monday or Thursday.)

Frank's consulting agreement with Bandas, as I reported Monday, fell apart earlier this month, under circumstances Frank described in a June 10 declaration at the 7th U.S. Circuit Court of Appeals as "lurid, complex and Grishamesque." Their dispute arose in objectors' appeal of a $75.5 million settlement with Capital One for debt collection robocalls. Both Frank and Bandas represented class members protesting a $16 million fee award to class counsel at **Lieff Cabraser Heimann** & **Bernstein**. Bandas, according to Frank, worked out a deal with Lieff Cabraser to drop his client's appeal. After he told Frank that Lieff Cabraser would pay Frank's client $25,000 to abandon the appeal, Frank ended his retainer agreement with Bandas.

And when Frank's client decided to take Lieff Cabraser's offer, Frank withdrew as counsel and informed the 7th Circuit of the whole affair. Bandas promptly obtained a temporary restraining order against Frank in Texas state court, claiming that Frank improperly disclosed privileged and confidential attorney client information.

Frank and Bandas have now reached a settlement, Frank told me. On Wednesday, Frank withdrew a motion at the 7th Circuit to be appointed a guardian of the Capital One class. Bandas dropped his Texas state court suit. Absent a court order (presumably from the 7th Circuit in the Capital One appeal), Frank is not permitted to disclose the details of the settlement.

But he agreed to talk Thursday about why, in his view, he didn't do anything wrong – not in entering the agreement with Bandas and not in disclosing some of its details to the 7th Circuit. Frank seemed to be remarkably unbowed by all the fallout from the Capital One appeal, confident it won't hurt the mission of the Center for Class Action Fairness, and eager for the 7th Circuit to start an investigation of Lieff Cabraser's payments to Bandas' client and other objectors to the Capital One settlement. Lieff Cabraser asked Frank to withdraw his assertions of unethical behavior by the firm but Frank refused.

"They've said they will seek an ethics ruling against me," Frank said. "I'm confident I haven't disclosed client confidences and wasn't acting against my former client's interests. The more the 7th Circuit investigates, the better I come out." (Jonathan Selbin of Lieff Cabraser declined to comment.)

Frank conceded that, in some ways, he has lost the right to claim moral authority by accepting payments derived, as least in part, from a business model he has loudly deplored. But he was willing to make that compromise, he said.

"What's the greater evil?" he said. "Saying, 'I refuse to be involved in a situation where Chris Bandas can make money' or standing by and doing nothing when class counsel rips off the class?"

Because of his consulting fees from Bandas, Frank said, he was able to take less money from the Center for Class Action Fairness, which, in turn, permitted the nonprofit to bring on more lawyers, take up more cases and hire expert witnesses. Through Bandas, Frank won one of his most notable victories, a June 2014 decision from the 7th Circuit that struck down a "scandalous" class settlement with the Pella Corporation. "It seemed to me the greater good was being able to stop occurrences like the Pella settlement instead of being able to say I'm the holiest man in the world," Frank said.

Frank acknowledged there will be more consequences to come from the Capital One fracas. He said the center may have to tighten up its client screening to prevent future class members from accepting payments in exchange for dropping appeals. He also said he may have to explain to the Internal Revenue Service how it worked out that Bandas, a for-profit objector, obtained a settlement for his client in the Capital One case on the basis of a brief written by the Center for Class Action Fairness, a nonprofit.

But in the end, Frank said, his falling out with Bandas shows exactly the structural problem with class actions he's been complaining about for years: Once a settlement has been reached, the class's interests aren't safeguarded. Class counsel want to get settlements approved, and, according to Frank, for-profit objectors can make big money just by agreeing to go away. Objectors like him and his clients, meanwhile, are rarely rewarded for seeing appeals through, even if they deliver value to class members.

"The judicial system says it values for-profit objectors more than nonprofit objectors," Frank said. "That's a problem."

(This article has been corrected. A previous version incorrectly refered to the Pella case as a win for the Center for Class Action Fairness.)

For more of my posts, please go to WestlawNext Practitioner Insights
Follow me on Twitter

| Business | Markets | World | Politics | Tech | Commentary | Breakingviews | Money | Life |

« Previous Post
10th Circuit in Rocky Flats case: After 25 years, give plaintiffs justice
Next Post »
Lieff: Professional objectors are a scourge but settling isn't unethical

## More from Reuters

- Former Fox News commentator sentenced to prison for faking CIA ties  | 15 Jul

- France struck Islamic State bases overnight: minister  | 18 Jul

AUTHOR PROFILE


Alison Frankel

Alison Frankel updates On the Case multiple times throughout the day on WestlawNext Practitioner Insights. A founding editor of the Litigation Daily, she has covered big-ticket litigation for more than 20 years. Frankel's work has appeared in The New York Times, Newsday, The American Lawyer and several other national publications. She is also the author of Double Eagle: The Epic Story of the World's Most Valuable Coin.
Any opinions expressed here are the author's own.

To read the complete On the Case blog, head to
Thomson Reuters News & Insight.

REUTERS ANALYSIS & OPINION


**REPUBLICANS AND DEMOCRATS SHARPLY DIVIDED OVER MUSLIMS IN AMERICA: REUTERS/IPSOS POLL**
By Reuters Staff


**FROM IDEALISM TO DISILLUSION, THE**