UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM ALLEN, LAINIE RIDEOUT and KATHLEEN HAIRSTON, on behalf of themselves, all others similarly situated, and the general public,<br><br>                              Plaintiffs,<br><br>   v.<br><br>SIMILASAN CORPORATION,<br><br>                              Defendant. | Case No. 12-cv-376-BAS-JLB<br><br>**ORDER:**<br><br>**(1) DENYING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 216), AND**<br><br>**(2) DENYING AS MOOT MOTION FOR ATTORNEYS' FEES (ECF No. 211)** |

Plaintiffs and Defendant Similasan have filed a Joint Motion for Final Approval of Settlement Agreement [ECF No. 216] and Plaintiffs have filed a Motion, unopposed by Similasan, for attorneys' fees, costs and incentive awards. [ECF No. 211.]  Because the Court determines ultimately that the proposed settlement agreement is not fair, adequate or reasonable for unnamed class members, the Court **DENIES** the Joint Motion for Final Approval [ECF No. 216] and, therefore **DENIES AS MOOT** the Motion for Attorneys' Fees, Costs and Incentive Awards. [ECF No 211.]

I. BACKGROUND

On behalf of a California and a Florida[1] class, Plaintiffs filed a class action complaint alleging that Similasan engaged in false or deceptive labeling of its homeopathic products. [Third Amended Complaint, ECF No. 58 ("TAC").] Plaintiffs alleged that most consumers who purchase homeopathic drugs "are unaware of homeopathic dilution principles" and do not understand that these drugs have undergone no scrutiny by the FDA. [TAC ¶¶ 22, 23.] Thus class members were and are likely to be deceived by Similasan's advertising and marketing practices. [TAC ¶127.]

According to the TAC, although other homeopathic drug manufacturers have voluntarily agreed to implement an FDA disclaimer indicating on their labels that "The FDA has not determined that this product is safe, effective, and not misbranded for its intended use," along with additional disclaimers explaining homeopathic dilution, Similasan has not implemented these disclaimers. [TAC ¶¶ 26-27, 84, 136.] Hence, the Plaintiffs sought injunctive relief on behalf of the class. [TAC ¶136.] Plaintiffs also sought disgorgement, restitution of all monies from the sale of the homeopathic products, return of the purchase price of products, damages and punitive damages. [TAC ¶¶71, 85, 92, 96.]

This Court granted in part and denied in part Similasan's Motion for Summary Judgment. [ECF No. 142.] The Court limited the time period of recovery and dismissed the claims for injunctive relief as to the named Plaintiffs only. [*Id.*] The Court further granted in part Plaintiffs' motion for class certification, certifying two classes, "all purchasers of Similasan Corp. homeopathic Products in California…" with respect to Nasal Allergy Relief or Sinus Relief (first class) and Allergy Eye Relief, Earache Relief, Dry Eye Relief and Pink Eye Relief (second class). [ECF No. 143.] The Court approved Plaintiffs' proposal for notice on

---

[1] Plaintiff Allen withdrew as a named plaintiff, and, as she was the only named plaintiff from Florida, Plaintiffs ultimately dismissed claims involving the Florida class [ECF No. 69].

Similasan's website, along with advertisements posted in California editions of "U.S. Today," in the "San Diego Union-Tribune" and on Facebook.  [*Id.*]

Similasan filed a Motion to Decertify the class, arguing that Plaintiffs would not be able to prove materiality or falsity, and a Motion for Partial Summary Judgment, requesting in part that the Court extend its Order dismissing claims for injunctive relief to the entire class.  [ECF Nos. 164, 171.]  Plaintiffs' counsel responded to these Motions.  [ECF Nos. 173, 175.]  Trial was scheduled to begin March 29, 2016.  On January 26, 2016, the parties notified the Court it had reached a settlement which was filed on March 31, 2016.  [ECF Nos. 196, 202.]

## II.    THE SETTLEMENT

The Settlement Agreement jointly proposes that this Court certify a class defined as:

> All purchasers of all Similasan Corporation homeopathic Products nationwide for personal or household use and not for resale, as listed in Exhibit A to this Agreement [including 41 Similasan products] from February 10, 2008 to the present.

[ECF No. 202-4 §2.2.]  Thus, the proposed Settlement greatly expands the class beyond what was alleged in the TAC and beyond what was certified by this Court to include a nationwide class involving many more Similasan products.

The Settlement provides for injunctive relief only, including a disclaimer on all Similasan product labels that "These statements are based upon traditional homeopathic principles.  They have not been reviewed by the Food and Drug Administration." Similasan agrees to make these label changes no later than twelve months after the effective date of the Settlement Agreement.  [ECF No. 202-4 §5.1.4.] The Settlement Agreement also provides that Similasan shall maintain a homeopathic dilution explanation web page or portion thereof on all websites that it owns or operates regarding the Products.  The explanation shall conform to the explanations provided by HPUS (a private organization of homeopaths), and the web pages shall include a link to the FDA web site's Compliance Policy Guide

§400.400.  [ECF No. 202-4 §5.1.3.] The Settlement Agreement includes no monetary relief for unnamed class members.

> In exchange for the Settlement Agreement, all class members release:
>
> With the exception of claims for personal injury, any and all claims, demands, rights, suits, liabilities and causes of action of every nature and description whatsoever known or unknown, matured or unmatured, at law or in equity, existing under federal and/or state law including without limitation a waiver of all rights under Section 1542 of the California Civil Code, that [any class member] has or may have against [Similasan or any related parties] arising out of in connection with or related in any way, directly or indirectly, to Defendant's advertising, marketing, manufacturing, packaging, labeling, promotion, sale, or distribution of the Products, that have been brought, could have been brought, or are currently pending, by any Class member against [Similasan or related party], in any forum in the United States (including territories and Puerto Rico).

[*Id.* §2.22.]  All Class members acknowledge "that they have been informed by their legal counsel . . . of Section 1542 of the California Civil Code, and that they expressly waive and relinquish any rights or benefits available to them under this statute."  [*Id.* §7.3.]  Although there is a provision for any class member to "opt out," in light of the fact that the Settlement Agreement provides only injunctive relief to the unnamed class members, apparently this provision allows a class member to opt out only of the release provisions.  [*Id.* §9.7.1.]

Plaintiffs will request $2,500 as an incentive award for each named Plaintiff, which Similasan agrees not to contest.  [*Id.* §10.1.]  And Plaintiffs will request no more than $575,000 in attorneys' fees and costs, including the cost of Notice and any notice administration. [*Id.*]  Similasan agrees not to contest the amount of attorneys' fees and costs to the extent the request does not exceed $550,000.  [*Id.*]

Notice of the Settlement was provided via a Similasan website and in four weekly publications in the "San Diego Union Tribune" and in "USA Today".  [ECF No. 202-4, §§ 6.2, 6.4, Exh. B-D.]  CAFA notice was also served on appropriate federal and state officials.  [*Id.* §6.3.]  The Notice included a statement that "If you

do not want to be bound by the settlement, you must send a letter to the Claims Administrator . . . requesting to be excluded[.] If you exclude yourself, you cannot receive a benefit from this settlement[.]"[2] [*Id.* Exh. C.]

Mr. Frank Bednarz, who became a class member by purchasing a Similasan product two days before the deadline to object, and after preliminary approval of the settlement and notice to all class members had been disseminated, is the sole objector to the settlement. [ECF No. 215.] However, eight Attorneys General (of Arizona, Arkansas, Louisiana, Michigan, Nebraska, Nevada, Texas and Wyoming) have also filed an *amicus curiae* brief urging the Court to reject the Proposed Settlement. [ECF No. 219.]

### III.   STATEMENT OF THE LAW

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a proposal to settle a class action that binds class members requires the court to find that the settlement "is fair, reasonable and adequate." The Court has an independent duty to protect the interests of absent class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (district court has an obligation to protect the interests of the "silent majority").

In class action settlements, there is always the danger that the named plaintiffs and counsel will bargain away the interests of the unnamed class members in order to maximize their own recovery. *In re Dry Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013); *see also Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (concern is not necessarily with overt misconduct of the negotiators or secret cabals, the court must simply assure that the settlement is fair, reasonable and adequate to all concerned).

"It is the settlement taken as a whole, rather than the individual component

---

[2] This is a puzzling statement in light of the fact that the only benefit from the settlement for unnamed class members was injunctive relief, from which an opting out class member would presumably still get a benefit.

parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026. Consequently, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Other relevant factors to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered at settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, at 1026; *see also Churchill Vill., L.L.C v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

## IV. ANALYSIS

The Court recognizes that this Settlement is the culmination of a hard-fought battle over four years resulting in extensive attorney hours and costs. The Court further recognizes that Plaintiffs were facing a Motion for Class Decertification and a Motion for Summary Judgment, and that Plaintiffs were aware of a recent spate of defense verdicts on similar claims relating to homeopathic products. The Court

understands that this case was settled on the eve of trial after parties and counsel fully understood the strengths and weaknesses of their case.  And the Court concedes that the extensive experience of Plaintiffs' counsel militates in favor of approving the Settlement.

However, when assessing the Settlement Agreement as a whole, the Court has several concerns.  First, as pointed out by the Objector and the Attorneys General, only the named Plaintiffs and the Attorneys are getting any money out of this Settlement.  The named Plaintiffs will receive $2,500, well more than they spent on the offending products.  *See In re Dry Pampers Litig.*, 724 F.3d at 722 ("[W]e should be more dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole, for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief.").

Additionally, the proposed injunctive relief may only benefit a small number of the class members and instead seems to be more tailored to future purchasers. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006 ("It is future customers, not plaintiffs in this suit, who will reap most of the benefit from these changes."); *In re Dry Pampers Litig.*, 724 F.3d at 720 ("The fairness of the settlement must be evaluated primarily based on how it compensates class members—not on whether it provides relief to other people.") (quotations and emphasis omitted). The court has already dismissed injunctive relief claims on behalf of the named Plaintiffs since it was highly unlikely they would buy the offending products in the future given their allegations that the homeopathic products were not and could not ever be effective.  [ECF No. 142.]

Ultimately, however, these factors are not what the Court finds dispositive. Attorneys may, after all receive fees and costs for obtaining injunctive relief using a lodestar method even if there is no financial recovery for the class. *Lilly v. Jamba Juice*, No. 13-cv-2998-JST, 2015 WL 2062858 at *5 (N.D. Cal. May 4, 2015); *Riker*

1 *v. Gibbons*, No. 3:08-cv-115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010); *Richardson v. L'Oreal U.S.A., Inc.*, 951 F. Supp. 2d 104 (D.D.C. 2013). Although the Court has not thoroughly scrutinized the attorneys' fees request in this case, the overall amount does not appear unreasonable given the amount of time and effort put into the litigation thus far.

And the Court recognizes that one of the goals of this litigation was to force Similasan to change its labels and join other homeopathic drug manufacturers who had voluntarily agreed to include an FDA disclaimer on their labels.  The Court is prepared to accept Plaintiffs' counsel's representations at oral argument that Similasan has a strong contingency of repeat users, many of whom do not know that what they are buying is not FDA approved.  Thus, the Court recognizes that this Settlement could potentially benefit some members of the class by giving them some additional knowledge about what they are buying.  *See Gallucci v. Boiron, Inc.*, No. 11-cv-2039 JAH(NLS), 2012 WL 5359485 at *10 (S.D. Cal. Oct. 31, 2012), *aff'd* 603 F. App'x 535 ("Defendants' agreements to modify the Products' label and packaging, web site and advertising adequately addresses the claims raised in plaintiffs' complaint and provides significant value to the class.")

However, ultimately, what tips the balance for the Court and leads it to the conclusion that the settlement is not fair, adequate or reasonable, are the broad release provisions in the Settlement Agreement.  This distinguishes this case from many of the other injunctive relief settlements cited by the Plaintiffs.  *See e.g.*, *Lilly v. Jamba Juice*, 2015 WL 2062858 (pure injunctive relief but no waiver of class members' individual claims); *Kim v. Space Pencil, Inc.*, No. c-11-03796 LB, 2012 WL 5948951 (N.D. Ill. Nov. 28, 2012) (only named class members agreed to release of all claims, no release was required from unnamed class members); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS) 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) (no release of rights of unnamed class members); *Riker*, 2010 WL 4366012 (agreement does not impact individual damages cases class members

may bring); *Richardson*, 951 F. Supp. 2d 104 (class members will retain their right to seek damages in individual actions); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877 (7th Cir. 2000) (rejecting settlement in part because class members lost the right to file a class action in the future, even though class members retained the right to file for damages via individual action).

When the broad release provisions in this Settlement Agreement are coupled with a large broadening of the class description so that now a nationwide class of users is releasing its claims instead of a California-only class, it appears that this Settlement is crafted to provide protection to Similasan and not to benefit the unnamed Plaintiffs.  As explained in the Opposition filed by the Attorneys General, "all class members are giving up all of their non-personal injury monetary claims against Defendant without receiving any compensation different from the public at large."[3] [ECF No. 219.]

The Court's concerns about the release provision are compounded by the limited notice provided to the class members in this case.  Obviously, notice in the *San Diego Union-Tribune* is unlikely to reach the vast majority of class members, since this newspaper is by and large a local newspaper only likely to reach residents of San Diego.  Although class counsel indicates that the notice in "USA Today" was likely to reach 4.5 million people who would have purchased a natural product, counsel once again confuses the actual class members with the general public.  Counsel provides no evidence of how many class members who had actually purchased a Similasan product are likely to have received notice.  The Court sincerely doubts that the vast majority of these class members know they are giving up rights by remaining in the class.  After all, as pointed out by the Objector, if they knew and understood the terms of the Settlement Agreement, they would know that

---

[3] Although Class Counsel argues that the Attorneys General did not identify that they had any consumers of homeopathic products in their states and insinuates that there may not even be class members that exist from these states, this prompts the Court to ask why, then, the class description was broadened from a California-only class to a nationwide class?

they would be better off opting out, since they would receive the same benefits of the injunctive relief in the Settlement Agreement but would not be giving up their right to sue.  The fact that only one member has opted out simply supports the Court's concern that class members have either not seen the notice, or have not understood the ramifications of the Settlement Agreement.[4]  The Court's concerns about Notice are amplified by the fact that the website to provide notice only received 136 unique visitors, and the telephone number activated to do the same only received 21 unique calls, out of the potentially "tens of thousands" of class members. [ECF No. 216-6 ¶¶2-3.]

## V.  CONCLUSION

Given all of the above, the Court reluctantly **DENIES** the Joint Motion to Approval the Final Class Action Settlement [ECF No. 216] and **DENIES AS MOOT** the Motion for Attorneys' Fees, Costs and Incentive Fees. [ECF No. 211.] The parties are ordered to contact the Magistrate Judge within five days of this Order to set further scheduling dates.

**IT IS SO ORDERED.**

DATED:  August 9, 2016

Hon. Cynthia Bashant
United States District Judge

---

[4] The confusion is compounded by the Notice which tells class members that they will lose the benefit of the Settlement Agreement if they opt out, which is not true.  They will still get the only benefit available to them:  a change in the label.